IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF ARKANSAS
TEXARKANA DIVISION

DESIREE KOLBEK, AMY EDDY,           §
JEANNETTE ORLANDO, NICOLE           §
FARR, SUMMER HAGAN, JAMIE           §
RODRIGUEZ and PEBBLES               §
RODRIGUEZ                           §
                                    §
     Plaintiffs,                    §
                                    §
v.                                  §           Cause No. 10-4124
                                    §
TWENTY FIRST CENTURY                §
HOLINESS TABERNACLE CHURCH          §
INC., GLORYLAND CHRISTIAN           §
CHURCH, ARMFUL OF HELP,             §
TONY AND SUSAN ALAMO                §
FOUNDATION, MUSIC SQUARE            §
CHURCH, SJ DISTRIBUTING, INC.,      §
ACTION DISTRIBUTORS INC.,           §
ADVANTAGE FOOD GROUP,               §
JEANNE ESTATES APARTMENTS           §
INC., ROBERT W. GILMORE d/b/a       §
RG & ASSOCIATES SECURITY,           §
SALLY DEMOULIN, SHARON              §
ALAMO and STEVE JOHNSON             §

## PLAINTIFFS' THIRD AMENDED COMPLAINT

1. Plaintiffs: DESIREE KOLBEK, AMY EDDY, JEANNETTE ORLANDO, NICOLE

   FARR, SUMMER HAGAN, JAMIE RODRIGUEZ, and PEBBLES RODRIGUEZ

   assert the following causes of action against Defendants: TWENTY FIRST

   CENTURY HOLINESS TABERNACLE CHURCH INC. ("TFC"), GLORYLAND

   CHRISTIAN CHURCH ("GCC"), ARMFUL OF HELP ("AOH"), TONY AND

   SUSAN ALAMO FOUNDATION ("TAF"), MUSIC SQUARE CHURCH ("MSC"),

   SJ DISTRIBUTING, INC. ("SJD"), ACTION DISTRIBUTORS INC. ("ADI"),

ADVANTAGE FOOD GROUP ("AFG"), JEANNE ESTATES APARTMENTS INC. ("JEA"), ROBERT W. GILMORE d/b/a RG & ASSOCIATES SECURITY ("RGS"), SALLY DEMOULIN, SHARON ALAMO, and STEVE JOHNSON, and respectfully show this Honorable Court as follows:

## I. PARTIES

2.   Plaintiff DESIREE KOLBEK an individual and is a lawful resident and citizen of the State of Arkansas.

3.   Plaintiff AMY EDDY an individual and is a lawful resident and citizen of the State of Oklahoma.

4.   Plaintiff JEANNETTE ORLANDO an individual and is a lawful resident and citizen of the State of Florida.

5.   Plaintiff NICOLE FARR an individual and is a lawful resident and citizen of the State of New York[1].

6.   Plaintiff SUMMER HAGAN an individual and is a lawful resident and citizen of the State of New York[1].

7.   Plaintiff JAMIE RODRIGUEZ an individual and is a lawful resident and citizen of the State of Texas.

8.   Plaintiff PEBBLES RODRIGUEZ an individual and is a lawful resident and citizen of the State of Oklahoma.

---

[1] Plaintiffs' Third Amended Complaint was attached as Exhibit "A" to Plaintiffs' Motion for Leave to Amend [Dkt. 54] to be filed exactly as attached.  In the interim between the filing of Plaintiffs' Motion for Leave and the Order granting Plaintiffs' Motion [Dkt. 95], Plaintiffs Farr and Hagan have moved from California to New York.  This Complaint indicates such change of address; however, no further changes to the Complaint have been made.

9.  Defendant TWENTY FIRST CENTURY HOLINESS TABERNACLE CHURCH INC. is a corporation organized and existing under the laws of the State of Arkansas, with its principal place of business at Dyer, Arkansas.  TFC has appeared in this action.

10. Defendant GLORYLAND CHRISTIAN CHURCH is a d/b/a of Defendant TWENTY FIRST CENTURY HOLINESS TABERNACLE CHURCH INC. with its principal place of business at Dyer, Arkansas.  GCC has appeared in this action.

11. Defendant ARMFUL OF HELP is a d/b/a of Defendant TWENTY FIRST CENTURY HOLINESS TABERNACLE CHURCH INC. with its principal place of business at Dyer, Arkansas.  AOH has appeared in this action.

12. Defendant TONY AND SUSAN ALAMO FOUNDATION is a corporation organized and existing under the laws of the State of California, with its principal place of business at Saugus, California. TAF has appeared in this action.

13. Defendant MUSIC SQUARE CHURCH is a corporation organized and existing under the laws of the State of Tennessee, with its principal place of business at 1200 17th Ave. S., Nashville, Tennessee 37212.  MSC has appeared in this action.

14. Defendant SJ DISTRIBUTING, INC. is a corporation organized and existing under the laws of the State of Arkansas, with its principal place of business at 3941 Bradley Drive, Fort Smith, Arkansas 72904.  SJD has appeared in this action.

15. Defendant ACTION DISTRIBUTORS INC. is a corporation organized and existing under the laws of the State of New Jersey, with its principal place of business at PO Box 1026, Newark, NJ 07101.  ADI has appeared in this action.

16. Defendant ADVANTAGE FOOD GROUP is a d/b/a of Donn Wolfe and Steve Lovellette, with its principal place of business at 1619 Grand Ave, Fort Smith, Arkansas 72901.  AFG has appeared in this action.

17. Defendant JEANNE ESTATES APARTMENTS INC. is a corporation organized and existing under the laws of the State of Arkansas, with its principal place of business in Arkansas.  JEA has appeared in this action.

18. SALLY DEMOULIN is an individual, residing at 100 Circle Dr., Fouke, Arkansas 71837.  SALLY DEMOULIN has appeared in this action.

19. SHARON ALAMO is an individual, residing at 5330 East Placita Casa Rio, Tucson, Arizona 85718.  SHARON ALAMO has appeared in this action.

20. STEVE JOHNSON is an individual with an address at 3941 Bradley Drive, Fort Smith, Arkansas 72904.  STEVE JOHNSON has appeared in this action.

21. Defendant ROBERT W. GILMORE is an Individual doing business as RG & ASSOCIATES SECURITY.  He resides at 412 W. Greenfield Dr., Wake Village, Texas 75501.  Defendant may be properly served with process by delivering a copy of the Summons and Complaint to Robert W. Gilmore at 412 W. Greenfield Dr., Wake Village, TX  75501.

## II. JURISDICTION

22. This court has jurisdiction pursuant to 28 U.S.C. §1331 because it contains claims that arise under the laws of the United States.  Additionally, the Court has jurisdiction pursuant to 28 U.S.C. §1367 for claims that are related to the federal claim.

23. Specifically, Plaintiffs assert causes of action pursuant to 18 U.S.C. §2255 and 18 U.S.C. §1595.

### III.  VENUE

24. Venue is proper in this judicial district pursuant to 28 U.S.C. §1391(a)(2) insofar as a substantial part of the events or omissions giving rise to the claims occurred in the Western District of Arkansas.

### IV.  FACTS

25. Tony Alamo was born Bernie LaZar Hoffman.  In the 1960s, Hoffman moved to Los Angeles, California where he assumed the aliases of Marcus Abad and Mark Hoffman.

26. Hoffman married Susan Lipowitz in a Las Vegas, Nevada ceremony in 1966.  The two changed their names to "Tony and Susan Alamo" and began profiting from gospel shows and churches.  They maintained a large compound in California and appeared on their own television show.  They call their operation "Tony Alamo Christian Ministries."  The two did not limit their business enterprise strictly to church activities.  Instead, they developed a church and business conglomerate where members of the church were also the employees of the businesses.  Eventually the Alamo church business conglomerate grew to included grocery stores, truck stops, clothing companies, trucking companies, apartment complexes, and sham charities.

27. "Susan Alamo" died in 1982.  "Tony Alamo" assured his followers that she would rise from the dead.  For six months Tony Alamo and his followers kept watch over her decomposing body.  She did not return from the dead.

28. After Susan's death, Tony Alamo remarried several times, eventually engaging in the practice of polygamy – a practice he openly endorsed and preached to the church. During this same time, Tony Alamo and his followers began endorsing illegal church sponsored marriages of underage girls.  Tony Alamo and other leaders in the church, such as Sonny Brubach, Steve Lovellette, and Mark Cunneen would perform marriage ceremonies where underage girls, too young to lawfully marry, would be sent to live as "brides" with older men.  These ceremonies were performed openly in the church and officiated by clergy leaders within the church.  The church, its leaders, its clergy, and its members performed and participated in these illegal underage marriages, knowing that a valid marriage license had not been issued by the state, and knowing that the girls were too young to lawfully marry.

29. Just a few instances of church sponsored illegal marriages include:

   a.  Jackie Garner, at age 12, was married to Dale Shono (a 30 year old).

   b.  Wendy Tiner married at 12 yrs old to a much older man.

   c.  Rachel Scheff, at 13 years old, was married to Tom Neverdal (age 22), an illegal immigrant from Europe.

30. Indeed, Tony Alamo participated in this practice.  The leaders and members of the church watched as Tony Alamo entered into illegal church sponsored marriages with multiple underage girls.  Tony Alamo openly moved these underage girls into his home where they lived with him, the only adult male in the home.  The girls wore

wedding rings that were purchased by church leaders and paid for with church business scheme funds.

31. Specifically, the church, its members, and leaders assisted Tony Alamo in the following series of polygamist marriages, most of which were with underage girls:

  a. In 1989 Alamo married Sharon Kroopf (now SHARON ALAMO), in her late 30's at the time. She married Tony, who at the time was a fugitive, in hiding from charges of felony child abuse in California. Tony and Sharon had a son together in the summer of 1991. He was born while Tony was in jail awaiting trial for threatening Federal Judge Morris Arnold.

  b. In California, in February 1993, Tony Alamo took Lydia Willis as a second wife. Lydia was in her early 30's. They have a son together.

  c. In February 1993, Tony Alamo "married" Jody. She was 17 years old.

  d. In 1993, Maria Isabel Mendoza (aka Isabel Mendoza) became another Alamo "wife" at age 19.

  e. In 1993, Misheal Eden Jones-Williams became Alamo's "wife" at 18 years old.

  f. On October 15, 1993, Tami became Alamo's "wife" at age 17.

  g. In 1993, Angela Marie Morales (aka Angel Streit) became a "wife" in Arkansas at age 20.

  h. In January 1994, Elizabeth Mercado (aka "Lizzy" Gutierrez) became Alamo's "wife". She had just turned 16 years old. She bore a child to Tony, a girl, Antoinette, in June of 2001. Significantly, Lizzy and her parents were threatened with expulsion from the group and eternal damnation if they did not comply with Alamo's demand for her virginity.

  i. In January 1994, Plaintiff JEANNETTE ORLANDO became another Alamo "wife" at age 15.

  j. Plaintiff AMY EDDY was 13 years old when she went to Tony Alamo's house and became a "wife". She moved into the house with the other "wives." She was provided with a wedding ring. The ring was given to her by Alamo, while he was still in prison.

  k. In 1999, Plaintiff PEBBLES RODRIQUEZ (aka Yvonne Rodriguez) was 12 years old when she went to live with Alamo in Fouke, Arkansas and became Alamo's "wife" shortly thereafter. Pebbles went into and out of Alamo's bedroom with her sheets. She did this in front of individuals such as SALLY

DEMOULIN.  She told witnesses that she was a wife and wore a wedding ring.  Sometime after that, Alamo changed her name to Yvonne Rodriguez.

l.   Plaintiff DESIREE KOLBEK (born summer of 1991) was 7 years old when she went to live in Tony's house in Fouke, Arkansas in the spring of 1999.  Shockingly, she was became his "wife" at age 8.  He immediately began sexually assaulting her.

m.  Plaintiff JAMIE RODRIGUEZ was 11 years old when Alamo claimed her as a new bride.

n.   Plaintiff SUMMER HAGAN was 8 years old when she began spending the night at Tony Alamo's home.  At age 11 she became Tony Alamo's child bride.  He immediately began sexually assaulting her after the mock marriage "ceremony."

32. During the 1990's, several older men expressed an interest in "marrying" Plaintiff NICOLE FARR, underage at the time.  Tony Alamo did not permit anyone else's request for an illegal marriage to her.  Instead, Alamo was grooming her to become part of his underage illegal child sex ring.  At age 15, Tony Alamo moved NICOLE FARR into his home.  Once in the home, she was subjected to verbal sexual abuse from Tony Alamo.  She was also physically beaten numerous times by Tony Alamo.  She was beaten on several occasions by Defendant, SALLY DEMOULIN.  These beatings were administered at the request of Tony Alamo.  Before NICOLE FARR was made an official member of the child sex ring via a ceremony, she made a dramatic escape from the Alamo compound.  She avoided the security guards, escaped into the woods, where she ran for hours until finding refuge at the home of strangers.  Although never an official bride, the abuse she suffered was traumatic.

33. Individuals within the church, including, but not limited to Defendants: SALLY DEMOULIN, SHARON ALAMO, and STEVE JOHNSON, watched and assisted as Tony Alamo moved these underage girls into his home to live as his wives.

---

34. Specifically, Defendant STEVE JOHNSON attended meetings at the Alamo house where Alamo and his underage wives were present.  Specifically, STEVE JOHNSON attended a meeting at Alamo's church owned and operated house during the fall of 2000.  Also in attendance at the meeting were Defendants SALLY DEMOULIN and SHARON ALAMO.  Alamo attended the meeting with his underage brides.  All those in attendance at the meeting witnessed and received notice of the following: Alamo was the only adult male living in a house with multiple women; many of the women were underage; Alamo provided these women with wedding bands that they could be seen wearing at the meeting; and Alamo referred to these women as his wives.

35. During the particular meeting held in the fall of 2000, Alamo assumed the role of leader during the meeting.  While leading the meeting, Alamo had DESIREE KOLBEK sit at his feet, and visibly and openly massage his feet, legs, and inside of thighs.  This inappropriate sexual touching between Alamo and KOLBEK, an eight-year old child at the time, was witnessed by all those in attendance at the meeting, including Defendants SALLY DEMOULIN, SHARON ALAMO, and STEVE JOHNSON.  Alamo even commented about the inappropriate touching to those in attendance, asking whether they thought he was "dirty" and reminding them that he was "of the Lord."

36. With the help of church members and church leaders, Tony Alamo has used the church and its businesses to assist him in "marrying" underage girls that would reside in his church-owned home, where he would rape and abuse them.

37. There was and is no distinction between the churches and the businesses that they ran. The members were the employees, the money was comingled, and ownership was constantly shuffled in a shell game to avoid creditors. Tony Alamo and his followers operated as "Tony Alamo Christian Ministries." Tony Alamo Christian Ministries is not an independent legal entity. Instead, it is a combination of members, churches, and business shells engaged in a joint venture. For purposes of this pleading, Plaintiffs refer to the "CHURCH DEFENDANTS" as Defendants: TFC, GCC, TAF, and MSC. Plaintiffs refer to the "CHURCH BUSINESS DEFENDANTS" as Defendants: AOH, SJD, ADI, AFG, and JEA. Together, the Defendants formed a collective enterprise that is "Tony Alamo Christian Ministries." It is a joint venture in which there is a special combination of two or more entities seeking a profit in their specific venture, but without actually officially forming a partnership or corporate designation. It is implied that the entities share in the profits and losses of the venture. Most recently, this venture was run, in part, through a bank account known as the "bookkeeper" account. From this account, CHURCH DFENDANTS and CHURCH BUSINESS DEFENDANTS withdrew and deposited money. From this account, Tony Alamo was paid a salary.

38. This complex scheme has involved a number of individuals and businesses. Defendants TFC, GCC, AOH, TAF, MSC, SJD, ADI, AFG, JEA, SALLY DEMOULIN, SHARON ALAMO, and STEVE JOHNSON have participated in this scheme. All receipts from CHURCH DEFENDANTS and CHURCH BUSINESS DEFENDANTS are used for Tony Alamo Christian Ministries. The employees of CHURCH DEFENDANTS and CHURCH BUSINESS DEFENDANTS are all

believers and followers of Tony Alamo. They work for the CHURCH DEFENDANTS and CHURCH BUSINESS DEFENDANTS collectively with no distinction between the separate entities.

39. As one such example of the collective nature of the enterprise, the same vehicles were used to operate AFG that were used to operate SJD, ADI, and AOH. Indeed, church members would simply change the signs on the side of the truck or cover them with tape when purporting to act for different businesses. In one operation, the church business schemers would solicit donations to AOH, a sham charity. The schemers would send one of the church business scheme trucks with a member driving the truck to accept the donations on behalf of AOH. Then, the same worker / member in the same truck would change the sign on the side of the truck to read AFG and sell the donated goods on behalf of AFG. The money would then go into the "bookkeeper" account for use by the CHURCH DEFENDANTS and CHURCH BUSINESS DEFENDANTS. This was just one of the many schemes used to generate funds that perpetuated Tony Alamo's child sex ring.

40. The CHURCH DEFENDANTS and CHURCH BUSINESS DEFENDANTS share and use the same vehicles. The CHURCH DEFENDANTS and CHURCH BUSINESS DEFENDANTS share and use the same employees. The CHURCH DEFENDANTS and CHURCH BUSINESS DEFENDANTS share and use the same warehouses. The CHURCH DEFENDANTS and CHURCH BUSINESS DEFENDANTS share and use the same checking accounts. Specific examples are as follows:

    a. AFG, ADI, SJD and AOH use the same vehicles.

b. AFG, ADI, SJD and AOH use the same employees, including truck driver employees.

c. AOH will pick up a load of "charitable contributions" with a driver such as Sanford White. Then, while the vehicle is en route, the truck will become an AFG or ADI truck. The driver will now be driving for AFG or ADI. And, the goods will transform, en route, from charitable contributions made to AOH, into inventory for AFG or ADI. The goods are then sold for cash that is deposited to the "Bookkeeper" slush fund account. On many occasions, church member / church business workers would deliver bags of cash to the bank where the "Bookkeeper" account was located. SALLY DEMOULIN keeps records of this account and has authority to transfer funds to and from the account. The funds are then used to benefit Defendants TFC, GCC, AOH, TAF, MSC, SJD, AFG, ADI, and JEA.

d. The Bookkeeper fund was used for a number of purposes including:

    I. Paying for insurance on church buildings;

    II. Paying for insurance on warehouses used by Defendants AFG, ADI, SJD, and AOH;

    III. Paying for mortgages on rental houses held in the name of Defendant STEVE JOHNSON;

    IV. Paying Tony Alamo a salary;

    V. Providing Tony Alamo with the house in which he resided, abused children, and operated his child sex ring;

    VI. Money was transferred from the Bookkeeper fund to accounts for Defendant AFG and ADI when those accounts were lacking;

    VII. Paying for mortgages and insurance on homes held in the name of church members;

    VIII. Paying for medical care for church members and Tony Alamo;

e. The believers and followers of Tony Alamo operate as a commune. They have a joint venture. SALLY DEMOULIN, SHARON ALAMO, and STEVE JOHNSON are believers and followers of Tony Alamo that participate in the communal living. Therefore, ultimately, the proceeds generated from the scheme provide them with benefits.

f. The believers / joint venture participants would hold property in their name for the benefit of other members of the church and for Defendants, TFC, GCC, AOH, TAF, MSC, SJD, ADI, AFG, and JEA. This was done in an

effort to fraudulently avoid creditors by playing a "shell game" of property ownership.

41. Defendant SALLY DEMOULIN has been involved with the Tony Alamo church business scheme for years.  For several years, she has worked every day at an office located in a residence where Tony Alamo resided with his underage brides.  In this residence, Tony Alamo maintained his personal bedroom through a door that connected with this office.  Day after day, SALLY DEMOULIN would watch Tony Alamo take underage girls into his bedroom where he engaged in sex with the girls.

42. Defendant SALLY DEMOUNLIN is and was an agent for all the CHURCH DEFENDANTS and CHURCH BUSINESS DEFENDANTS.  Specifically, she is and was an agent for the following Defendants: TFC, GCC, AOH, TAF, MSC, SJD, ADI, AFG, and JEA.  These Defendants used her as their agent to conduct business.  These Defendants maintained an office where Defendant SALLY DEMOULIN worked.  That office was located in the house where Tony Alamo resided with his underage brides.  The house was paid for with money from these businesses.  The house was used by Tony Alamo to reside with his child brides—the Plaintiffs in this action.  CHURCH DEFENDANTS and CHURCH BUSINESS DEFENDANTS knew or should have known that Tony Alamo was operating a child sex ring where he sexually abused the Plaintiffs.  The abuse took place day after day in a bedroom next to the office where SALLY DEMOULIN worked.  SALLY DEMOULIN watched each day as Tony Alamo took Plaintiffs, as young as eight-years old, into his bedroom and sexually assaulted them.  The abuse was occurring on premises owned, occupied, or under the control of Defendants: TFC, GCC, AOH, TAF, MSC, SJD, ADI, AFG, and JEA.  These Defendants knew or should have known that the abuse

was occurring on this property based upon notice that was provided to their agent. However, these Defendants failed to report or prevent the abuse and failed to protect Plaintiffs from harm.

43. THE CHURCH DEFENDANTS had among them individuals that were permitted and authorized to perform marriage ceremonies.  These organizations also had leaders that conducted worship services.  The individuals given such religious authority include: Sonny Brubach, Steve Lovellette, Buster White and Mark Cunneen.  Specifically, Buster White was given the title of "associate pastor" by Alamo himself.  These individuals knew or should have known of the abuse to Plaintiffs.  These individuals are "mandatory reporters" of child abuse under Arkansas law.  As such, they were required to report the abuse; but they failed to do so.

44. SALLY DEMOULIN works for an organization that she and others of Alamo's followers refer to as "Tony Alamo Christian Ministries."  Tony Alamo Christian Ministries is not formal legal entity.  Instead it is a d/b/a name operated by the following Defendants: TFC, GCC, AOH, TAF, MSC, SJD, ADI, AFG, JEA.  Tony Alamo is the "World Pastor" of this organization and serves as its prophet. Defendant SALLY DEMOULIN has worked for these Defendants since 1985. Therefore, she has been an agent of these Defendants since that date.  As part of her role as agent for these Defendants, SALLY DEMOULIN has been given the following responsibilities and carried out the following tasks for these Defendants:

   a. She could freely transfer money between and CHURCH DEFENDANTS bank accounts and the CHURCH BUSINESS DEFENDANTS.

   b. She has titled properties in her name, but held them in trust for CHURCH DEFENDANTS and CHURCH BUSINESS DEFENDANTS.

c.  She has maintained files on all of the church members, including complaints or reports about the members.

d.  She has maintained an office in Tony Alamo's residence.  The office is located adjacent to Tony Alamo's bedroom where he abused Plaintiffs.  In this office, she maintained records related to the operations of CHURCH DEFENDANTS and CHURCH BUSINESS DEFENDANTS.

e.  She paid bills for CHURCH DEFENDANTS and CHURCH BUSINESS DEFENDANTS and kept accounting records for them.

f.  She maintained banking records for CHURCH DEFENDANTS and CHURCH BUSINESS DEFENDANTS.

g.  She was provided access and control to Bank accounts used by CHURCH DEFENDANTS and CHURCH BUSINESS DEFENDANTS.

h.  She issued checks and funds from bank accounts maintained by CHURCH DEFENDANTS and CHURCH BUSINESS DEFENDANTS.

i.  She transferred money from one of these Defendants to bank accounts in the name of others of these Defendants.

j.  She paid electric bills, gas bills, phone bills, water bills, vehicle insurance bills, mortgage bills—any kind of bills.

k.  She maintained insurance on somewhere between 20 and 100 vehicles in states such as California, New York, Oklahoma, and Arkansas.

l.  She was given responsibility for and maintained insurance on trucks operated by AFG, ADI, SJD and AOH.

m.  She was given access to and issued checks from a bank account entitled the "Advantage Food Group" bank account.

n.  She was given access to and issued checks from a bank account entitled the "Action Distributors" bank account.

o.  She was given access to and issued checks from a bank account entitled the "Bookkeeper" bank account.

p.  She was given access to and issued checks from a bank account entitled the "Jeanne Estates Apartment" bank account.

q.  She was given responsibility to pay mortgages on the property referred to as "Jeanne Estates Apartments."

r.   She was given authority and responsibility to pay mortgages on buildings used as church buildings.  One example is the church sanctuary building in Fort Smith, Arkansas.

s.   She was given authority and responsibility to pay mortgages on warehouses used by CHURCH BUSINESS DEFENDANTS to conduct business.

t.   She was given authority and responsibility to pay for mortgages on residential properties held under the name of Defendant STEVE JOHNSON.  One particular property was used as a rental house business.

u.   She was given authority and responsibility to pay for the mortgage on the home where Defendant STEVE JOHNSON resided.

v.   She prepared payroll records for ADI and AFG.

45. Also working in the office with Defendant SALLY DEMOULIN was Vicki Larison and Linda Williams.  They assisted SALLY DEMOULIN.  These two were also acting as agents of Defendants TFC, GCC, AOH, TAF, MSC, SJD, ADI, AFG, and JEA.

46. STEVE JOHNSON is one of the individuals that would hold properties in his name to facilitate the church business scheme.  As just one example, STEVE JOHNSON owns and assists in the operation of Jeanne Estates Apartments.  This is an apartment complex used to generate, hide, and launder money affiliated with the scheme. Interestingly, this apartment complex is name after Jeanne Orlando, a plaintiff in this action that was illegally taken as Alamo's wife, while underage.  The apartment complex was used to house the families of underage girls that became a part of Alamo's child sex ring.  It was also used as a recruitment tool by Tony Alamo when luring new underage brides into his child sex ring.

47. In order to facilitate his child sex ring, Tony Alamo resided in a home with no other adult men, only women and the children that they bore him.  Many of these women were underage girls.   This living arrangement was visible and apparent to all

Defendants in this action.  The women in the house were either Alamo's brides or girls being groomed to become his bride.  Alamo took girls as young as eight years old to be his bride.  To accomplish luring these very young girls into his child sex ring, Alamo lived in a house that included a carnival carousel in the backyard, a petting zoo, and swimming pool.  This residence was provided and maintained by the church business scheme (the "church business scheme" includes the CHURCH DEFENDANTS and CHURCH BUSINESS DEFENDANTS).

48. Tony Alamo lived with a number of underage brides, including Plaintiffs.  This living arrangement was no small endeavor.  To operate his child sex ring Tony Alamo needed a large house in which to live.  This house needed a number of bedrooms for the girls.  It needed a large kitchen and plenty of food for all the residents.  This house and the financial budget to operate the house were supplied by the church business scheme.  Defendants STEVE JOHNSON, SALLY DEMOULIN, and SHARON ALAMO participated in and helped to run this scheme.  The circumstances under which Alamo was living with underage girls, was apparent to those involved in the church business scheme.

49. The church business scheme also provided Tony Alamo with ovulation kits for use with the underage brides.  These kits were paid for with church business scheme funds.  There were purchased by agents of the CHURCH DEFENDANTS and the CHURCH BUSINESS DEFENDANTS.  Once such person who purchased them or knew that they existed is SALLY DEMOULIN.

50. The church business scheme paid for the medical care for girls that were trapped in the underage child bride sex ring.  When the girls were sent to the doctor or dentist,

their care was paid for with funds from the "bookkeeper" account.  An employee and agent for the church business scheme defendants would prepare the girls for what they should say to the doctors.  Some of the girls were treated for conditions that would reveal that they were sexually active with Tony Alamo.

51. Also present in the Alamo residence were "massaging units" that the underage girls used to massage Tony Alamo.  Individuals that were members of the church and individuals that were agents of the CHURCH DEFENDANTS and CHURCH BUSINESS DEFENDANTS would witness the underage girls massaging Tony Alamo.  SALLY DEMOULIN and STEVE JOHNSON witnessed underage girls massage Tony Alamo.

52. Underage girls residing in the Alamo house wore wedding bands.  Individuals such as SALLY DEMOULIN and STEVE JOHNSON witnessed the underage girls that lived with Tony Alamo wearing these wedding bands.  SALLY DEMOULIN and STEVE JOHNSON were aware that Alamo would instruct a member of the church to obtain rings for his brides with funds from the church business scheme.

53. Other individuals that were agents of CHURCH DEFENDANTS and CHURCH BUSINESS DEFENDANTS witnessed the underage girls in the home, wearing wedding bands, and massaging Tony Alamo.  On numerous occasions, STEVE JOHNSON went into the church-owned home of Tony Alamo where Tony Alamo live with underage girls.  While at this church-owned home, STEVE JOHNSON witnessed underage girls wearing wedding rings, living with Tony Alamo, who were said to be the "wives" of Tony Alamo.

54. STEVE JOHNSON is a member of the church and co-conspirator with the church business scheme.  He has served as an agent of the CHURCH DEFENDANTS and CHURCH BUSINESS DEFENDANTS.   He held church and church business properties in his name for the benefit of Alamo and the scheme described above. STEVE JOHNSON helped run Defendant businesses JEA, SJD, AOH, AFG and ADI.

55. In order to add girls to Tony Alamo's child sex ring, girls and their families were provided with houses in which to reside.  Member and leaders of the church would hold these properties in their name to facilitate the scheme.  Defendant STEVE JOHNSON is one of the church members that held such properties in his name.

56. As just one example, until 2004, STEVE JOHNSON held several properties in the Fouke area that were used by the church and church businesses.  The properties included the church in Fouke.  The girls were abused on properties that were held in his name.  Furthermore, negligence occurred on the properties held in his name.  In furtherance of the church business scheme, STEVE JOHNSON instructed his agent SALLY DEMOULIN to transfer certain of these properties to another person's name in 2004.

57. Another agent of the CHURCH DEFENDANTS and CHURCH BUSINESS DEFENDANTS is Sanford White.  Sanford White served as an agent of the CHURCH DEFENDANTS, for whom he conducted business such as driving a bus. He served as an agent for AFD, ADI, and AOH, and SJD for whom he drove a tuck, made deliveries, and accepted funds.   As part of his job, Sanford White also drove a bus to transport Tony Alamo and his underage bride child sex ring.  On several

occasions, Sanford White drove this bus with Tony Alamo and his underage brides. On several occasions, Sanford White witnessed Tony Alamo engaging in inappropriate sexual activities with underage girls.

58. Finally, Alamo's child sex ring was physically protected by Defendant ROBERT W. GILMORE d/b/a RG & ASSOCIATES SECURITY ("RGS").  RGS was the security firm hired to stand guard at properties owned by Alamo Christian Ministries.  This service included round-the-clock guards stationed at "Tony's House" where most of the abuse occurred.  RGS performed two main functions—keep those Alamo did not want on the property away, and keep those who Alamo wanted to stay from leaving. As previously discussed, Nikki Farr's escape was not complete by simply leaving the Alamo home; she was forced to great lengths to get off the property without being seen by RGS security guards.  Other Plaintiffs shared the same fear of being "caught" by RGS if they attempted to leave the Alamo compound.  By imposing this threat to Alamo's victims, RGS played an active role in facilitating Alamo's horrific abuse of the Plaintiffs.

59. Furthermore, RGS, through its agents (the security guards) was aware of the living situation at Alamo's home and the probability, if not certainty that abuse was occurring.  Specifically, RGS was aware that Alamo was the only adult male living in the home and that numerous underage girls lived there as well.  RGS had direct knowledge that older men involved with Alamo Christian Ministries were sexually active with underage girls in the church and refused to report such activity.  As just one example, a former security guard employed by RGS, while on duty, witnessed a clergy member receiving oral sex from one of the underage girls living on the Alamo

compound.   This security guard reported the incident to his supervisor, Robert Gilmore, who told him to ignore it.   This is the same Robert Gilmore who later penned letters of support for Alamo Christian Ministries claiming that sexual abuse of underage girls by Alamo and other adult male church members had never occurred. To date, RGS has never reported any abuse or suspicion of abuse to authorities. Robert Gilmore, on behalf of RGS, remains a supporter of Tony Alamo and Alamo Christian Ministries.

60. The Plaintiffs in this case are the victims of this elaborate scheme described above.

61. On July 24, 2009, Tony Alamo was convicted in this Court on ten (10) counts of Interstate Transportation of Minors for Illegal Sexual Purposes, Rape, Sexual Assault and Contributing to the Delinquency of Minors.   He was sentenced to the maximum punishment of 175 years in prison. The Court of Appeals has affirmed his conviction. Tony Alamo sexually abused Plaintiffs.   He sexually abused each of the Plaintiffs while they were under eighteen-years of age.

62. The Plaintiffs in this lawsuit were sexually abused between the years of 1993 and 2010.   Plaintiffs assert causes of action against Defendants for the damages resulting from this abuse.   Plaintiffs allege that there are liability insurance policies that provide coverage for Defendants' liability to Plaintiffs.   These policies include, but are not limited to insurance policies provided by the following insurance companies: Foremost Insurance Company, Nautilus Insurance Company, National Indemnity Company, Lloyd's of London, Farmer's Insurance Company, Penn-Star Insurance Company, Farmer's Insurance Group, and Cameron Mutual Insurance Company.

## V.  PLAINTIFFS' CAUSES OF ACTION AGAINST DEFENDANT TWENTY FIRST CENTURY HOLINESS TABERNACLE CHURCH INC. ("TFC")

63. Defendant TFC employed Tony Alamo during time periods relevant to this complaint. TFC operated a church and Tony Alamo was its "World Pastor." Plaintiffs were members in and participated in the church. Defendant TFC owned and controlled Defendants AOH, SJD, ADI, AFG, and JEA during time periods relevant to this complaint. Defendant TFC was doing business as Tony Alamo Christian Ministries. TFC was involved in a joint venture with Defendants GCC, AOH, TAF, MSC, SJD, ADI, AFG, and JEA. Defendant TFC exercised ownership or control over the properties where Plaintiffs were abused. Defendant TFC is a mandatory reporter under the Arkansas Child Maltreatment Act. TFC is civilly liable for damages caused by its failure to report.

A.    Negligent Hiring

64. Defendant TFC was negligent in the hiring of Tony Alamo in the following particulars:

    a.  Failing to properly investigate and examine Tony Alamo's criminal background;

    b.  Failing to properly investigate and examine Tony Alamo's prior background which would have revealed behavior and conduct indicating a likelihood that Tony Alamo would engage in the type of criminal conduct he engaged in while employed by Defendant TFC and that he was unfit for the position of power, trust and authority bestowed upon him by Defendant TFC; and

    c.  Failing to properly investigate the social history, psychological, psychosocial, moral and emotional fitness of Tony Alamo prior to allowing him to assume a position of trust and power over children as a proper investigation would have revealed Tony Alamo was unfit for the position of power, trust and authority bestowed upon him by Defendant TFC.

65. Defendant TFC knew or should have known that Tony Alamo was dangerous to the children he had access to and power over through his employment with Defendant

TFC.   These acts and omissions, taken by themselves or in combination, were a proximate cause of the Plaintiffs' injuries and damages.

B.    Negligent Supervision and Retention

66.   Defendant TFC was negligent in the employment, supervision and retention of Tony Alamo in the following particulars:

    a.   Failing to properly monitor and supervise the activities of Tony Alamo;

    b.   Providing Tony Alamo a position which engendered trust and gave him authority and power over children and their families, including Plaintiffs herein;

    c.   Providing Tony Alamo a position and environment which created opportunities for him to take emotional and physical advantage of children, including the Plaintiffs herein;

    d.   Providing Tony Alamo a position where he would have unsupervised control over children and which engendered trust creating an environment where he would have unsupervised control of children, including Plaintiffs herein;

    e.   Allowing Tony Alamo to come into contact and association with children, including the Plaintiffs herein, when Defendant TFC knew or should have known that Tony Alamo was peculiarly likely to molest children; and

    f.   Failing to have proper policies, procedures and protocols in place within the Defendant TFC organization to ensure dangerous employees, such as Tony Alamo, would not be hired or would not remain employed by Defendant TFC.

67.   Defendant TFC employed Tony Alamo and knew or should have known that Tony Alamo was dangerous to the children he had access to and power over through his employment.   These acts and omissions, taken by themselves or in combination, were a proximate cause of the Plaintiffs' injuries and damages.

C.    Vicarious Liability

68.   Because Tony Alamo was an employee / agent of Defendant TFC, acting in the course and scope of his employment at the time of the incidents forming the basis of this suit, Defendant TFC is vicariously liable for the actions of Tony Alamo.

69. Because Defendants AOH, SJD, ADI, AFG, and JEA were employees/agents of Defendant TFC, acting in the course and scope of their employment at the time of the incidents forming the basis of this suit, Defendant TFC is vicariously liable for the actions of Defendants AOH, SJD, ADI, AFG, and JEA.

70. Because each of the individual Defendants SALLY DEMOULIN, SHARON ALAMO and STEVE JOHNSON were employees/agents of Defendant TFC, acting in the course and scope of their employment or agency at the time of the incidents forming the basis of this suit, Defendant TFC is vicariously liable for the actions of those individuals.

71. Furthermore, each of the individuals described in the "facts" section above as agents of TFC were employees/agents of Defendant TFC, acting in the course and scope of their employment or agency at the time of the incidents forming the basis of this suit, Defendant TFC is vicariously liable for the actions of those individuals.

72. These acts and omissions, taken by themselves or in combination, were a proximate cause of the injuries and damages to Plaintiffs.

D.    Negligence

73. Defendant TFC is an organization operating as a religious organization, church, and/or cult.  Plaintiffs were members of and/or participated in activities of Defendant TFC.

74. Defendant TFC breached its legal duty to Plaintiffs when they failed to act reasonably.  Defendant TFC allowed Tony Alamo access to children during its normal business hours and normal course of business.  Furthermore, this religious organization authorized, endorsed, and facilitated Tony Alamo entering into

"marriages" with underage girls, including the following Plaintiffs: DESIREE KOLBEK, AMY EDDY, JEANNETTE ORLANDO, SUMMER HAGAN, JAMIE RODRIGUEZ, and PEBBLES RODRIGUEZ.   Plaintiff NICOLE FARR was groomed and prepared to be a child bride but escaped from a compound operated by Defendant TFC before the actual marriage could take place.  Defendant TFC failed to protect Plaintiffs from sexual abuse and physical beatings.  The sexual abuse occurred when Tony Alamo verbally discussed sexual activities with underage Plaintiffs, when Tony Alamo took nude photographs of Plaintiffs, and when Tony Alamo raped Plaintiffs.  The physical abuse was delivered by Tony Alamo when he physically beat the Plaintiffs.  Physical abuse was also delivered by agents of TFC such as SALLY DEMOULIN when she beat Plaintiffs at the instruction of Tony Alamo.  Defendant TFC breached the duty owed to Plaintiffs in the following particulars:

    a.   Defendant TFC was negligent in the employment, supervision and retention of Tony Alamo;

    b.   Allowing Tony Alamo to come into contact and association with children, including the Plaintiffs herein, when Defendant TFC knew or should have known that Tony Alamo was peculiarly likely to molest children;

    c.   Defendant TFC created an environment around Tony Alamo that afforded Tony Alamo a peculiar opportunity to commit the acts of molestation described herein; and

    d.   Failing to have proper policies, procedures and protocols in place within the Defendant TFC's organization to ensure dangerous employees, such as Tony Alamo, would not be hired or would not remain employed by Defendant TFC.

E.    <u>18 U.S.C. §1595</u>

75. Defendant TFC recruited, enticed, harbored, transported, provided, obtained, and/or maintained Plaintiffs knowing, or in reckless disregard of the fact that means of force, threats of force, fraud, coercion or any combination of such means was used to cause

the Plaintiffs to engage in a commercial sex act, or that the Plaintiffs had not attained the age of 18 years and were caused to be in a commercial sex act.

76. Defendant TFC received something of value from participation in the venture described above.

77. Pursuant to 18 U.S.C. §1595 Plaintiffs assert a civil cause of action.

F.    Premises Liability

78. Plaintiffs in this action were taken by Tony Alamo to live as brides while under age. Plaintiffs were kept in Tony Alamo's residence. His residence was especially attractive to underage children such as Plaintiffs were at the time. The residence included a carnival carousel, petting zoo, and swimming pool. The residence was owned by the business scheme known as Tony Alamo Christian Ministries. One such owner in this scheme is TFC. Furthermore, TFC held church activities at the residence of Tony Alamo.

79. The bedroom where Tony Alamo raped his underage brides was located adjacent to an office in his house. This office was staffed by employees of TFC, including SALLY DEMOULIN. In this office, business activities of TFC were conducted. SALLY DEMOULIN would watch Tony Alamo walk through the office with his underage brides and then carry them into his bedroom where he would rape them. SALLY DEMOULIN witnessed comments from Tony Alamo about what he had done to the girls. As an agent and employee of TFC, SALLY DEMOULIN had notice of the risk that Tony Alamo presented to underage girls residing on the premises.

80. TFC was aware of the imminent threat of harm that Tony Alamo presented to Plaintiffs.  As a resident on the premises, he presented an unreasonable risk of harm to underage girls.  TFC, as an owner, operator, and / or occupier of the property had the ability and duty to protect underage Plaintiffs from Tony Alamo's harm, but wholly failed to protect them.

G.      Joint Venture Liability

81. All CHURCH DEFENDANTS and CHURCH BUSINESS DEFENDANTS were involved in a joint venture.  All of the participants have a community of interest in the object and purpose of the undertaking.  Specifically, the undertaking is the operation of Tony Alamo Christian Ministries.  Each of the participants has an equal right to share in the control.  And, there is an implied agreement in the sharing of the profits.

82. All CHURCH DEFENDANTS and CHURCH BUSINESS DEFENDANTS contribute funds to and withdraw funds from the "bookkeeper" account operated by their agent SALLY DEMOULIN.  Because the agents and participants of this joint venture were negligent during the course and scope of the venture, all participants are liable for the damages caused to Plaintiffs.  TFC was a participant in the joint venture and has liability to Plaintiffs.

H.      Mandatory Reporting Liability

83. Defendant TFC is a "Mandated Reporter" pursuant to Arkansas Code 12-18-402.  Specifically, TFC is a clergy member.  As such, the organization is required to immediately notify the child abuse hotline if it has reasonable cause to suspect that a child has been subjected to child maltreatment.  TFC failed to report the abuse.  Therefore, it is liable to Plaintiffs for all damages resulting from the abuse.

## VI.  PLAINTIFFS' CAUSES OF ACTION AGAINST DEFENDANT GLORYLAND CHRISTIAN CHURCH ("GCC")

84. Defendant GCC employed Tony Alamo during time periods relevant to this complaint.  GCC operated a church and Tony Alamo was its "World Pastor." Plaintiffs were members in and participated in the church. Defendant GCC owned and controlled Defendants AOH, SJD, ADI, AFG, and JEA, during time periods relevant to this complaint. Defendant GCC was doing business as Tony Alamo Christian Ministries.  GCC was involved in a joint venture with Defendants TFC, AOH, TAF, MSC, SJD, ADI, AFG, and JEA.  Defendant GCC exercised ownership or control over the properties where Plaintiffs were abused.  Defendant GCC is a mandatory reporter under the Arkansas Child Maltreatment Act.  GCC is civilly liable for damages caused by its failure to report.

A.   <u>Negligent Hiring</u>

85. Defendant GCC was negligent in the hiring of Tony Alamo in the following particulars:

    a.  Failing to properly investigate and examine Tony Alamo's criminal background;

    b.  Failing to properly investigate and examine Tony Alamo's prior background which would have revealed behavior and conduct indicating a likelihood that Tony Alamo would engage in the type of criminal conduct he engaged in while employed by Defendant GCC and that he was unfit for the position of power, trust and authority bestowed upon him by Defendant GCC; and

    c.  Failing to properly investigate the social history, psychological, psychosocial, moral and emotional fitness of Tony Alamo prior to allowing him to assume a position of trust and power over children as a proper investigation would have revealed Tony Alamo was unfit for the position of power, trust and authority bestowed upon him by Defendant GCC.

86. Defendant GCC knew or should have known that Tony Alamo was dangerous to the children he had access to and power over through his employment with Defendant

GCC.   These acts and omissions, taken by themselves or in combination, were a proximate cause of the Plaintiffs' injuries and damages.

B.   <u>Negligent Supervision and Retention</u>

87. Defendant GCC was negligent in the employment, supervision and retention of Tony Alamo in the following particulars:

    a.   Failing to properly monitor and supervise the activities of Tony Alamo;

    b.   Providing Tony Alamo a position which engendered trust and gave him authority and power over children and their families, including Plaintiffs herein;

    c.   Providing Tony Alamo a position and environment which created opportunities for him to take emotional and physical advantage of children, including the Plaintiffs herein;

    d.   Providing Tony Alamo a position where he would have unsupervised control over children and which engendered trust creating an environment where he would have unsupervised control of children, including Plaintiffs herein;

    e.   Allowing Tony Alamo to come into contact and association with children, including the Plaintiffs herein, when Defendant GCC knew or should have known that Tony Alamo was peculiarly likely to molest children; and

    f.   Failing to have proper policies, procedures and protocols in place within the Defendant GCC's organization to ensure dangerous employees, such as Tony Alamo, would not be hired or would not remain employed by Defendant GCC.

88. Defendant GCC employed Tony Alamo and knew or should have known that Tony Alamo was dangerous to the children he had access to and power over through his employment.   These acts and omissions, taken by themselves or in combination, were a proximate cause of the Plaintiffs' injuries and damages.

C.   <u>Vicarious Liability</u>

89. Because Tony Alamo was an employee/agent of Defendant GCC, acting in the course and scope of his employment at the time of the incidents forming the basis of this suit, Defendant GCC is vicariously liable for the actions of Tony Alamo.

90. Because Defendants AOH, SJD, ADI, AFG, and JEA were employees/agents of Defendant GCC, acting in the course and scope of their employment at the time of the incidents forming the basis of this suit, Defendant GCC is vicariously liable for the actions of Defendants AOH, SJD, ADI, AFG, and JEA.

91. Because each of the individual Defendants SALLY DEMOULIN, SHARON ALAMO, and STEVE JOHNSON were employees/agents of Defendant GCC, acting in the course and scope of their employment or agency at the time of the incidents forming the basis of this suit, Defendant GCC is vicariously liable for the actions of those individuals.

92. Furthermore, each of the individuals described in the "facts" section above as an agent of GCC were employees/agents of Defendant GCC, acting in the course and scope of their employment or agency at the time of the incidents forming the basis of this suit, Defendant GCC is vicariously liable for the actions of those individuals.

93. These acts and omissions, taken by themselves or in combination, were a proximate cause of the injuries and damages to Plaintiffs.

D.    Negligence

94. Defendant GCC is an organization operating as a religious organization, church, and/or cult.  Plaintiffs were members of and/or participated in activities of Defendant GCC.

95. Defendant GCC breached its legal duty to Plaintiffs when it failed to act reasonably. Defendant GCC allowed Tony Alamo access to children during its normal business hours and normal course of business.   Furthermore, this religious organization authorized, endorsed, and facilitated Tony Alamo entering into "marriages" with underage girls, including the following Plaintiffs: DESIREE KOLBEK, AMY EDDY, JEANNETTE ORLANDO, SUMMER HAGAN, JAMIE RODRIGUEZ, and PEBBLES RODRIGUEZ.  Plaintiff NICOLE FARR was groomed and prepared to be a child bride but escaped from a compound operated by Defendant GCC before the actual marriage could take place. Defendant GCC failed to protect Plaintiffs from sexual abuse and physical beatings.  The sexual abuse occurred when Tony Alamo verbally discussed sexual activities with underage Plaintiffs, when Tony Alamo took nude photographs of Plaintiffs, and when Tony Alamo raped Plaintiffs.  The physical abuse was administered by Tony Alamo when he physically beat the Plaintiffs. Physical abuse was also delivered by agents of GCC such as SALLY DEMOULIN when she beat Plaintiffs at the instruction of Tony Alamo.  Defendant GCC breached the duty owed to Plaintiffs in the following particulars:

a. Defendant GCC was negligent in the employment, supervision and retention of Tony Alamo;

b. Allowing Tony Alamo to come into contact and association with children, including the Plaintiffs herein, when Defendant GCC knew or should have known that Tony Alamo was peculiarly likely to molest children;

c. Defendant GCC created an environment around Tony Alamo that afforded Tony Alamo a peculiar opportunity to commit the acts of molestation described herein; and

d. Failing to have proper policies, procedures and protocols in place within the Defendant GCC's organization to ensure dangerous employees, such as Tony Alamo, would not be hired or would not remain employed by Defendant GCC.

E.     18 U.S.C. §1595

96. Defendant GCC recruited, enticed, harbored, transported, provided, obtained, and/or maintained Plaintiffs knowing, or in reckless disregard of the fact, that means of force, threats of force, fraud, coercion or any combination of such means was used to cause the Plaintiffs to engage in a commercial sex act, or that the Plaintiffs had not attained the age of 18 years and were caused to be in a commercial sex act.

97. Defendant GCC received something of value from participation in the venture described above.

98. Pursuant to 18 U.S.C. §1595 Plaintiffs assert a civil cause of action.

F.     Premises Liability

99. Plaintiffs in this action were taken by Tony Alamo to live as brides while under age. Plaintiffs were kept in Tony Alamo's residence.   His residence was especially attractive to underage children such as Plaintiffs were at the time.   The residence included a carnival carousel, petting zoo, and swimming pool.   The residence was owned by the business scheme known as Tony Alamo Christian Ministries.   One such owner in this scheme is GCC.   Furthermore, GCC held church activities at the residence of Tony Alamo.

100.    The bedroom where Tony Alamo raped his underage brides was located adjacent to an office in his house.   This office was staffed by employees of GCC, including SALLY DEMOULIN.   In this office, business activities of GCC were conducted. SALLY DEMOULIN would watch Tony Alamo walk through the office with his underage brides and then carry them into his bedroom where he would rape them. SALLY DEMOULIN witnessed comments from Tony Alamo about what he had

done to the girls.  As an agent and employee of GCC, SALLY DEMOULIN had notice of the risk that Tony Alamo presented to underage girls residing on the premises.

101.   GCC was aware of the imminent threat of harm that Tony Alamo presented to Plaintiffs.  As a resident on the premises, he presented an unreasonable risk of harm to underage girls. GCC, as an owner, operator, and / or occupier of the property had the ability and duty to protect underage Plaintiffs from Tony Alamo's harm, but wholly failed to protect them.

G.     Joint Venture Liability

102.   All CHURCH DEFENDANTS and CHURCH BUSINESS DEFENDANTS were involved in a joint venture.  All of the participants have a community of interest in the object and purpose of the undertaking.  Specifically, the undertaking is the operation of Tony Alamo Christian Ministries.  Each of the participants have an equal right to share in the control.  And, there is an implied agreement in the sharing of the profits.

103.   All CHURCH DEFENDANTS and CHURCH BUSINESS DEFENDANTS contribute funds to and withdraw funds from the "bookkeeper" account operated by their agent SALLY DEMOULIN.  Because the agents and participants of this joint venture were negligent during the course and scope of the venture, all participants are liable for the damages caused to Plaintiffs.  GCC was a participant in the joint venture and has liability to Plaintiffs.

H.     Mandatory Reporting Liability

104.   Defendant GCC is a "Mandated Reporter" pursuant to Arkansas Code 12-18-402. Specifically, GCC is a clergy member.  As such, the organization is required to

immediately notify the child abuse hotline if it has reasonable cause to suspect that a child has been subjected to child maltreatment.   GCC failed to report the abuse. Therefore, it is liable to Plaintiffs for all damages resulting from the abuse.

## VII.  PLAINTIFFS' CAUSES OF ACTION AGAINST DEFENDANT MUSIC SQUARE CHURCH INC. ("MSC")

105.    Defendant MSC employed Tony Alamo during time periods relevant to this complaint.   MSC operated a church and Tony Alamo was its "World Pastor." Plaintiffs were members in and participated in the church. Defendant MSC owned and controlled Defendants AOH, SJD, ADI, AFG, and JEA, during time periods relevant to this complaint. Defendant MSC was doing business as Tony Alamo Christian Ministries.   MSC was involved in a joint venture with Defendants GCC, AOH, TAF, TFC, SJD, ADI, AFG, and JEA.   Defendant MSC exercised ownership or control over the properties where Plaintiffs were abused.   Defendant MSC is a mandatory reporter under the Arkansas Child Maltreatment Act.   MSC is civilly liable for damages caused by its failure to report.

A.      Negligent Hiring

106.    Defendant MSC was negligent in the hiring of Tony Alamo in the following particulars:

  a.   Failing to properly investigate and examine Tony Alamo's criminal background;

  b.   Failing to properly investigate and examine Tony Alamo's prior background which would have revealed behavior and conduct indicating a likelihood that Tony Alamo would engage in the type of criminal conduct he engaged in while employed by Defendant MSC and that he was unfit for the position of power, trust and authority bestowed upon him by Defendant MSC; and

  c.   Failing to properly investigate the social history, psychological, psychosocial, moral and emotional fitness of Tony Alamo prior to allowing him to assume a position of trust and power over children as a proper investigation would have

revealed Tony Alamo was unfit for the position of power, trust and authority bestowed upon him by Defendant MSC.

107.   Defendant MSC knew or should have known that Tony Alamo was dangerous to the children he had access to and power over through his employment with Defendant MSC.   These acts and omissions, taken by themselves or in combination, were a proximate cause of the Plaintiffs' injuries and damages.

B.    <u>Negligent Supervision and Retention</u>

108.   Defendant MSC was negligent in the employment, supervision and retention of Tony Alamo in the following particulars:

    a.   Failing to properly monitor and supervise the activities of Tony Alamo;

    b.   Providing Tony Alamo a position which engendered trust and gave him authority and power over children and their families, including Plaintiffs herein;

    c.   Providing Tony Alamo a position and environment which created opportunities for him to take emotional and physical advantage of children, including the Plaintiffs herein;

    d.   Providing Tony Alamo a position where he would have unsupervised control over children and which engendered trust creating an environment where he would have unsupervised control of children, including Plaintiffs herein;

    e.   Allowing Tony Alamo to come into contact and association with children, including the Plaintiffs herein, when Defendant MSC knew or should have known that Tony Alamo was peculiarly likely to molest children; and

    f.   Failing to have proper policies, procedures and protocols in place within the Defendant MSC's organization to ensure dangerous employees, such as Tony Alamo, would not be hired or would not remain employed by Defendant MSC.

109.   Defendant MSC employed Tony Alamo and knew or should have known that Tony Alamo was dangerous to the children he had access to and power over through his employment.   These acts and omissions, taken by themselves or in combination, were a proximate cause of the Plaintiffs' injuries and damages.

C.    Vicarious Liability

110.    Because Tony Alamo was an employee/agent of Defendant MSC, acting in the course and scope of his employment at the time of the incidents forming the basis of this suit, Defendant MSC is vicariously liable for the actions of Tony Alamo.

111.    Because Defendants AOH, SJD, ADI, AFG, and JEA were employees/agents of Defendant MSC, acting in the course and scope of their employment at the time of the incidents forming the basis of this suit, Defendant MSC is vicariously liable for the actions of Defendants AOH, SJD, ADI, AFG, and JEA.

112.    Furthermore, each of the individual described in the "facts" section above as agents of MSC were employees/agents of Defendant TFC, acting in the course and scope of their employment or agency at the time of the incidents forming the basis of this suit, Defendant MSC is vicariously liable for the actions of those individuals.

113.    Because each of the individual Defendants SALLY DEMOULIN, SHARON ALAMO, and STEVE JOHNSON were employees/agents of Defendant MSC, acting in the course and scope of their employment or agency at the time of the incidents forming the basis of this suit, Defendant MSC is vicariously liable for the actions of those individuals.

114.    These acts and omissions, taken by themselves or in combination, were a proximate cause of the injuries and damages to Plaintiffs.

D.    Negligence

115.    Defendant MSC is an organization operating as a religious organization, church, and/or cult.  Plaintiffs were members of and/or participated in activities of Defendant MSC.

116.    Defendant MSC breached its legal duty to Plaintiffs when it failed to act reasonably. Defendant MSC allowed Tony Alamo access to children during its normal business hours and normal course of business.  Furthermore, this religious organization authorized, endorsed, and facilitated Tony Alamo entering into "marriages" with underage girls, including the following Plaintiffs: DESIREE KOLBEK, AMY EDDY, JEANNETTE ORLANDO, SUMMER HAGAN, JAMIE RODRIGUEZ, and PEBBLES RODRIGUEZ.   Plaintiff NICOLE FARR was groomed and prepared to be a child bride but escaped from a compound operated by Defendant MSC before the actual marriage could take place. Defendant MSC failed to protect Plaintiffs from sexual abuse and physical beatings.  The sexual abuse occurred when Tony Alamo verbally discussed sexual activities with underage Plaintiffs, when Tony Alamo took nude photographs of Plaintiffs, and when Tony Alamo raped Plaintiffs.  The physical abuse was delivered by Tony Alamo when he physically beat the Plaintiffs.  Physical abuse was also delivered by agents of MSC such as SALLY DEMOULIN when she beat Plaintiffs at the instruction of Tony Alamo.   Defendant MSC breached the duty owed to Plaintiffs in the following particulars:

a.  Defendant MSC was negligent in the employment, supervision and retention of Tony Alamo;

b.  Allowing Tony Alamo to come into contact and association with children, including the Plaintiffs herein, when Defendant MSC knew or should have known that Tony Alamo was peculiarly likely to molest children;

c.  Defendant MSC created an environment around Tony Alamo that afforded Tony Alamo a peculiar opportunity to commit the acts of molestation described herein; and

d.  Failing to have proper policies, procedures and protocols in place within the Defendant MSC's organization to ensure dangerous employees, such as Tony

Alamo, would not be hired or would not remain employed by Defendant MSC.

E.   18 U.S.C. §1595

117.   Defendant MSC recruited, enticed, harbored, transported, provided, obtained, and/or maintained Plaintiffs knowing, or in reckless disregard of the fact that means of force, threats of force, fraud, coercion or any combination of such means was used to cause the Plaintiffs to engage in a commercial sex act, or that the Plaintiffs had not attained the age of 18 years and were caused to be in a commercial sex act.

118.   Defendant MSC received something of value from participation in the venture described above.

119.   Pursuant to 18 U.S.C. §1595 Plaintiffs assert a civil cause of action.

F.   Premises Liability

120.   Plaintiffs in this action were taken by Tony Alamo to live as brides while under age.  Plaintiffs were kept in Tony Alamo's residence.  His residence was especially attractive to underage children such as Plaintiffs were at the time.  The residence included a carnival carousel, petting zoo, and swimming pool.  The residence was owned by the business scheme known as Tony Alamo Christian Ministries.  One such owner in this scheme is MSC.  Furthermore, MSC held church activities at the residence of Tony Alamo.

121.   The bedroom where Tony Alamo raped his underage brides was located adjacent to an office in his house.  This office was staffed by employees of MSC, including SALLY DEMOULIN.  In this office, business activities of MSC were conducted. SALLY DEMOULIN would watch Tony Alamo walk through the office with his underage brides and then carry them into his bedroom where he would rape them.

SALLY DEMOULIN witnessed comments from Tony Alamo about what he had done to the girls.  As an agent and employee of MSC, SALLY DEMOULIN had notice of the risk that Tony Alamo presented to underage girls residing on the premises.

122.  MSC was aware of the imminent threat of harm that Tony Alamo presented to Plaintiffs.  As a resident on the premises, he presented an unreasonable risk of harm to underage girls. MSC, as an owner, operator, and / or occupier of the property had the ability and duty to protect underage Plaintiffs from Tony Alamo's harm, but wholly failed to protect them.

G.     Joint Venture Liability

123.  All CHURCH DEFENDANTS and CHURCH BUSINESS DEFENDANTS were involved in a joint venture.  All of the participants have a community of interest in the object and purpose of the undertaking.  Specifically, the undertaking is the operation of Tony Alamo Christian Ministries.  Each of the participants has an equal right to share in the control.  And, there is an implied agreement in the sharing of the profits.

124.  All CHURCH DEFENDANTS and CHURCH BUSINESS DEFENDANTS contribute funds to and withdraw funds from the "bookkeeper" account operated by their agent SALLY DEMOULIN.  Because the agents and participants of this joint venture were negligent during the course and scope of the venture, all participants are liable for the damages caused to Plaintiffs.  MSC was a participant in the joint venture and has liability to Plaintiffs.

H.     Mandatory Reporting Liability

125. Defendant MSC is a "Mandated Reporter" pursuant to Arkansas Code 12-18-402. Specifically, MSC is a clergy member. As such, the organization is required to immediately notify the child abuse hotline if it has reasonable cause to suspect that a child has been subjected to child maltreatment. MSC failed to report the abuse. Therefore, it is liable to Plaintiffs for all damages resulting from the abuse.

## VIII. PLAINTIFFS' CAUSES OF ACTION AGAINST DEFENDANT TONY AND SUSAN ALAMO FOUNDATION ("TAF")

126. Defendant TAF employed Tony Alamo during time periods relevant to this complaint. TAF operated a church and Tony Alamo was its "World Pastor." Plaintiffs were members in and participated in the church. Defendant TAF owned and controlled Defendants AOH, SJD, ADI, AFG, and JEA, during time periods relevant to this complaint. Defendant TAF was doing business as Tony Alamo Christian Ministries. TAF was involved in a joint venture with Defendants GCC, AOH, TFC, MSC, SJD, ADI, AFG, and JEA. Defendant TAF exercised ownership or control over the properties where Plaintiffs were abused. Defendant TAF is a mandatory reporter under the Arkansas Child Maltreatment Act. TAF is civilly liable for damages caused by its failure to report.

A.    Negligent Hiring

127. Defendant TAF was negligent in the hiring of Tony Alamo in the following particulars:

   a. Failing to properly investigate and examine Tony Alamo's criminal background;

   b. Failing to properly investigate and examine Tony Alamo's prior background which would have revealed behavior and conduct indicating a likelihood that Tony Alamo would engage in the type of criminal conduct he engaged in while employed by Defendant TAF and that he was unfit for the position of power, trust and authority bestowed upon him by Defendant TAF; and

    c.  Failing to properly investigate the social history, psychological, psychosocial, moral and emotional fitness of Tony Alamo prior to allowing him to assume a position of trust and power over children as a proper investigation would have revealed Tony Alamo was unfit for the positions of power, trust and authority bestowed upon him by Defendant TAF.

128.   Defendant TAF knew or should have known that Tony Alamo was dangerous to the children he had access to and power over through his employment with Defendant TAF. These acts and omissions, taken by themselves or in combination, were a proximate cause of the Plaintiffs' injuries and damages.

B.    Negligent Supervision and Retention

129.   Defendant TAF was negligent in the employment, supervision and retention of Tony Alamo in the following particulars:

    a.  Failing to properly monitor and supervise the activities of Tony Alamo;

    b.  Providing Tony Alamo a position which engendered trust and gave him authority and power over children and their families, including Plaintiffs herein;

    c.  Providing Tony Alamo a position and environment which created opportunities for him to take emotional and physical advantage of children, including the Plaintiffs herein;

    d.  Providing Tony Alamo a position where he would have unsupervised control over children and which engendered trust creating an environment where he would have unsupervised control of children, including Plaintiffs herein;

    e.  Allowing Tony Alamo to come into contact and association with children, including the Plaintiffs herein, when Defendant TAF knew or should have known that Tony Alamo was peculiarly likely to molest children; and

    f.  Failing to have proper policies, procedures and protocols in place within the Defendant TAF's organization to ensure dangerous employees, such as Tony Alamo, would not be hired or would not remain employed by Defendant TAF.

130.   Defendant TAF employed Tony Alamo and knew or should have known that Tony Alamo was dangerous to the children he had access to and power over through

his employment.  These acts and omissions, taken by themselves or in combination, were a proximate cause of the Plaintiffs' injuries and damages.

C.     Vicarious Liability

131.   Because Tony Alamo was an employee/agent of each defendant, acting in the course and scope of his employment at the time of the incidents forming the basis of this suit, Defendant TAF is vicariously liable for the actions of Tony Alamo.

132.   Because Defendants AOH, SJD, ADI, AFG, and JEA were employees/agents of Defendant TAF, acting in the course and scope of their employment at the time of the incidents forming the basis of this suit, Defendant TAF is vicariously liable for the actions of Defendants AOH, SJD, ADI, AFG, and JEA.

133.   Because each of the individual Defendants SALLY DEMOULIN, SHARON ALAMO, and STEVE JOHNSON were employees/agents of Defendant TAF, acting in the course and scope of their employment or agency at the time of the incidents forming the basis of this suit, Defendant TAF is vicariously liable for the actions of those individuals.

134.   Furthermore, each of the individuals described in the "facts" section above as agent of TAF were employees/agents of Defendant TAF, acting in the course and scope of their employment or agency at the time of the incidents forming the basis of this suit, Defendant TAF is vicariously liable for the actions of those individuals.

135.   These acts and omissions, taken by themselves or in combination, were a proximate cause of the injuries and damages to Plaintiffs.

D.     Negligence

136.   Defendant TAF is an organization operating as a religious organization, church, and/or cult.  Plaintiffs were members of and/or participated in activities of Defendant TAF.

137.   Defendant TAF breached its legal duty to Plaintiffs when they failed to act reasonably. Defendant TAF allowed Tony Alamo access to children during its normal business hours and normal course of business.   Furthermore, this religious organization authorized, endorsed, and facilitated Tony Alamo entering into "marriages" with underage girls, including the following Plaintiffs: DESIREE KOLBEK, AMY EDDY, JEANNETTE ORLANDO, SUMMER HAGAN, JAMIE RODRIGUEZ, and PEBBLES RODRIGUEZ.   Plaintiff NICOLE FARR was groomed and prepared to be a child bride but escaped from a compound operated by Defendant TAF before the actual marriage could take place. Defendant TAF failed to protect Plaintiffs from sexual abuse and physical beatings.  The sexual abuse occurred when Tony Alamo verbally discussed sexual activities with underage Plaintiffs, when Tony Alamo took nude photographs of Plaintiffs, and when Tony Alamo raped Plaintiffs.  The physical abuse was delivered by Tony Alamo when he physically beat the Plaintiffs.  Physical abuse was also delivered by agents of TAF such as SALLY DEMOULIN when she beat Plaintiffs at the instruction of Tony Alamo.  Defendant TAF breached the duty owed to Plaintiffs in the following particulars:

   a.  Defendant TAF were negligent in the employment, supervision and retention of Tony Alamo;
   b.  Allowing Tony Alamo to come into contact and association with children, including the Plaintiffs herein, when Defendant TAF knew or should have known that Tony Alamo was peculiarly likely to molest children;
   c.  Defendant TAF created an environment around Tony Alamo that afforded Tony Alamo a peculiar opportunity to commit the acts of molestation described herein; and

    d.  Failing to have proper policies, procedures and protocols in place within the Defendant TAF's organization to ensure dangerous employees, such as Tony Alamo, would not be hired or would not remain employed by Defendant TAF.

E.    <u>18 U.S.C. §1595</u>

138.    Defendant TAF recruited, enticed, harbored, transported, provided, obtained, and/or maintained Plaintiffs knowing, or in reckless disregard of the fact that means of force, threats of force, fraud, coercion or any combination of such means was used to cause the Plaintiffs to engage in a commercial sex act, or that the Plaintiffs had not attained the age of 18 years and were caused to be in a commercial sex act.

139.    Defendant TAF received something of value from participation in the venture described above.

140.    Pursuant to 18 U.S.C. §1595 Plaintiffs assert a civil cause of action.

F.    <u>Premises Liability</u>

141.    Plaintiffs in this action were taken by Tony Alamo to live as brides while under age.  Plaintiffs were kept in Tony Alamo's residence.  His residence was especially attractive to underage children such as Plaintiffs were at the time.  The residence included a carnival carousel, petting zoo, and swimming pool.  The residence was owned by the business scheme known as Tony Alamo Christian Ministries.  One such owner in this scheme is TAF.  Furthermore, TAF held church activities at the residence of Tony Alamo.

142.    The bedroom where Tony Alamo raped his underage brides was located adjacent to an office in his house.  This office was staffed by employees of TAF, including SALLY DEMOULIN.  In this office, business activities of TAF were conducted. SALLY DEMOULIN would watch Tony Alamo walk through the office with his

underage brides and then carry them into his bedroom where he would rape them. SALLY DEMOULIN witnessed comments from Tony Alamo about what he had done to the girls.  As an agent and employee of TAF, SALLY DEMOULIN had notice of the risk that Tony Alamo presented to underage girls residing on the premises.

143.    TAF was aware of the imminent threat of harm that Tony Alamo presented to Plaintiffs.  As a resident on the premises, he presented an unreasonable risk of harm to underage girls. TAF, as an owner, operator, and / or occupier of the property had the ability and duty to protect underage Plaintiffs from Tony Alamo's harm, but wholly failed to protect them.

G.      Joint Venture Liability

144.    All CHURCH DEFENDANTS and CHURCH BUSINESS DEFENDANTS were involved in a joint venture.  All of the participants have a community of interest in the object and purpose of the undertaking.  Specifically, the undertaking is the operation of Tony Alamo Christian Ministries.  Each of the participants has an equal right to share in the control.  And, there is an implied agreement in the sharing of the profits.

145.    All CHURCH DEFENDANTS and CHURCH BUSINESS DEFENDANTS contribute funds to and withdraw funds from the "bookkeeper" account operated by their agent SALLY DEMOULIN.  Because the agents and participants of this joint venture were negligent during the course and scope of the venture, all participants are liable for the damages caused to Plaintiffs.  TAF was a participant in the joint venture and has liability to Plaintiffs.

## IX.  PLAINTIFFS' CAUSES OF ACTION AGAINST DEFENDANT ARMFUL OF HELP ("AOH")

146.   Defendant AOH employed Tony Alamo during time periods relevant to this complaint.  Defendant AOH was doing business as Tony Alamo Christian Ministries. AOH was involved in a joint venture with Defendants GCC, TFC, TAF, MSC, SJD, ADI, AFG, and JEA.  Defendant AOH exercised ownership or control over the properties where Plaintiffs were abused.

A.   <u>Negligent Hiring</u>

147.   Defendant AOH was negligent in the hiring of Tony Alamo in the following particulars:

a.   Failing to properly investigate and examine Tony Alamo's criminal background;

b.   Failing to properly investigate and examine Tony Alamo's prior background which would have revealed behavior and conduct indicating a likelihood that Tony Alamo would engage in the type of criminal conduct he engaged in while employed by Defendant AOH and that he was unfit for the position of power, trust and authority bestowed upon him by Defendant AOH; and

c.   Failing to properly investigate the social history, psychological, psychosocial, moral and emotional fitness of Tony Alamo prior to allowing him to assume a position of trust and power over children as a proper investigation would have revealed Tony Alamo was unfit for the position of power, trust and authority bestowed upon him by Defendant AOH.

148.   Defendant AOH knew or should have known that Tony Alamo was dangerous to the children he had access to and power over through his employment with Defendant AOH.  These acts and omissions, taken by themselves or in combination, were a proximate cause of the Plaintiffs' injuries and damages.

B.   <u>Negligent Supervision and Retention</u>

149.   Defendant AOH was negligent in the employment, supervision and retention of Tony Alamo in the following particulars:

a.   Failing to properly monitor and supervise the activities of Tony Alamo;

b. Providing Tony Alamo a position which engendered trust and gave him authority and power over children and their families, including Plaintiffs herein;

c. Providing Tony Alamo a position and environment which created opportunities for him to take emotional and physical advantage of children, including the Plaintiffs herein;

d. Providing Tony Alamo a position where he would have unsupervised control over children and which engendered trust creating an environment where he would have unsupervised control of children, including Plaintiffs herein;

e. Allowing Tony Alamo to come into contact and association with children, including the Plaintiffs herein, when Defendant AOH knew or should have known that Tony Alamo was peculiarly likely to molest children; and

f. Failing to have proper policies, procedures and protocols in place within the Defendant AOH'S organization to ensure dangerous employees, such as Tony Alamo, would not be hired or would not remain employed by Defendant AOH.

150.    Defendant AOH employed Tony Alamo and knew or should have known that Tony Alamo was dangerous to the children he had access to and power over through his employment.  These acts and omissions, taken by themselves or in combination, were a proximate cause of the Plaintiffs' injuries and damages.

C.    <u>Vicarious Liability</u>

151.    Because Tony Alamo was an employee/agent of Defendant AOH, acting in the course and scope of his employment at the time of the incidents forming the basis of this suit, Defendant AOH is vicariously liable for the actions of Tony Alamo.

152.    Because Defendants TFC, SJD, ADI, AFG, and JEA were employees/agents of Defendant AOH, acting in the course and scope of their employment at the time of the incidents forming the basis of this suit, Defendant AOH is vicariously liable for the actions of Defendants TFC, SJD, ADI, AFG, and JEA.

153. Because each of the individual Defendants SALLY DEMOULIN, SHARON ALAMO, and STEVE JOHNSON were employees/agents of Defendant AOH, acting in the course and scope of their employment or agency at the time of the incidents forming the basis of this suit, Defendant AOH is vicariously liable for the actions of those individuals.

154. Furthermore, each of the individuals described in the "facts" section above as agents of AOH were employees/agents of Defendant AOH, acting in the course and scope of their employment or agency at the time of the incidents forming the basis of this suit, Defendant AOH is vicariously liable for the actions of those individuals.

155. These acts and omissions, taken by themselves or in combination, were a proximate cause of the injuries and damages to Plaintiffs.

D.     18 U.S.C. §1595

156. Defendant AOH recruited, enticed, harbored, transported, provided, obtained, and/or maintained Plaintiffs knowing, or in reckless disregard of the fact, that means of force, threats of force, fraud, coercion or any combination of such means was used to cause the Plaintiffs to engage in a commercial sex act, or that the Plaintiffs had not attained the age of 18 years and were caused to be in a commercial sex act.

157. Defendant AOH received something of value from participation in the venture described above.

158. Pursuant to 18 U.S.C. §1595 Plaintiff asserts a civil cause of action.

E.     Premises Liability

159. Plaintiffs in this action were taken by Tony Alamo to live as brides while under age. Plaintiffs were kept in Tony Alamo's residence. He residence was especially

attractive to underage children such as Plaintiffs were at the time.   The residence included a carnival carousel, petting zoo, and swimming pool.   The residence was owned by the business scheme known as Tony Alamo Christian Ministries.   One such owner in this scheme is AOH.

160.     Furthermore, the bedroom where Tony Alamo raped his underage brides was located adjacent to an office in his house.   This office was staffed by employees of AOH, including SALLY DEMOULIN.   In this office, business activities of AOH were conducted.   SALLY DEMOULIN would watch Tony Alamo walk through the office with his underage brides and then carry them into his bedroom where he would rape them.   SALLY DEMOULIN witnessed comments from Tony Alamo about what he had done to the girls.   As an agent and employee of AOH, SALLY DEMOULIN had notice of the risk that Tony Alamo presented to underage girls residing on the premises.

161.     AOH was aware of the imminent threat of harm that Tony Alamo presented to Plaintiffs.   As a resident on the premises, he presented an unreasonable risk of harm to underage girls. AOH, as an owner, operator, and / or occupier of the property had the ability and duty to protect underage Plaintiffs from Tony Alamo's harm, but wholly failed to protect them.

F.     Joint Venture Liability

162.     All CHURCH DEFENDANTS and CHURCH BUSINESS DEFENDANTS were involved in a joint venture.  All of the participants have a community of interest in the object and purpose of the undertaking.   Specifically, the undertaking is the operation

of Tony Alamo Christian Ministries. Each of the participants has an equal right to share in the control. And, there is an implied agreement in the sharing of the profits.

163. All CHURCH DEFENDANTS and CHURCH BUSINESS DEFENDANTS contribute funds to and withdraw funds from the "bookkeeper" account operated by their agent SALLY DEMOULIN. Because the agents and participants of this joint venture were negligent during the course and scope of the venture, all participants are liable for the damages caused to Plaintiffs. AOH was a participant in the joint venture and has liability to Plaintiffs.

## X. PLAINTIFFS' CAUSES OF ACTION AGAINST DEFENDANT SJ DISTRIBUTING, INC. ("SJD")

164. Defendant SJD employed Tony Alamo during time periods relevant to this complaint. Defendant SJD was doing business as Tony Alamo Christian Ministries. SJD was involved in a joint venture with Defendants GCC, TFC, TAF, MSC, AOH, ADI, AFG, and JEA. Defendant SJD exercised ownership or control over the properties where Plaintiffs were abused.

A. Negligent Hiring

165. Defendant SJD was negligent in the hiring of Tony Alamo in the following particulars:

    a. Failing to properly investigate and examine Tony Alamo's criminal background;

    b. Failing to properly investigate and examine Tony Alamo's prior background which would have revealed behavior and conduct indicating a likelihood that Tony Alamo would engage in the type of criminal conduct he engaged in while employed by Defendant SJD and that he was unfit for the position of power, trust and authority bestowed upon him by Defendant SJD; and

    c. Failing to properly investigate the social history, psychological, psychosocial, moral and emotional fitness of Tony Alamo prior to allowing him to assume a position of trust and power over children as a proper investigation would have

revealed Tony Alamo was unfit for the position of power, trust and authority bestowed upon him by Defendant SJD.

166.  Defendant SJD knew or should have known that Tony Alamo was dangerous to the children he had access to and power over through his employment with Defendant SJD. These acts and omissions, taken by themselves or in combination, were a proximate cause of the Plaintiffs' injuries and damages.

B.  <u>Negligent Supervision and Retention</u>

167.  Defendant SJD was negligent in the employment, supervision and retention of Tony Alamo in the following particulars:

    a.  Failing to properly monitor and supervise the activities of Tony Alamo;

    b.  Providing Tony Alamo a position which engendered trust and gave him authority and power over children and their families, including Plaintiffs herein;

    c.  Providing Tony Alamo a position and environment which created opportunities for him to take emotional and physical advantage of children, including the Plaintiffs herein;

    d.  Providing Tony Alamo a position where he would have unsupervised control over children and which engendered trust creating an environment where he would have unsupervised control of children, including Plaintiffs herein;

    e.  Allowing Tony Alamo to come into contact and association with children, including the Plaintiffs herein, when Defendant SJD knew or should have known that Tony Alamo was peculiarly likely to molest children; and

    f.  Failing to have proper policies, procedures and protocols in place within the Defendant SJD's organization to ensure dangerous employees, such as Tony Alamo, would not be hired or would not remain employed by Defendant SJD.

168.  Defendant SJD employed Tony Alamo and knew or should have known that Tony Alamo was dangerous to the children he had access to and power over through his employment. These acts and omissions, taken by themselves or in combination, were a proximate cause of the Plaintiffs' injuries and damages.

C.      Vicarious Liability

169.    Because Tony Alamo was an employee/agent of Defendant SJD, acting in the course and scope of his employment at the time of the incidents forming the basis of this suit, Defendant SJD is vicariously liable for the actions of Tony Alamo.

170.    Because Defendants TFC, AOH, ADI, AFG, and JEA were employees/agents of Defendant SJD, acting in the course and scope of their employment at the time of the incidents forming the basis of this suit, Defendant SJD is vicariously liable for the actions of Defendants TFC, AOH, ADI, AFG, and JEA.

171.    Because each of the individual Defendants SALLY DEMOULIN, SHARON ALAMO, and STEVE JOHNSON were employees/agents of Defendant SJD, acting in the course and scope of their employment or agency at the time of the incidents forming the basis of this suit, Defendant SJD is vicariously liable for the actions of those individuals.

172.    Furthermore, each of the individuals described in the "facts" section above as agents of SJD were employees/agents of Defendant SJD, acting in the course and scope of their employment or agency at the time of the incidents forming the basis of this suit, Defendant SJD is vicariously liable for the actions of those individuals.

173.    These acts and omissions, taken by themselves or in combination, were a proximate cause of the injuries and damages to Plaintiffs.

D.      Transporting

174.    Defendant SJD knowingly transported Plaintiffs or coerced Plaintiffs to travel with intent that Plaintiffs engage in sexual activity in violation of 18 U.S.C. §109A. SJD is a company with trucks and truck drivers.  SJD truck driver employees were

used to drive buses that transported underage Plaintiffs.  SJD received financial benefit from transporting the underage Plaintiffs.  By participating in the scheme, SJD had access to the "bookkeeper" slush fund account.  From this account, scheme profits would be distributed to those participating in the venture.

175.    Specifically, Defendant SJD knowingly transported an individual who had not attained the age of 18 years in interstate commerce with intent that the individual engage in any sexual activity for which any person can be charged with a criminal offense.  Such conduct is unlawful pursuant to 18 U.S.C. §2423 (a).  Plaintiffs assert a civil cause of action pursuant to 18 U.S.C. §2255.

176.    Furthermore, Defendant SJD arranged, induced, procured, or facilitated the travel of a person knowing that such a person is traveling in interstate commerce for the purpose of engaging in illicit sexual conduct.  Defendant SJD engaged in such conduct for the purpose of commercial advantage or financial gain. Such conduct is unlawful pursuant to 18 U.S.C. §2423 (d).  Plaintiffs assert a civil cause of action pursuant to 18 U.S.C. §2255.

177.    Furthermore, Defendant SJD attempted to violate subsection (a) and/or (d) of 18 U.S.C. §2423.  Plaintiffs assert a civil cause of action pursuant to 18 U.S.C. §2255.

178.    Furthermore, Defendant SJD conspired to violate subsection (a) and/or (d) of 18 U.S.C. §2423.  Plaintiffs assert a civil cause of action pursuant to 18 U.S.C. §2255.

E.    18 U.S.C. §1595

179.    Defendant SJD recruited, enticed, harbored, transported, provided, obtained, and/or maintained Plaintiffs knowing, or in reckless disregard of the fact, that means of force, threats of force, fraud, coercion or any combination of such means was used

to cause the Plaintiffs to engage in a commercial sex act, or that the Plaintiffs had not attained the age of 18 years and were caused to be in a commercial sex act.

180.    Defendant SJD received something of value from participation in the venture described above.

181.    Pursuant to 18 U.S.C. §1595 Plaintiffs assert a civil cause of action.

F.     Premises Liability

182.    Plaintiffs in this action were taken by Tony Alamo to live as brides while under age.   Plaintiffs were kept in Tony Alamo's residence.   He residence was especially attractive to underage children such as Plaintiffs were at the time.   The residence included a carnival carousel, petting zoo, and swimming pool.   The residence was owned by the business scheme known as Tony Alamo Christian Ministries.   One such owner in this scheme is SJD.

183.    Furthermore, the bedroom where Tony Alamo raped his underage brides was located adjacent to an office in his house.   This office was staffed by employees of SJD, including SALLY DEMOULIN.   In this office, business activities of SJD were conducted.   SALLY DEMOULIN would watch Tony Alamo walk through the office with his underage brides and then carry them into his bedroom where he would rape them.   SALLY DEMOULIN witnessed comments from Tony Alamo about what he had done to the girls.   As an agent and employee of SJD, SALLY DEMOULIN had notice of the risk that Tony Alamo presented to underage girls residing on the premises.

184.    SJD was aware of the imminent threat of harm that Tony Alamo presented to Plaintiffs.   As a resident on the premises, he presented an unreasonable risk of harm

to underage girls. SJD, as an owner, operator, and / or occupier of the property had the ability and duty to protect underage Plaintiffs from Tony Alamo's harm, but wholly failed to protect them.

G.   Joint Venture Liability

185.   All CHURCH DEFENDANTS and CHURCH BUSINESS DEFENDANTS were involved in a joint venture. All of the participants have a community of interest in the object and purpose of the undertaking. Specifically, the undertaking is the operation of Tony Alamo Christian Ministries. Each of the participants has an equal right to share in the control. And, there is an implied agreement in the sharing of the profits.

186.   All CHURCH DEFENDANTS and CHURCH BUSINESS DEFENDANTS contribute funds to and withdraw funds from the "bookkeeper" account operated by their agent SALLY DEMOULIN. Because the agents and participants of this joint venture were negligent during the course and scope of the venture, all participants are liable for the damages caused to Plaintiffs. SJD was a participant in the joint venture and has liability to Plaintiffs.

## XI.  PLAINTIFFS' CAUSES OF ACTION AGAINST DEFENDANT ACTION DISTRIBUTORS INC. ("ADI")

187.   Defendant ADI employed Tony Alamo during time periods relevant to this complaint. Defendant ADI was doing business as Tony Alamo Christian Ministries. ADI was involved in a joint venture with Defendants GCC, TFC, TAF, MSC, AOH, SJD, AFG, and JEA. Defendant ADI exercised ownership or control over the properties where Plaintiffs were abused.

A.   Negligent Hiring

188.   Defendant ADI was negligent in the hiring of Tony Alamo in the following particulars:

   a.   Failing to properly investigate and examine Tony Alamo's criminal background;

   b.   Failing to properly investigate and examine Tony Alamo's prior background which would have revealed behavior and conduct indicating a likelihood that Tony Alamo would engage in the type of criminal conduct he engaged in while employed by Defendant ADI and that he was unfit for the position of power, trust and authority bestowed upon him by Defendant ADI; and

   c.   Failing to properly investigate the social history, psychological, psychosocial, moral and emotional fitness of Tony Alamo prior to allowing him to assume a position of trust and power over children as a proper investigation would have revealed Tony Alamo was unfit for the position of power, trust and authority bestowed upon him by Defendant ADI.

189.   Defendant ADI knew or should have known that Tony Alamo was dangerous to the children he had access to and power over through his employment with Defendant ADI.   These acts and omissions, taken by themselves or in combination, were a proximate cause of the Plaintiffs' injuries and damages.

B.   <u>Negligent Supervision and Retention</u>

190.   Defendant ADI was negligent in the employment, supervision and retention of Tony Alamo in the following particulars:

   a.   Failing to properly monitor and supervise the activities of Tony Alamo;

   b.   Providing Tony Alamo a position which engendered trust and gave him authority and power over children and their families, including Plaintiffs herein;

   c.   Providing Tony Alamo a position and environment which created opportunities for him to take emotional and physical advantage of children, including the Plaintiffs herein;

   d.   Providing Tony Alamo a position where he would have unsupervised control over children and which engendered trust creating an environment where he would have unsupervised control of children, including Plaintiffs herein;

---

e.   Allowing Tony Alamo to come into contact and association with children, including the Plaintiffs herein, when Defendant ADI knew or should have known that Tony Alamo was peculiarly likely to molest children; and

f.   Failing to have proper policies, procedures and protocols in place within the Defendant ADI's organization to ensure dangerous employees, such as Tony Alamo, would not be hired or would not remain employed by Defendant ADI.

191.   Defendant ADI employed Tony Alamo and knew or should have known that Tony Alamo was dangerous to the children he had access to and power over through his employment.  These acts and omissions, taken by themselves or in combination, were a proximate cause of the Plaintiffs' injuries and damages.

C.   Vicarious Liability

192.   Because Tony Alamo was an employee/agent of Defendant ADI, acting in the course and scope of his employment at the time of the incidents forming the basis of this suit, Defendant ADI is vicariously liable for the actions of Tony Alamo.

193.   Because each of the individual Defendants SALLY DEMOULIN, SHARON ALAMO, and STEVE JOHNSON were employees/agents of Defendant ADI, acting in the course and scope of their employment or agency at the time of the incidents forming the basis of this suit, Defendant ADI is vicariously liable for the actions of those individuals.

194.   These acts and omissions, taken by themselves or in combination, were a proximate cause of the injuries and damages to Plaintiffs.

D.   Transporting

195.   Defendant ADI knowingly transported Plaintiffs or coerced Plaintiffs to travel with intent that Plaintiffs engage in sexual activity in violation of 18 U.S.C. §109A.

196.   Specifically, Defendant ADI knowingly transported an individual who had not attained the age of 18 years in interstate commerce with intent that the individual

engage in any sexual activity for which any person can be charged with a criminal offense.  Such conduct is unlawful pursuant to 18 U.S.C. §2423 (a).  Plaintiffs assert a civil cause of action pursuant to 18 U.S.C. §2255.

197.     Furthermore, Defendant ADI arranged, induced, procured, or facilitated the travel of a person knowing that such a person is traveling in interstate commerce for the purpose of engaging in illicit sexual conduct.  Defendant ADI engaged in such conduct for the purpose of commercial advantage or financial gain.  Such conduct is unlawful pursuant to 18 U.S.C. §2423 (d).  Plaintiffs assert a civil cause of action pursuant to 18 U.S.C. §2255.

198.     Furthermore, Defendant ADI attempted to violate subsection (a) and/or (d) of 18 U.S.C. §2423.  Plaintiffs assert a civil cause of action pursuant to 18 U.S.C. §2255.

199.     Furthermore, Defendant ADI conspired to violate subsection (a) and/or (d) of 18 U.S.C. §2423.  Plaintiffs assert a civil cause of action pursuant to 18 U.S.C. §2255.

E.     18 U.S.C. §1595

200.     Defendant ADI recruited, enticed, harbored, transported, provided, obtained, and/or maintained Plaintiffs knowing, or in reckless disregard of the fact, that means of force, threats of force, fraud, coercion or any combination of such means was used to cause the Plaintiffs to engage in a commercial sex act, or that the Plaintiffs had not attained the age of 18 years and were caused to be in a commercial sex act.

201.     Defendant ADI received something of value from participation in the venture described above.

202.     Pursuant to 18 U.S.C. §1595 Plaintiffs assert a civil cause of action.

F.     Premises Liability

203.    Plaintiffs in this action were taken by Tony Alamo to live as brides while under age.  Plaintiffs were kept in Tony Alamo's residence.  He residence was especially attractive to underage children such as Plaintiffs were at the time.  The residence included a carnival carousel, petting zoo, and swimming pool.  The residence was owned by the business scheme known as Tony Alamo Christian Ministries.  One such owner in this scheme is ADI.

204.    Furthermore, the bedroom where Tony Alamo raped his underage brides was located adjacent to an office in his house.  This office was staffed by employees of ADI, including SALLY DEMOULIN.  In this office, business activities of ADI were conducted.  SALLY DEMOULIN would watch Tony Alamo walk through the office with his underage brides and then carry them into his bedroom where he would rape them.  SALLY DEMOULIN witnessed comments from Tony Alamo about what he had done to the girls.  As an agent and employee of ADI, SALLY DEMOULIN had notice of the risk that Tony Alamo presented to underage girls residing on the premises.

205.    ADI was aware of the imminent threat of harm that Tony Alamo presented to Plaintiffs.  As a resident on the premises, he presented an unreasonable risk of harm to underage girls. ADI, as an owner, operator, and / or occupier of the property had the ability and duty to protect underage Plaintiffs from Tony Alamo's harm, but wholly failed to protect them.

G.    Joint Venture Liability

206.    All CHURCH DEFENDANTS and CHURCH BUSINESS DEFENDANTS were involved in a joint venture.  All of the participants have a community of interest in the

object and purpose of the undertaking.  Specifically, the undertaking is the operation of Tony Alamo Christian Ministries.  Each of the participants has an equal right to share in the control.  And, there is an implied agreement in the sharing of the profits.

207.  All CHURCH DEFENDANTS and CHURCH BUSINESS DEFENDANTS contribute funds to and withdraw funds from the "bookkeeper" account operated by their agent SALLY DEMOULIN.  Because the agents and participants of this joint venture were negligent during the course and scope of the venture, all participants are liable for the damages caused to Plaintiffs.  ADI was a participant in the joint venture and has liability to Plaintiffs.

### XII.  PLAINTIFFS' CAUSES OF ACTION AGAINST DEFENDANT ADVANTAGE FOOD GROUP ("AFG")

208.  Defendant AFG employed Tony Alamo during time periods relevant to this complaint.  Defendant AFG was doing business as Tony Alamo Christian Ministries.  AFG was involved in a joint venture with Defendants GCC, TFC, TAF, MSC, AOH, ADI, SJD, and JEA.  Defendant AFG exercised ownership or control over the properties where Plaintiffs were abused.

A.  Negligent Hiring

209.  Defendant AFG was negligent in the hiring of Tony Alamo in the following particulars:

    a.  Failing to properly investigate and examine Tony Alamo's criminal background;

    b.  Failing to properly investigate and examine Tony Alamo's prior background which would have revealed behavior and conduct indicating a likelihood that Tony Alamo would engage in the type of criminal conduct he engaged in while employed by Defendant AFG and that he was unfit for the position of power, trust and authority bestowed upon him by Defendant AFG; and

    c.  Failing to properly investigate the social history, psychological, psychosocial, moral and emotional fitness of Tony Alamo prior to allowing him to assume a position of trust and power over children as a proper investigation would have revealed Tony Alamo was unfit for the position of power, trust and authority bestowed upon him by Defendant AFG.

210.  Defendant AFG knew or should have known that Tony Alamo was dangerous to the children he had access to and power over through his employment with Defendant AFG.  These acts and omissions, taken by themselves or in combination, were a proximate cause of the Plaintiffs' injuries and damages.

B.  <u>Negligent Supervision and Retention</u>

211.  Defendant AFG was negligent in the employment, supervision and retention of Tony Alamo in the following particulars:

    a.  Failing to properly monitor and supervise the activities of Tony Alamo;

    b.  Providing Tony Alamo a position which engendered trust and gave him authority and power over children and their families, including Plaintiffs herein;

    c.  Providing Tony Alamo a position and environment which created opportunities for him to take emotional and physical advantage of children, including the Plaintiffs herein;

    d.  Providing Tony Alamo a position where he would have unsupervised control over children and which engendered trust creating an environment where he would have unsupervised control of children, including Plaintiffs herein;

    e.  Allowing Tony Alamo to come into contact and association with children, including the Plaintiffs herein, when Defendant AFG knew or should have known that Tony Alamo was peculiarly likely to molest children; and

    f.  Failing to have proper policies, procedures and protocols in place within the Defendant AFG's organization to ensure dangerous employees, such as Tony Alamo, would not be hired or would not remain employed by Defendant AFG.

212.  Defendant AFG employed Tony Alamo and knew or should have known that Tony Alamo was dangerous to the children he had access to and power over through

his employment.  These acts and omissions, taken by themselves or in combination, were a proximate cause of the Plaintiffs' injuries and damages.

C.     Vicarious Liability

213.   Because Tony Alamo was an employee/agent of Defendant AFG, acting in the course and scope of his employment at the time of the incidents forming the basis of this suit, Defendant AFG is vicariously liable for the actions of Tony Alamo.

214.   Because Defendants TFC, AOH, ADI, SJD, and JEA were employees/agents of Defendant AFG, acting in the course and scope of their employment at the time of the incidents forming the basis of this suit, Defendant AFG is vicariously liable for the actions of Defendants TFC, AOH, ADI, SJD, and JEA.

215.   Because each of the individual Defendants SALLY DEMOULIN, SHARON ALAMO, and STEVE JOHNSON were employees/agents of Defendant AFG, acting in the course and scope of their employment or agency at the time of the incidents forming the basis of this suit, Defendant AFG is vicariously liable for the actions of those individuals.

216.   Furthermore, each of the individuals described in the "facts" section above as agents of AFG were employees/agents of Defendant AFG, acting in the course and scope of their employment or agency at the time of the incidents forming the basis of this suit, Defendant AFG is vicariously liable for the actions of those individuals.

217.   These acts and omissions, taken by themselves or in combination, were a proximate cause of the injuries and damages to Plaintiffs.

D.     Transporting

218.    Defendant AFG knowingly transported Plaintiffs or coerced Plaintiffs to travel with intent that Plaintiffs engage in sexual activity in violation of 18 U.S.C. §109A. AFG is a company with trucks and truck drivers. AFG truck driver employees were used to drive buses that transported underage Plaintiffs. AFG received financial benefit from transporting the underage Plaintiffs.  By participating in the scheme, AFG had access to the "bookkeeper" slush fund account.  From this account, scheme profits would be distributed to those participating in the venture.

219.    Specifically, Defendant AFG knowingly transported an individual who had not attained the age of 18 years in interstate commerce with intent that the individual engage in any sexual activity for which any person can be charged with a criminal offense.  Such conduct is unlawful pursuant to 18 U.S.C. §2423 (a).  Plaintiffs assert a civil cause of action pursuant to 18 U.S.C. §2255.

220.    Furthermore, Defendant AFG arranged, induced, procured, or facilitated the travel of a person knowing that such a person is traveling in interstate commerce for the purpose of engaging in illicit sexual conduct. Defendant AFG engaged in such conduct for the purpose of commercial advantage or financial gain. Such conduct is unlawful pursuant to 18 U.S.C. §2423 (d).  Plaintiffs assert a civil cause of action pursuant to 18 U.S.C. §2255.

221.    Furthermore, Defendant AFG attempted to violate subsection (a) and/or (d) of 18 U.S.C. §2423.  Plaintiffs assert a civil cause of action pursuant to 18 U.S.C. §2255.

222.    Furthermore, Defendant AFG conspired to violate subsection (a) and/or (d) of 18 U.S.C. §2423.  Plaintiffs assert a civil cause of action pursuant to 18 U.S.C. §2255.

E.    18 U.S.C. §1595

223.    Defendant AFG recruited, enticed, harbored, transported, provided, obtained, and/or maintained Plaintiffs knowing, or in reckless disregard of the fact, that means of force, threats of force, fraud, coercion or any combination of such means was used to cause the Plaintiffs to engage in a commercial sex act, or that the Plaintiffs had not attained the age of 18 years and were caused to be in a commercial sex act.

224.    Defendant AFG received something of value from participation in the venture described above.

225.    Pursuant to 18 U.S.C. §1595 Plaintiffs assert a civil cause of action.

F.      <u>Premises Liability</u>

226.    Plaintiffs in this action were taken by Tony Alamo to live as brides while under age.  Plaintiffs were kept in Tony Alamo's residence.  His residence was especially attractive to underage children such as Plaintiffs were at the time.  The residence included a carnival carousel, petting zoo, and swimming pool.  The residence was owned by the business scheme known as Tony Alamo Christian Ministries.  One such owner in this scheme is AFG.  Furthermore, AFG held church activities at the residence of Tony Alamo.

227.    The bedroom where Tony Alamo raped his underage brides was located adjacent to an office in his house.  This office was staffed by employees of AFG, including SALLY DEMOULIN.  In this office, business activities of AFG were conducted. SALLY DEMOULIN would watch Tony Alamo walk through the office with his underage brides and then carry them into his bedroom where he would rape them. SALLY DEMOULIN witnessed comments from Tony Alamo about what he had done to the girls.  As an agent and employee of AFG, SALLY DEMOULIN had

notice of the risk that Tony Alamo presented to underage girls residing on the premises.

228.   AFG was aware of the imminent threat of harm that Tony Alamo presented to Plaintiffs.  As a resident on the premises, he presented an unreasonable risk of harm to underage girls. AFG, as an owner, operator, and / or occupier of the property had the ability and duty to protect underage Plaintiffs from Tony Alamo's harm, but wholly failed to protect them.

G.     Joint Venture Liability

229.   All CHURCH DEFENDANTS and CHURCH BUSINESS DEFENDANTS were involved in a joint venture.  All of the participants have a community of interest in the object and purpose of the undertaking.  Specifically, the undertaking is the operation of Tony Alamo Christian Ministries.  Each of the participants has an equal right to share in the control.  And, there is an implied agreement in the sharing of the profits.

230.   All CHURCH DEFENDANTS and CHURCH BUSINESS DEFENDANTS contribute funds to and withdraw funds from the "bookkeeper" account operated by their agent SALLY DEMOULIN.  Because the agents and participants of this joint venture were negligent during the course and scope of the venture, all participants are liable for the damages caused to Plaintiffs. AFG was a participant in the joint venture and has liability to Plaintiffs.

### XIII.  PLAINTIFFS' CAUSES OF ACTION AGAINST DEFENDANT JEANNE ESTATES APARTMENTS INC. ("JEA")

231.   Defendant JEA employed Tony Alamo during time periods relevant to this complaint. Defendant JEA was doing business as Tony Alamo Christian Ministries. JEA was involved in a joint venture with Defendants GCC, TFC, TAF, MSC, AOH,

ADI, AFG, and SJD.   Defendant JEA exercised ownership or control over the properties where Plaintiffs were abused.

A.  <u>Negligent Hiring</u>

232.   Defendant JEA was negligent in the hiring of Tony Alamo in the following particulars:

> a.  Failing to properly investigate and examine Tony Alamo's criminal background;
>
> b.  Failing to properly investigate and examine Tony Alamo's prior background which would have revealed behavior and conduct indicating a likelihood that Tony Alamo would engage in the type of criminal conduct he engaged in while employed by Defendant JEA and that he was unfit for the position of power, trust and authority bestowed upon him by Defendant JEA; and
>
> c.  Failing to properly investigate the social history, psychological, psychosocial, moral and emotional fitness of Tony Alamo prior to allowing him to assume a position of trust and power over children as a proper investigation would have revealed Tony Alamo was unfit for the position of power, trust and authority bestowed upon him by JEA.

233.   Defendant JEA knew or should have known that Tony Alamo was dangerous to the children he had access to and power over through his employment with Defendant JEA.   These acts and omissions, taken by themselves or in combination, were a proximate cause of the Plaintiffs' injuries and damages.

B.   <u>Negligent Supervision and Retention</u>

234.   Defendant JEA was negligent in the employment, supervision and retention of Tony Alamo in the following particulars:

> a.  Failing to properly monitor and supervise the activities of Tony Alamo;
>
> b.  Providing Tony Alamo a position which engendered trust and gave him authority and power over children and their families, including Plaintiffs herein;

c.  Providing Tony Alamo a position and environment which created opportunities for him to take emotional and physical advantage of children, including the Plaintiffs herein;

d.  Providing Tony Alamo a position where he would have unsupervised control over children and which engendered trust creating an environment where he would have unsupervised control of children, including Plaintiffs herein;

e.  Allowing Tony Alamo to come into contact and association with children, including the Plaintiffs herein, when Defendant JEA knew or should have known that Tony Alamo was peculiarly likely to molest children; and

f.  Failing to have proper policies, procedures and protocols in place within the Defendant JEA's organization to ensure dangerous employees, such as Tony Alamo, would not be hired or would not remain employed by Defendant JEA.

235.   Defendant JEA employed Tony Alamo and knew or should have known that Tony Alamo was dangerous to the children he had access to and power over through his employment.  These acts and omissions, taken by themselves or in combination, were a proximate cause of the Plaintiffs' injuries and damages.

C.   <u>Vicarious Liability</u>

236.   Because Tony Alamo was an employee/agent of Defendant JEA, acting in the course and scope of his employment at the time of the incidents forming the basis of this suit, Defendant JEA is vicariously liable for the actions of Tony Alamo.

237.   Because Defendants TFC, AOH, ADI, AFG, and SJD were employees/agents of Defendant JEA, acting in the course and scope of their employment at the time of the incidents forming the basis of this suit, Defendant JEA is vicariously liable for the actions of Defendants TFC, AOH, ADI, AFG, and SJD.

238.   Because each of the individual Defendants SALLY DEMOULIN, SHARON ALAMO and STEVE JOHNSON were employees/agents of Defendant JEA, acting in the course and scope of their employment or agency at the time of the incidents

forming the basis of this suit, Defendant JEA is vicariously liable for the actions of those individuals.

239.    Furthermore, each of the individuals described in the "facts" section above as agents of JEA were employees/agents of Defendant JEA, acting in the course and scope of their employment or agency at the time of the incidents forming the basis of this suit, Defendant JEA is vicariously liable for the actions of those individuals.

240.    These acts and omissions, taken by themselves or in combination, were a proximate cause of the injuries and damages to Plaintiffs.

D.    <u>Negligence</u>

241.    Defendant JEA provided and maintained property that housed Plaintiffs that were subjected to sexual abuse by Tony Alamo. Obviously, as a result of the acts and omissions of Defendant JEA, Plaintiffs have suffered, and will continue to suffer, injuries as set forth more fully below.

242.    Defendant JEA was negligent in that Defendant JEA knew or should have known that Tony Alamo was sexually abusing Plaintiffs but failed to take reasonable steps to stop, prevent, or report the abuse.  Such conduct was a proximate cause of Plaintiffs' injuries.

E.    <u>18 U.S.C. §1595</u>

243.    Defendant JEA recruited, enticed, harbored, transported, provided, obtained, and/or maintained Plaintiffs knowing, or in reckless disregard of the fact, that means of force, threats of force, fraud, coercion or any combination of such means was used to cause the Plaintiffs to engage in a commercial sex act, or that the Plaintiffs had not attained the age of 18 years and were caused to be in a commercial sex act.

244.  Defendant JEA received something of value from participation in the venture described above.

245.  Pursuant to 18 U.S.C. §1595 Plaintiffs assert a civil cause of action.

F.  <u>Premises Liability</u>

246.  Plaintiffs in this action were taken by Tony Alamo to live as brides while under age.  Plaintiffs were kept in Tony Alamo's residence.  His residence was especially attractive to underage children such as Plaintiffs were at the time.  The residence included a carnival carousel, petting zoo, and swimming pool.  The residence was owned by the business scheme known as Tony Alamo Christian Ministries.  One such owner in this scheme is JEA.  Furthermore, JEA held church activities at the residence of Tony Alamo.

247.  The bedroom where Tony Alamo raped his underage brides was located adjacent to an office in his house.  This office was staffed by employees of JEA, including SALLY DEMOULIN.  In this office, business activities of JEA were conducted. SALLY DEMOULIN would watch Tony Alamo walk through the office with his underage brides and then carry them into his bedroom where he would rape them. SALLY DEMOULIN witnessed comments from Tony Alamo about what he had done to the girls.  As an agent and employee of JEA, SALLY DEMOULIN had notice of the risk that Tony Alamo presented to underage girls residing on the premises.

248.  JEA was aware of the imminent threat of harm that Tony Alamo presented to Plaintiffs.  As a resident on the premises, he presented an unreasonable risk of harm to underage girls. JEA, as an owner, operator, and / or occupier of the property had

the ability and duty to protect underage Plaintiffs from Tony Alamo's harm, but wholly failed to protect them.

G.    Joint Venture Liability

249.    All CHURCH DEFENDANTS and CHURCH BUSINESS DEFENDANTS were involved in a joint venture.  All of the participants have a community of interest in the object and purpose of the undertaking.  Specifically, the undertaking is the operation of Tony Alamo Christian Ministries.  Each of the participants have an equal right to share in the control.  And, there is an implied agreement in the sharing of the profits.

250.    All CHURCH DEFENDANTS and CHURCH BUSINESS DEFENDANTS contribute funds to and withdraw funds from the "bookkeeper" account operated by their agent SALLY DEMOULIN.  Because the agents and participants of this joint venture were negligent during the course and scope of the venture, all participants are liable for the damages caused to Plaintiffs. JEA was a participant in the joint venture and has liability to Plaintiffs.

**XIV.  PLAINTIFFS' CAUSES OF ACTION AGAINST DEFENDANT SALLY DEMOULIN**

A. Negligence

251.    Defendant SALLY DEMOULIN was an employee of, a leader in, member of, or affiliated with TFC, GCC, TAF, and/or MSC.  Plaintiffs were members of and affiliated with TFC, GCC, TAF, and/or MSC.  SALLY DEMOULIN breached her legal duties to Plaintiffs by failing to act reasonably.  SALLY DEMOULIN was negligent in the following particulars:

   a.   failing to investigate complaints that would have revealed that Tony Alamo was engaging in illegal sexual activities with Plaintiffs,

   b.   failing to protect Plaintiffs from Tony Alamo's sexual misconduct, and

    c.   failing to properly supervise Plaintiffs when exposed to Tony Alamo.

252.    These acts and omissions, taken by themselves or in combination, were a proximate cause of the injuries and damages to Plaintiffs.

B.    <u>Transporting</u>

253.    Defendant SALLY DEMOULIN knowingly transported Plaintiffs or coerced Plaintiffs to travel with intent that Plaintiffs engage in sexual activity in violation of 18 U.S.C. §109A.

254.    Specifically, Defendant SALLY DEMOULIN knowingly transported an individual who had not attained the age of 18 years in interstate commerce with intent that the individual engage in any sexual activity for which any person can be charged with a criminal offense.  Such conduct is unlawful pursuant to 18 U.S.C. §2423 (a). Plaintiffs assert a civil cause of action pursuant to 18 U.S.C. §2255.

255.    Furthermore, Defendant SALLY DEMOULIN arranged, induced, procured, or facilitated the travel of a person knowing that such a person is traveling in interstate commerce for the purpose of engaging in illicit sexual conduct.  Defendant SALLY DEMOULIN engaged in such conduct for the purpose of commercial advantage or financial gain. Such conduct is unlawful pursuant to 18 U.S.C. §2423 (d).  Plaintiffs assert a civil cause of action pursuant to 18 U.S.C. §2255.

256.    Furthermore, Defendant SALLY DEMOULIN attempted to violate subsection (a) and/or (d) of 18 U.S.C. §2423.  Plaintiffs assert a civil cause of action pursuant to 18 U.S.C. §2255.

257.    Furthermore, Defendant SALLY DEMOULIN conspired to violate subsection (a) and/or (d) of 18 U.S.C. §2423.  Plaintiffs assert a civil cause of action pursuant to 18 U.S.C. §2255.

C.     18 U.S.C. §1595

258.   Defendant SALLY DEMOULIN recruited, enticed, harbored, transported, provided, obtained, and/or maintained Plaintiffs knowing, or in reckless disregard of the fact, that means of force, threats of force, fraud, coercion or any combination of such means was used to cause the Plaintiffs to engage in a commercial sex act, or that the Plaintiffs had not attained the age of 18 years and were caused to be in a commercial sex act.

259.   Defendant SALLY DEMOULIN received something of value from participation in the venture described above.

260.   Pursuant to 18 U.S.C. §1595 Plaintiffs assert a civil cause of action.

## XV.  PLAINTIFFS' CAUSES OF ACTION AGAINST DEFENDANT SHARON ALAMO

A.                          Negligence

261.   Defendant SHARON ALAMO was an employee of, a leader in, member of, or affiliated with TFC, GCC, TAF, and/or MSC.  Plaintiffs were members of and affiliated with TFC, GCC, TAF, and/or MSC.  SHARON ALAMO breached her legal duties to Plaintiffs by failing to act reasonably.  SHARON ALAMO was negligent in the following particulars:

   a.   failing to investigate complaints that would have revealed that Tony Alamo was engaging in illegal sexual activities with Plaintiffs,

   b.   failing to protect Plaintiffs from Tony Alamo's sexual misconduct, and

   c.   failing to properly supervise Plaintiffs when exposed to Tony Alamo.

262.   These acts and omissions, taken by themselves or in combination, were a proximate cause of the injuries and damages to Plaintiffs.

B.     18 U.S.C. §1595

263.    Defendant SHARON ALAMO recruited, enticed, harbored, transported, provided, obtained, and/or maintained Plaintiffs knowing, or in reckless disregard of the fact, that means of force, threats of force, fraud, coercion or any combination of such means was used to cause the Plaintiffs to engage in a commercial sex act, or that the Plaintiffs had not attained the age of 18 years and were caused to be in a commercial sex act.

264.    Defendant SHARON ALAMO received something of value from participation in the venture described above.

265.    Pursuant to 18 U.S.C. §1595 Plaintiffs assert a civil cause of action.

## XVI.  PLAINTIFFS' CAUSES OF ACTION AGAINST DEFENDANT STEVE JOHNSON

A.    <u>Negligence</u>

266.    Defendant STEVE JOHNSON was an employee of, a leader in, member of, or affiliated with TFC, GCC, TAF, and/or MSC. Plaintiffs were members of and affiliated with TFC, GCC, TAF, and/or MSC.  STEVE JOHNSON breached his legal duties to Plaintiffs by failing to act reasonably.  STEVE JOHNSON was negligent in the following particulars:

   a.   failing to investigate complaints that would have revealed that Tony Alamo was engaging in illegal sexual activities with Plaintiffs,

   b.   failing to protect Plaintiffs from Tony Alamo's sexual misconduct, and

   c.   failing to properly supervise Plaintiffs when exposed to Tony Alamo.

267.    Specifically, Defendant STEVE JOHNSON knew or should have known of the risk that Tony Alamo presented to underage girls.  One such specific instance that placed Steve Johnson on notice was at meeting that STEVE JOHNSON attended

during the fall of 2000. Also in attendance at the meeting was Defendant SALLY DEMOULIN and SHARON ALAMO. Alamo attended the meeting with his underage brides. All those in attendance at the meeting witnessed and received notice of the following: Alamo was the only adult male, living in a house with multiple women; many of the women were underage, Alamo provided these women with wedding bands that they could be seen wearing at the meeting, and Alamo referred to these women as his wives.

268. STEVE JOHNSON also received specific notice of the risk that Tony Alamo presented to underage girls through the following series of events: During the particular meeting held in the fall of 2000, Alamo assumed the role of leader during the meeting. While leading the meeting, Alamo had DESIREE KOLBEK sit at his feet, and visibly and openly massage his feet, legs, and inside of thighs. Alamo even commented about the inappropriate touching to those in attendance, including STEVE JOHNSON, asking whether STEVEN JOHNSON thought he was "dirty" and reminding them that he was "of the Lord."

269. These acts and omissions, taken by themselves or in combination, were a proximate cause of the injuries and damages to Plaintiffs.

B.    Premises Liability

270. Plaintiffs in this action were taken by Tony Alamo to live as brides while under age. Plaintiffs were kept in Tony Alamo's residence. He residence was especially attractive to underage children such as Plaintiffs were at the time. The residence included a carnival carousel, petting zoo, and swimming pool. The residence was owned by the business scheme known as Tony Alamo Christian Ministries.

271.    Furthermore, the bedroom where Tony Alamo raped his underage brides was located adjacent to an office in his house.  From this office, SALLY DEMOULIN conducted business affairs for STEVE JOHNSON.  These business affairs included, but were not limited to, helping to manage his rental home properties.  In this office, business activities of STEVE JOHNSON were conducted.

272.    SALLY DEMOULIN would watch Tony Alamo walk through the office with his underage brides and then carry them into his bedroom where he would rape them. SALLY DEMOULIN witnessed comments from Tony Alamo about what he had done to the girls.  As an agent and employee of STEVE JOHNSON, SALLY DEMOULIN had notice of the risk that Tony Alamo presented to underage girls residing on the premises.   Additionally, STEVE JOHNSON had notice of the activities taking place on these premises because of events that he actually witnessed occurring on this property.  Just some of the events that he witnessed are described in this complaint.

273.    STEVE JOHNSON was aware of the imminent threat of harm that Tony Alamo presented to Plaintiffs.  As a resident on the premises, Tony Alamo presented an unreasonable risk of harm to underage girls. STEVE JOHNSON, as an owner, operator, and / or occupier of the property had the ability and duty to protect underage Plaintiffs from Tony Alamo's harm, but wholly failed to protect them.

C.    Transporting

274.   Defendant STEVE JOHNSON knowingly transported Plaintiffs or coerced Plaintiffs to travel with intent that Plaintiffs engage in sexual activity in violation of 18 U.S.C. §109A.

275.   Specifically, Defendant STEVE JOHNSON knowingly transported an individual who had not attained the age of 18 years in interstate commerce with intent that the individual engage in any sexual activity for which any person can be charged with a criminal offense.   Such conduct is unlawful pursuant to 18 U.S.C. §2423 (a). Plaintiffs assert a civil cause of action pursuant to 18 U.S.C. §2255.

276.   Furthermore, Defendant STEVE JOHNSON arranged, induced, procured, or facilitated the travel of a person knowing that such a person is traveling in interstate commerce for the purpose of engaging in illicit sexual conduct.   Defendant STEVE JOHNSON engaged in such conduct for the purpose of commercial advantage or financial gain. Such conduct is unlawful pursuant to 18 U.S.C. §2423 (d).   Plaintiffs assert a civil cause of action pursuant to 18 U.S.C. §2255.

277.   Furthermore, Defendant STEVE JOHNSON attempted to violate subsection (a) and/or (d) of 18 U.S.C. §2423.  Plaintiffs assert a civil cause of action pursuant to 18 U.S.C. §2255.

278.   Furthermore, Defendant STEVE JOHNSON conspired to violate subsection (a) and/or (d) of 18 U.S.C. §2423.  Plaintiffs assert a civil cause of action pursuant to 18 U.S.C. §2255.

279.   Specifically, Tony Alamo traveled in interstate commerce with underage girls for the purpose of engaging in sex with them.  A jury has convicted him of this crime and his conviction has been affirmed by the Court of Appeals.  Tony Alamo would travel

by bus with his child sex ring of underage brides across the country.  His travels were paid for through the "bookkeeper" slush fund.  STEVE JOHNSON contributed to and helped control distributions from this fund.  STEVE JOHNSON also helped to arrange these trips.

280.    STEVE JOHNSON personally financially benefitted from his associations with TONY ALAMO.   STEVE JOHNSON knowingly participated in a scheme of businesses that provided Tony Alamo with money, with a residence where he lived with his child brides, with employees that helped him lure underage girls into his child sex ring, with a bus to travel with underage girls, and with drivers to operate the bus.  By participating in this scheme, STEVE JOHNSON benefitted financially.

D.      18 U.S.C. §1595

281.    Defendant STEVE JOHNSON recruited, enticed, harbored, transported, provided, obtained, and/or maintained Plaintiffs knowing, or in reckless disregard of the fact, that means of force, threats of force, fraud, coercion or any combination of such means was used to cause the Plaintiffs to engage in a commercial sex act, or that the Plaintiffs had not attained the age of 18 years and were caused to be in a commercial sex act.

282.    Specifically, Tony Alamo lived in a house with his underage brides.  His bedroom was immediately adjacent to an office through which businesses were operated. These businesses included, but are not limited to: SJD, in which STEVE JOHNSON is a principal, JEA, in which STEVE JOHNSON is an officer, and STEVE JOHNSON's rental property business.  STEVE JOHNSON knowingly comingled assets in the "bookkeeper" slush fund.  This fund was used to fund TONY ALAMO

and his child sex ring.   STEVE JOHNSON contributed to and helped control distributions from this fund.

283.   Additionally, STEVE JOHNSON held property in his name in trust for TONY ALAMO and the Tony Alamo Christian Ministries scheme.  Property was shuffled in and out of his name to protect Tony Alamo and to avoid creditors.  By participating in this scheme, STEVE JOHNSON assisted Tony Alamo with his child sex ring.

284.   STEVE JOHNSON personally financially benefitted from his associations with TONY ALAMO.   STEVE JOHNSON knowingly participated in a scheme of businesses that provided Tony Alamo with money, with a residence where he lived with his child brides, with employees that helped him lure underage girls into his child sex ring, with a bus to travel with underage girls, and with drivers to operate the bus.  By participating in this scheme, STEVE JOHNSON benefitted financially.

285.   Defendant STEVE JOHNSON received something of value from participation in the venture described above.

286.   Pursuant to 18 U.S.C. §1595 Plaintiffs assert a civil cause of action.

## XVII.  PLAINTIFFS' CAUSES OF ACTION AGAINST DEFENDANT ROBERT W. GILMORE d/b/a RG & ASSOCIATES SECURITY ("RGS)

A.  Negligence

287.   Defendant RGS is a security company hired by Alamo Christian Ministries to protect the property and members of the church organization.

288.   Defendant RGS breached its legal duty to Plaintiffs when it failed to act reasonably. RGS facilitated Tony Alamo's access to children during its normal business hours and normal course of business by protecting outsiders from entering

the property and keeping the Plaintiffs from leaving.  This action allowed Tony Alamo to sexually and physically abuse the Plaintiffs.  Defendant RGS failed to protect Plaintiffs from sexual abuse and physical beatings.  The sexual abuse occurred when Tony Alamo verbally discussed sexual activities with underage Plaintiffs, when Tony Alamo took nude photographs of Plaintiffs, and when Tony Alamo raped Plaintiffs.  The physical abuse was delivered by Tony Alamo when he physically beat the Plaintiffs.  Physical abuse was also delivered by other church leaders living in the home that RGS protected such as SALLY DEMOULIN when she beat Plaintiffs at the instruction of Tony Alamo. RGS was negligent in the following particulars:

a.  failing to investigate complaints made by RGS agents that would have revealed that Tony Alamo and other adult male church members were engaging in illegal sexual activities with Plaintiffs,

b.  failing to protect Plaintiffs from Tony Alamo's sexual misconduct, and

c.  failing to report child abuse after RGS has reasonable cause to suspect that a child had been subject to child mistreatment.

289.  Specifically, Defendant RSG knew or should have known of the danger that Tony Alamo and other older male church members presented to underage girls. One such specific instance that placed RGS on notice was a complaint made by a RSG security guard working on church property who observed a clergy member receiving oral sex from an underage girl living in Alamo's home.  RGS did not investigate this complaint.  RGS did not report this complaint to authorities.  RGS's official response was to "ignore it."

290.  These acts and omissions, taken by themselves or in combination, were a proximate cause of the injuries and damages to Plaintiffs.

### XVIII.  PLAINTIFFS' DAMAGES

291.   As a direct and proximate result of the conduct of Defendants described above, Plaintiffs herein have suffered losses and damages in a sum exceeding the jurisdictional limits of the court, for which they sue in this complaint.  Specifically, throughout the periods of molestation described above and continuing to the present day and into the future, Plaintiffs have been frightened, humiliated, embarrassed, confused, distraught and have suffered severe mental anguish, emotional distress and psychological injury that interferes with their ability to carry out the day-to day responsibilities of life, their enjoyment of life and the proper psychological and emotional development.   Therefore, Plaintiffs herein claims the following items of specific damages to date:

    a.   Reasonable and necessary medical expenses incurred in the past;

    b.   Reasonable and necessary medical expenses reasonably likely to be incurred in the future;

    c.   Past physical pain and suffering;

    d.   Mental anguish and impairment in the past;

    e.   Mental anguish and impairment in the future;

    f.   Reasonable attorney fees;

    g.   Costs of suit;

    h.   Minimum damages of $150,000.00 as specified by 18 U.S.C. §2255;

    i.   Pre-judgment interest at the highest rate allowed by law; and

    j.   Post-judgment interest at the highest rate allowed by law.

## XIX.  PRAYER

292.   As a result of the facts stated herein and alleged above, Plaintiffs have been made to suffer and sustain, at the hands of Defendants, general and special damages in an amount far in excess of the minimum jurisdictional requirements of this Court and in

such amount as the evidence may show proper at the time of trial.  Upon a trial of the merits of the above action, based upon the common law and statutory remedies set forth in this petition and others to be proved at the time of trial, Plaintiffs will show that they are entitled to compensation for their injuries suffered at the hands of the Defendants.

293.   WHEREFORE, PREMISES CONSIDERED, Plaintiffs pray that the Defendants be cited to appear and answer herein, as the law directs, and that upon final hearing thereof, Plaintiffs have and recover judgment from Defendants pursuant to the above and foregoing allegations in such amounts as the evidence may show proper at the time of trial, together with pre-judgment and post-judgment interest thereon at the maximum legal rate allowed by law, costs of Court, and for such other and further relief, both general and special, at law or in equity, to which Plaintiffs may show themselves justly entitled.  Plaintiffs specifically pray for exemplary damages against Defendants.

Respectfully submitted,

**NIX, PATTERSON & ROACH, LLP.**
5215 N. O'Connor Blvd., Suite 1900
Irving, TX  75039
Telephone:  972.831.1188
Facsimile:  972.444.0716

By:_____/s/_____
        D. Neil Smith
        dneilsmith@mac.com
        Texas Bar Number 00797450

**NIX, PATTERSON & ROACH, LLP.**
2900 St. Michael Drive, Suite 500
Texarkana, TX 75503
Telephone:  903.223.3999

Facsimile:  903.223.8520
Brady Paddock
bpaddock@nixlawfirm.com
Arkansas Bar Number 93135

**MERCY ★ CARTER ★ TIDWELL, L.L.P**
1724 Galleria Oaks Drive
Texarkana, Texas 75503
(903) 794-9419 – Telephone
(903) 794-1268 – Fax
W. David Carter
wdcarter@texarkanalawyers.com
Arkansas Bar Number 85025
**ATTORNEYS FOR PLAINTIFFS**

## CERTIFICATE OF SERVICE

I certify that the foregoing document was filed and served on all counsel who have consented to service via the Court's CM/ECF electronic filing system on this the 23rd day of June, 2011.

_____/s/_____

D. Neil Smith