IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF ARKANSAS
TEXARKANA DIVISION

U. S. DISTRICT COURT
WESTERN DISTRICT ARKANSAS
FILED

APR 16 2012

CHRIS R. JOHNSON, CLERK

BY

DEPUTY CLERK

| | | |
|---|---|---|
| DESIREE KOLBEK, AMY EDDY, JEANNETTE ORLANDO, NICOLE FARR, SUMMER HAGAN, JAMIE RODRIGUEZ and PEBBLES RODRIGUEZ | § § § § § § | |
| Plaintiffs, | § § § | |
| v. | § § | Cause No. 10-4124 |
| TWENTY FIRST CENTURY HOLINESS TABERNACLE CHURCH INC., GLORYLAND CHRISTIAN CHURCH, ARMFUL OF HELP, TONY AND SUSAN ALAMO FOUNDATION, MUSIC SQUARE CHURCH, SJ DISTRIBUTING, INC., ACTION DISTRIBUTORS INC., ADVANTAGE FOOD GROUP, ADVANTAGE SALES LLC, JEANNE ESTATES APARTMENTS INC., CHERRY HILL PRINTING, INC., RITE WAY ROOFING INC., ROBERT W. GILMORE d/b/a RG & ASSOCIATES SECURITY, SALLY DEMOULIN, SHARON ALAMO, STEVE JOHNSON, ANGELA MORALES, SANFORD WHITE, TERRI WHITE, TOMMY SCARCELLO, DONN WOLF, STEVE LOVELLETTE, RON DECKER, DOUGLAS "SONNY" BRUBACH and TONY ALAMO a/k/a BERNARD HOFFMAN | § § § § § § § § § § § § § § § § § § § § § § § § § § § | |

## PLAINTIFFS' FIFTH AMENDED COMPLAINT

1. Plaintiffs: DESIREE KOLBEK, AMY EDDY, JEANNETTE ORLANDO, NICOLE

   FARR, SUMMER HAGAN, JAMIE RODRIGUEZ, and PEBBLES RODRIGUEZ

---

ORIGINAL

assert the following causes of action against Defendants: TWENTY FIRST CENTURY HOLINESS TABERNACLE CHURCH INC. ("TFC"), GLORYLAND CHRISTIAN CHURCH ("GCC"), ARMFUL OF HELP ("AOH"), TONY AND SUSAN ALAMO FOUNDATION ("TAF"), MUSIC SQUARE CHURCH ("MSC"), SJ DISTRIBUTING, INC. ("SJD"), ACTION DISTRIBUTORS INC. ("ADI), ADVANTAGE FOOD GROUP ("AFG"), ADVANTAGE SALES LLC ("ASC"), JEANNE ESTATES APARTMENTS INC. ("JEA"), CHERRY HILL PRINTING, INC. ("CHP"), RITE WAY ROOFING INC. ("RWR"), ROBERT W. GILMORE d/b/a RG & ASSOCIATES SECURITY ("RGS"), SALLY DEMOULIN, SHARON ALAMO, STEVE JOHNSON INCLUDING STEVE JOHNSON d/b/a CHERRY HILL PRINTING and d/b/a THE COOKER, ANGELA MORALES, SANFORD WHITE, TERRI WHITE, TOMMY SCARCELLO, DONN WOLF, STEVE LOVELLETTE, RON DECKER, DOUGLAS "SONNY" BRUBACH and TONY ALAMO a/k/a BERNARD HOFFMAN, and would respectfully show this Honorable Court the following:

## I. PARTIES

2. Plaintiff DESIREE KOLBEK is an individual and a lawful resident and citizen of the State of Arkansas.

3. Plaintiff AMY EDDY is an individual and a lawful resident and citizen of the State of Oklahoma.

4. Plaintiff JEANNETTE ORLANDO is an individual and a lawful resident and citizen of the State of Florida.

5. Plaintiff NICOLE FARR is an individual and a lawful resident and citizen of the State of New York.

6. Plaintiff SUMMER HAGAN is an individual and a lawful resident and citizen of the State of New York.

7. Plaintiff JAMIE RODRIGUEZ is an individual and a lawful resident and citizen of the State of Texas.

8. Plaintiff PEBBLES RODRIGUEZ is an individual and a lawful resident and citizen of the State of Oklahoma.

9. Defendant TWENTY FIRST CENTURY HOLINESS TABERNACLE CHURCH INC. is a corporation organized and existing under the laws of the State of Arkansas, with its principal place of business at Dyer, Arkansas. TFC has appeared in this action.

10. Defendant GLORYLAND CHRISTIAN CHURCH is a d/b/a of Defendant TWENTY FIRST CENTURY HOLINESS TABERNACLE CHURCH INC. with its principal place of business at Dyer, Arkansas. GCC has appeared in this action.

11. Defendant ARMFUL OF HELP is a d/b/a of Defendant TWENTY FIRST CENTURY HOLINESS TABERNACLE CHURCH INC. with its principal place of business at Dyer, Arkansas. AOH has appeared in this action.

12. Defendant TONY AND SUSAN ALAMO FOUNDATION is a corporation organized and existing under the laws of the State of California, with its principal place of business at Saugus, California. TAF has appeared in this action.

13. Defendant MUSIC SQUARE CHURCH is a corporation organized and existing under the laws of the State of Tennessee, with its principal place of business at 1200 17th Ave. S., Nashville, Tennessee 37212. MSC has appeared in this action.

14. Defendant SJ DISTRIBUTING, INC. is a corporation organized and existing under the laws of the State of Arkansas, with its principal place of business at 3941 Bradley Drive, Fort Smith, Arkansas 72904. SJD has appeared in this action.

15. Defendant ACTION DISTRIBUTORS INC. is a corporation organized and existing under the laws of the State of New Jersey, with its principal place of business at PO Box 1026, Newark, NJ 07101. ADI has appeared in this action.

16. Defendant ADVANTAGE FOOD GROUP is a d/b/a of Donn Wolf and Steve Lovellette, with its principal place of business at 1619 Grand Ave, Fort Smith, Arkansas 72901. AFG has appeared in this action.

17. Defendant ADVANTAGE SALES, LLC is a Limited Liability Company organized and existing under the laws of the State of Arkansas, with its principal place of business at 1619 Grand Ave, Fort Smith, Arkansas 72901. Defendant ADVANTAGE SALES LLC may be properly served with process by delivering a copy of the summons and complaint to its registered agent Donn Wolf, at 1619 Grand Ave, Fort Smith, Arkansas 72901.

18. Defendant JEANNE ESTATES APARTMENTS INC. is a corporation organized and existing under the laws of the State of Arkansas, with its principal place of business in Arkansas. JEA has appeared in this action.

19. Defendant CHERRY HILL PRINTING, INC. is a corporation organized and existing under the laws of the State of Arkansas, with its principal place of business at Ft.

Smith, Arkansas. Defendant CHERRY HILL PRINTING, INC. may be properly served with process by delivering a copy of the summons and complaint to its registered agent Steve Johnson, at 3941 Bradley, Fort Smith, Arkansas 72904.

20. Defendant RITE WAY ROOFING, INC. is a corporation organized and existing under the laws of the State of Arkansas, with its principal place of business at Ft. Smith, Arkansas. Defendant RITE WAY ROOFING, INC. may be properly served with process by delivering a copy of the summons and complaint to its registered agent Steve Johnson, at 301 S. 10th Street, Fort Smith, Arkansas 72901.

21. SALLY DEMOULIN is an individual, residing at 100 Circle (Pine) Dr., Fouke, Arkansas 71837. SALLY DEMOULIN has appeared in this action.

22. SHARON ALAMO is an individual, residing at 5330 East Placita Casa Rio, Tucson, Arizona 85718. SHARON ALAMO has appeared in this action.

23. STEVE JOHNSON is an individual with an address at 3941 Bradley Drive, Fort Smith, Arkansas 72904. STEVE JOHNSON has appeared in this action.

24. Defendant ROBERT W. GILMORE is an Individual doing business as RG & ASSOCIATES SECURITY. He resides at 412 W. Greenfield Dr., Wake Village, Texas 75501. ROBERT W. GILMORE has appeared in this action..

25. Third party defendant, TONY ALAMO A/K/A BERNARD HOFFMAN, is an individual domiciled in Indiana. He has appeared in this action.

26. ANGELA MORALES a/k/a ANGEL STREIT is an individual, residing at 100 Circle Drive, Fouke, Arkansas 71837 and may be served with process at that address.

27. TERRI WHITE is an individual, residing at 200-A Circle (Pine) Drive, Fouke, Arkansas 71837. Her mailing address is P.O. Box 493 Fouke, Arkansas 71837 and she may be served with process at that address.

28. SANFORD WHITE is an individual, residing at 200-A Circle (Pine) Drive, Fouke, Arkansas 71837. His mailing address is P.O. Box 493 Fouke, Arkansas 71837 and he may be served with process at that address.

29. DONN WOLF is an individual, residing at 88 Talowah Road, Lumberton, Mississippi 39455. He may be served with process at that address.

30. STEVE LOVELLETTE is an individual, residing at 240 Country Circle Dr. East Port Orange, Florida 32128. He may be served with process at that address.

31. TOMMY SCARCELLO is an individual, residing in Moffet, Oklahoma. His mailing address is P.O. Box 108 Moffett, Oklahoma 74946 and he may be served with process at that address.

32. RON DECKER is an individual, residing at 1619 Grand Avenue Apartment # 4, Ft. Smith, Arkansas 72901. He may be served with process at that address.

33. DOUGLAS "SONNY" BRUBACH is an individual, residing at 5138 W. Sunset Boulevard Apartment # 17, Los Angeles, California 90027. He may be served with process at that address.

## II. JURISDICTION

34. This court has jurisdiction pursuant to 28 U.S.C. §1331 because it contains claims that arise under the laws of the United States. Additionally, the Court has jurisdiction pursuant to 28 U.S.C. §1367 for claims that are related to the federal claim.

35. Specifically, Plaintiffs assert causes of action pursuant to 18 U.S.C. §2255 and 18 U.S.C. §1595.

## III. VENUE

36. Venue is proper in this judicial district pursuant to 28 U.S.C. §1391(a)(2) insofar as a substantial part of the events or omissions giving rise to the claims occurred in the Western District of Arkansas.

## IV. FACTS

37. Tony Alamo was born Bernie LaZar Hoffman. In the 1960s, he moved to Los Angeles, California where he rose to stardom assuming the stage names Marcus Abad and Mark Hoffman.

38. Hoffman married Susan Lipowitz in a Las Vegas, Nevada ceremony in 1966. The two changed their names to "Tony and Susan Alamo" and began launching gospel shows and churches. They maintained a large communal estate in California and appeared on their own television show. They called their operation "Tony Alamo Christian Ministries." The two did not limit their business enterprise strictly to church activities. Instead, they developed a church and business conglomerate where members of the church were also the employees of the businesses. Eventually, the business conglomerate grew to include grocery stores, truck stops, clothing companies, trucking companies, apartment complexes, and charities.

39. After Susan Alamo died in 1982, Tony Alamo assured his followers that she would rise from the dead. For six months, Tony Alamo and his followers kept watch over

her decomposing body. Her body did not rise from the dead. Thereafter, Tony Alamo became the "prophet" and "world pastor" over the defendant operations.

40. He remarried several times, eventually engaging in the practice of polygamy by having more than one wife at a time. He openly endorsed and preached the practice of multiple simultaneous marriages in the church. This practice permitted Alamo to have sex with multiple women without conflicting with the stated belief among church members that sexual relations outside of marriage—a holy union between one man and one woman—is fornication and a sin. In 1989, he married Sharon Kroopf (now SHARON ALAMO), around the age of 30. At the time, Tony Alamo was a 55 year old fugitive, hiding from charges of felony child abuse in California. They had a son together in the summer of 1991, who was born while Tony was in jail awaiting trial for threatening Federal Judge Morris Arnold. In California, in February 1993, Tony Alamo took Lydia Willis as a second wife when she was in her early 30's— Tony Alamo was 59 or 60 years old. They have a son together. In 1994, Alamo married Elizabeth Mercado at the age of 16. Ms. Mercado later gave birth to Alamo's last known child, a daughter born in 2001. Alamo did not divorce any of these wives. Alamo continued marrying women and engaging in the practice of polygamy. As time went on his wives became younger and younger—to the point where they were underage, even as young as 8 years old.

41. The believers and followers of Tony Alamo, including the Defendant entities and the individual Defendants, SALLY DEMOULIN, SHARON ALAMO, STEVE JOHNSON, ANGELA MORALES, TERRI WHITE, SANFORD WHITE, DONN WOLF, STEVE LOVELLETTE, TOMMY SCARCELLO, RON DECKER, and

DOUGLAS "SONNY" BRUBACH operate as a commune, and refer to their organization as the "Tony Alamo Christian Ministries." TACM is not an independent legal entity. Instead, it is a combination of members, churches, and businesses engaged in a joint operation (collectively Defendants TFC, GCC, TAF, and MSC are referred to herein as "CHURCH DEFENDANTS" and Defendants AOH, SJD, ADI, AFG, ASC, JEA, CHP and RWR are referred to as the "CHURCH BUSINESS DEFENDANTS"). As set forth below, STEVE JOHNSON, SHARON ALAMO, SALLY DEMOULIN, ANGELA MORALES, TERRI WHITE, SANFORD WHITE, DONN WOLF, STEVE LOVELLETTE, TOMMY SCARCELLO, RON DECKER, and DOUGLAS "SONNY" BRUBACH worked and otherwise acted individually as agents and representatives of Defendants or both at all times relevant (hereafter collectively referred to as the "INDIVIDUAL DEFENDANTS"). According to the beliefs of TACM members, Tony Alamo was/is "of the Lord" and above the authority of TACM. Tony Alamo was therefore able to use all of TACM as he pleased.

42. TACM may be considered a joint venture, in which there is a special combination of two or more entities seeking a profit in their specific venture, but without actually officially forming a partnership or corporate designation. It is implied that the entities share in the profits and losses of the venture. The venture accounts are run, in part, through a bank account known as the "bookkeeper" account. From this account, CHURCH DEFENDANTS and CHURCH BUSINESS DEFENDANTS withdraw and deposit money for use in TACM.

43. In the alternative, TACM may be considered a joint enterprise in which the TACM members agreed to carry out the common purpose, shared a community of recurring interest in the ministry and an equal right to direct and control the enterprise.

44. All receipts and revenues of CHURCH DEFENDANTS and CHURCH BUSINESS DEFENDANTS are used for TACM. The employees of CHURCH DEFENDANTS and CHURCH BUSINESS DEFENDANTS are all believers and followers of Tony Alamo, including the INDIVIDUAL DEFENDANTS. They work for the CHURCH DEFENDANTS and CHURCH BUSINESS DEFENDANTS collectively with no apparent distinction between the separate entities. They share and use the same vehicles, drivers, employees, and warehouses.

45. It is also possible that various combinations of Defendants formed smaller joint ventures or enterprises from time to time.

46. Defendant SALLY DEMOULIN has been an employee and/or agent for the joint venture or enterprise or one or more of the CHURCH DEFENDANTS or CHURCH BUSINESS DEFENDANTS since 1985 and is responsible for the Bookkeeper fund. She carries out the following tasks for the CHURCH DEFENDANTS and CHURCH BUSINESS DEFENDANTS with assistance from Defendants SHARON ALAMO, STEVE JOHNSON, ANGELA MORALES, TERRI WHITE, SANFORD WHITE, DONN WOLF, STEVE LOVELLETTE, TOMMY SCARCELLO, RON DECKER, and DOUGLAS "SONNY" BRUBACH. Among other things, they individually and/or in combination:

   a. Freely transfers money between Church entities;
   b. Titles properties in their individual names, but hold them in trust for Church Defendants;

c. Maintains church member files, including complaints or reports about members;

d. Maintains banking and accounting records related to operations;

e. Pays electric, gas, phone, water, insurance, mortgages and other bills, including invoices for security services provided by Defendant RGS;

f. Maintains insurance on approximately 20 to 100 vehicles in states such as California, New York, Oklahoma, and Arkansas;

g. Maintains insurance on trucks operated by AFG, ASC, ADI, SJD and AOH;

h. Issues checks from bank accounts titled "Advantage Food Group", "Action Distributors", "Jeanne Estates Apartment";

i. Pays mortgages on buildings used as church buildings, for example, the church sanctuary building in Fort Smith, Arkansas; warehouses used by Defendants AFG, ASC, CHP, RWR, ADI, SJD, and AOH; residential and income rental properties held under the name of STEVE JOHNSON, including his personal residence;

j. Pays church payroll and health insurance;

k. Generates payroll records for ADI, AFG, CHP and RWR;

l. Maintains the insurance on the different properties and different businesses;

m. Maintains all records for the entities;

n. Pays phone bills and cell phone bills; and

o. Is involved in the procedure by which TACM transfers money for safe keeping in the form of cashier's checks.

47. In early 1993, Tony Alamo and his followers, including some or all of the individual Defendants, began arranging church-sponsored "spiritual" marriages of underage girls. Tony Alamo and other leaders in the church, including DOUGLAS "SONNY" BRUBACH, STEVE LOVELLETTE, and Mark Cunneen would perform marriage ceremonies where these girls would be sent to live as "spiritual brides" with older men, including Tony Alamo. Many of these ceremonies were performed openly in

the church and officiated by clergy leaders within the church.  Buster White was given the title of "associate pastor."

48. The families with daughters who became spiritual brides were recruited into the church community with a combination of jobs, free or low cost housing, cars, clothes, phones, groceries, etc, all provided by the CHURCH DEFEDNANTS and CHURCH BUSINESS DEFENDANTS.  These families were moved into homes some of which were owned by many of the INDIVIDUAL DEFENDANTS, including STEVE JOHNSON.  As the families became dependant on the financial support of the church they would be cajoled, coerced and/or threatened into staying in TACM.

49. Tony Alamo entered into the following series of "spiritual" marriages:

   a. February 1993 - Tony Alamo "spiritually married" Jody, age 17;

   b. 1993 - Tony Alamo "spiritually married" Maria Isabel Mendoza (aka Isabel Mendoza), age 19;

   c. 1993-Tony Alamo "spiritually married" Misheal Eden Jones-Williams, age 18;

   d. October 15, 1993 – Tony Alamo "spiritually married" Tami, age 17;

   e. 1993 - Tony Alamo "spiritually married" Angela Marie Morales (a.k.a Angel Streit), age 20; and

   f. January 1994 - Tony Alamo "spiritually married" Elizabeth Mercado (a.k.a "Lizzy" Gutierrez), just after turning age 16.

50. Plaintiffs were even younger when they were made Tony Alamo's spiritual brides:

   a. January 1994-Plaintiff JEANNETTE ORLANDO became Tony Alamo's "spiritual wife" at age 15.

   b. In 1998, Plaintiff AMY EDDY became Tony Alamo's "wife."  She moved into the house with the other "spiritual wives."  She was provided with a wedding ring.  The ring was given to her by Alamo, while he was still in prison.

   c. In 1999, Plaintiff PEBBLES RODRIQUEZ (aka Yvonne Rodriguez) was 12 years old when she went to live with Alamo in Fouke, Arkansas and became

Alamo's "spiritual wife" shortly thereafter. Pebbles went into and out of Alamo's bedroom with her sheets. She did this in front of individuals such as SALLY DEMOULIN. She told witnesses that she was a wife and wore a wedding ring. Sometime after that, Alamo changed her name to Yvonne Rodriguez.

    d. Plaintiff DESIREE KOLBEK (born summer of 1991) was 7 years old when she went to live in Tony's house in Fouke, Arkansas in the spring of 1999. She became his "spiritual wife" at age 8.

    e. In 2002 Plaintiff JAMIE RODRIGUEZ became Alamo's "spiritual wife." She was 13 years old at the time.

    f. Plaintiff SUMMER HAGAN was 8 years old when she began spending the night at Tony Alamo's home. In 2002, at age 11 she became Tony Alamo's "spiritual wife."

51. During the 1990's, several older men expressed an interest in "spiritually marrying" Plaintiff NICOLE FARR. Instead, at age 15, Tony Alamo moved NICOLE FARR into his home where she was "groomed" to become one of his "spiritual wives." While living at Tony's house, NICOLE FARR, like the other girls, was subject to threats and abuse and stripped of her privacy. NICOLE FARR escaped from the Alamo compound before becoming another "spiritual wife."

52. After being chosen by Alamo, the girls were moved into Alamo's home (which also served as the main TACM office), and was built and paid for by the Defendant entities. After the underage "spiritual brides" were taken by Alamo and moved into the home, they were told to pick out their wedding rings from a catalog that were purchased with money generated by the Defendant entities. A church member and leader of the TACM church in California, David Scheff, purchased several of these rings. The underage brides wore these wedding rings in public, and specifically, around church members including INDIVIDUAL DEFENDANTS. The house had a large kitchen and a number of bedrooms to accommodate the "spiritual wives" and to

house other girls not yet married. As Alamo took more underage "spiritual wives" multiple additions were made to the home, both practical and recreational, all of which were paid for by the money generated by the Defendant entities. By the early 2000s, the property that encompassed Tony's house and the main office for all TACM enterprises including the CHURCH DEFENDANTS and CHURCH BUSINESS DEFENDANTS included a carnival carousel in the backyard, a petting zoo, and swimming pool. The large operating budget for this home/office was run through the bookkeeping account controlled by SALLY DEMOULIN.

53. At all times relevant, SALLY DEMOULIN's office, from which she kept the books for all CHURCH DEFENDANTS and CHURCH BUSINESS DEFENDANTS, was located in the aforementioned building where Tony Alamo resided. The address of that building is 100 Circle (Pine) Drive, Fouke Arkansas. INDIVIDUAL DEFENDANTS, SANFORD and TERRI WHITE own this residence and allowed Alamo to live there. Alamo resided there with Plaintiffs, his underage brides. Tony Alamo's bedroom, where much of his abuse of the Plaintiffs occurred, was located next to SALLY DEMOULIN's office and could only be accessed through an adjoining doorway. Vicki Larison, Linda Williams and INDIVIDUAL DEFENDANT, TERRI WHITE also worked in this office.

54. STEVE JOHNSON, SHARON ALAMO, SALLY DEMOULIN ANGELA MORALES, TERRI WHITE, SANFORD WHITE, DONN WOLF, STEVE LOVELLETTE, TOMMY SCARCELLO, RON DECKER, and DOUGLAS "SONNY" BRUBACH attended meetings at Tony's house. During one meeting, Tony Alamo had Plaintiff DESIREE KOLBEK, age 8, sit at his feet, and visibly and

openly massage his feet, legs, and inside of thighs, claiming it was not "dirty" because he was "of the lord."

55. STEVE JOHNSON is an officer or director of JEA—named after Plaintiff Jeanne Orlando. This is an apartment complex used to generate money that supported Tony's house and TACM operations. It provides jobs for some TACM members. The apartment complex was also used to house the families of underage girls some of which became spiritual wives. STEVE JOHNSON is also a principal of SJD, CHP and RWR, also entities used to generate money that supported Tony's house and TACM operations and provided jobs for TACM members.

56. SALLY DEMOULIN, SHARON ALAMO, STEVE JOHNSON, ANGELA MORALES, TERRI WHITE, SANFORD WHITE, DONN WOLF, STEVE LOVELLETTE, TOMMY SCARCELLO, RON DECKER, and DOUGLAS "SONNY" BRUBACH assisted Tony Alamo in facilitating the "spiritual" marriages of Plaintiffs and knew or should have known that their actions would cause foreseeable and substantial injuries to the underage Plaintiffs both mentally and physically. Acting as reasonable persons in the same or similar circumstances, SALLY DEMOULIN, SHARON ALAMO, STEVE JOHNSON, ANGELA MORALES, TERRI WHITE, SANFORD WHITE, DONN WOLF, STEVE LOVELLETTE, TOMMY SCARCELLO, RON DECKER, and DOUGLAS "SONNY" BRUBACH knew or should have known that Tony Alamo's relationship with Plaintiffs was not "pure" or "spiritual" but involved inappropriate physical contact, invasion of privacy, and detention/false imprisonment given Plaintiffs' size,

age, experience, relative to that of the adult members, employees and representatives of the Church entities.

57. Plaintiffs were punished by being sent to the "Green House." This building was also known as the "House of Scorn." The address for this house is 709 Monster Expressway, Fouke, Arkansas. INDIVIDUAL DEFENDANTS, SANFORD and TERRI WHITE own this house.

58. Defendant ROBERT W. GILMORE d/b/a RG & ASSOCIATES SECURITY ("RGS") is a security firm hired to guard TACM properties owned by the Defendant Church entities, and to protect TACM church members. Services included round-the-clock guards stationed near "Tony's House" and on the surrounding TACM properties. RGS' presence on the property served two main functions—to keep away persons Alamo did not want on the property, and to keep Plaintiffs from leaving. Plaintiffs shared a fear of being "caught" or "reported" by RGS if they attempted to leave the compound; a fear fueled by the way in which RGS secured the compound.

59. RGS and its employee security guards knew or should have known Plaintiffs' were being detained at the home and within the compound and were not free to leave: Alamo was the only adult male living in the home, Plaintiffs and other underage girls lived there as well, Plaintiffs wore wedding bands, it was widely known that Plaintiffs were his spiritual wives, that they were not free to leave or move about the grounds. One security guard told Robert Gilmore that he saw a clergy member receiving oral sex from an underage girl living in "Tony's House." Robert Gilmore told the reporting guard to "ignore it" and it was not reported to the authorities.

60. At least two security guards employed by RGS attended services at TACM. Additionally, at least one of the security guards observed underage girls coming and going from Tony's House, and another observed several underage girls playing in the backyard of Tony's house.

61. Even after Federal and State law enforcement officers had raided "Tony's House" on suspicion of child abuse and child pornography, Robert Gilmore penned letters of support for TACM disclaiming any abuse of underage girls at the compound. He and RGS never reported any abuse or suspicion of abuse to authorities and remain supporters of Defendants. By authoring such letters, RGS and Gilmore have portrayed Plaintiffs in a false light and have engaged in libelous statements, which have damaged Plaintiffs as set forth herein.

62. On July 24, 2009, Tony Alamo was convicted on ten (10) counts of Interstate Transportation of Minors for Illegal Sexual Purposes, Rape, Sexual Assault and Contributing to the Delinquency of Minors and was sentenced to the maximum punishment of 175 years in prison. The Court of Appeals affirmed his conviction. The U.S. Supreme Court has refused to hear the case.

63. Plaintiffs were physically abused, sexually abused, and falsely imprisoned at several locations including, but no limited to:

    a. Tony's House / Office for Church Defendants and Church Business Defendants – 100 Circle (Pine) Dr., Fouke, Arkansas;

    b. "Green House" / "House of Scorn" – 709 Monster Expressway, Fouke, Arkansas;

    c. the "California Church Properties" – Sierra Hwy, Santa Clarita, California;

    d. California Church "Bungalows" – Sierra Hwy, Santa Clarita, California;

e. California Church "Bungalow #7" – Sierra Hwy, Santa Clarita, California;

f. California Church Parking Lot – Sierra Hwy, Santa Clarita, California;

g. "Church Bus";

h. Federal Correction Institution—4001 Leopard Drive Texarkana, Tx 75501

i. "Half-way House in Texarkana, Texas

j. Unknown Hotels in California and Arizona

64. With the exception of Tony Alamo and RGS—all Defendants' acts and omissions related to this suit may have been in one or several of the following capacities: individual, as a member of TACM, as a member of one or more a joint enterprises, as a member of one or more a joint ventures, or as an employee, volunteer, manager, officer or director for one or more of the CHURCH BUSINESS DEFENDANTS and/or CHURCH DEFENDANTS. Defendants knew or should have known that their acts or failures to act - including but not limited to, negligence, negligent hiring, supervision, training, retention; false imprisonment, detention, invasion of privacy, and defamation, would result in foreseeable injury to Plaintiffs and actual pecuniary damages, loss of reputation, loss of earning capacity, and other damages as set forth herein.

## V.  CAUSES OF ACTION

### NEGLIGENCE AGAINST CHURCH DEFENDANTS AND CHURCH BUSINESS DEFENDANTS

65. CHURCH DEFENDANTS and CHURCH BUSINESS DEFENDANTS operate as a religious organization.  Most church members, including all INDIVIDUAL DEFENDANTS, act as agents for the CHURCH DEFENDANTS and/or CHURCH BUSINESS DEFENDANTS through their time and efforts.  In doing so, these

individuals fulfill **expected** (from the perspective of the CHURCH DEFENDANTS and/or CHURCH BUSINESS DEFENDANTS) duel capacities, where they act (often simultaneously) as 1) a business employee or officer, and 2) an agent of the "church business scheme," supporting the ministry through business proceeds, or even using the business to spread the message of TACM or "the church." Plaintiffs were minor members of "the church" and participated in church activities. CHURCH DEFENDANTS and CHURCH BUSINESS DEFENDANTS were also owners, landlords, or lessors of premises occupied by one or more of the Plaintiffs.

66. CHURCH DEFENDANTS and CHURCH BUSINESS DEFENDANTS owed duties to Plaintiffs to use ordinary care: (1) to avoid foreseeable risk of injuries to Plaintiffs; (2) in aiding or protecting Plaintiffs from a peril when the peril was under their control; (3) in not placing Plaintiffs in harm's way of foreseeable wrongful acts; and (4) to protect against an unreasonable and foreseeable risk of harm to Plaintiffs on property they own, lease or occupy and where they retain control over the security and safety of and on the premises.

67. CHURCH DEFENDANTS and CHURCH BUSINESS DEFENDANTS breached their duties to Plaintiffs by one or more of the following acts and omissions:

    a. allowing Tony Alamo unfettered access to Plaintiffs and other children during normal business hours;

    b. endorsing, facilitating "spiritual weddings" with Plaintiffs and other underage girls;

    c. endorsing and facilitating the grooming of Plaintiff NICOLE FARR to be Tony Alamo's child bride before she escaped;

    d. failing to protect Plaintiffs from sexual abuse and physical beatings;

e. failing to prevent Tony Alamo's verbal discussions of sexual activities with Plaintiffs;

f. failing to prevent Tony Alamo and others from taking and distributing nude photographs of one or more Plaintiffs;

g. failing to prevent individuals other than Tony Alamo to physically abuse Plaintiffs at the instruction of Tony Alamo;

h. failing to keep Tony's House and other locations they managed, owned, leased or occupied in a reasonably safe condition for Plaintiffs by housing Tony Alamo and Plaintiffs within the home; installing a carousel, petting zoo and pool to entice Plaintiffs;

i. permitting an adjoining door between the office and Alamo's bedroom.

68. CHURCH DEFENDANTS and CHURCH BUSINESS DEFENDANTS knew, or through the exercise of reasonable care, should have known, that their acts and omissions as set forth herein would subject Plaintiffs to an unreasonable risk of harm.

69. CHURCH DEFENDANTS and CHURCH BUSINESS DEFENDANTS' acts and omissions as set forth herein, proximately caused and/or contributed to the cause of Plaintiffs' injuries resulting in damages to Plaintiffs, as set forth herein.

### NEGLIGENCE AGAINST ALL INDIVIDUAL DEFENDANTS

70. Defendants SALLY DEMOULIN, SHARON ALAMO, STEVE JOHNSON ANGELA MORALES, TERRI WHITE, SANFORD WHITE, DONN WOLF, STEVE LOVELLETTE, TOMMY SCARCELLO, RON DECKER, and DOUGLAS "SONNY" BRUBACH (the "INDIVIDUAL DEFENDANTS") were employees of, leaders in, members of, and/or affiliated with TACM, TFC, GCC, AOH, TAF, and/or MSC.

71. The INDIVIDUAL DEFENDANTS owed duties to Plaintiffs to use ordinary care to: (1) prevent foreseeable risk of injury to Plaintiffs; (2) protect Plaintiffs from perils under their control; (3) not place Plaintiffs in harm's way of foreseeable criminal acts

of third parties; and (4) protect against unreasonable, foreseeable risk of harm to Plaintiffs.

72. The INDIVIDUAL DEFENDANTS breached duties owed to Plaintiffs by:

    a. allowing Tony Alamo access to Plaintiffs when they knew or a reasonable person would have foreseen the risk of harm to Plaintiffs;

    b. failing to investigate complaints that would have revealed that Tony Alamo was engaging in illegal sexual activities with Plaintiffs;

    c. facilitating "spiritual weddings" between Tony Alamo and Plaintiffs;

    d. facilitating the grooming Plaintiff NICOLE FARR to be Tony Alamo's child bride;

    e. failing to protect Plaintiffs from sexual abuse and physical beatings;

    f. failing to prevent Tony Alamo's verbal discussions of sexual activities with Plaintiffs; and

    g. allowing or failing to prevent Tony Alamo and others from taking and distributing nude photographs of Plaintiffs.

73. The INDIVIDUAL DEFENDANTS knew, or through the exercise of reasonable care, should have known, that their acts and omissions as set forth herein would subject Plaintiffs to an unreasonable risk of harm.

74. The INDIVIDUAL DEFENDANTS' acts and omissions as set forth herein, proximately caused and/or contributed to the cause of Plaintiffs' injuries resulting in damages to Plaintiffs, as set forth herein.

**NEGLIGENT ENTRUSTMENT AGAINST SHARON ALAMO, STEVE JOHNSON, ANGELA MORALES, TERRI WHITE, SANFORD WHITE, DONN WOLF, STEVE LOVELLETTE, TOMMY SCARCELLO, RON DECKER, and DOUGLAS "SONNY" BRUBACH**

75. Defendants SHARON ALAMO, STEVE JOHNSON, ANGELA MORALES, TERRI WHITE, SANFORD WHITE, DONN WOLF, STEVE LOVELLETTE,

TOMMY SCARCELLO, RON DECKER, and DOUGLAS "SONNY" BRUBACH (all named "INDIVIDUAL DEFENDANTS" except for SALLY DEMOULIN) (individually, as a member of TACM, as a member of one or more a joint enterprises, or as an employee, volunteer, manager, officer or director for one or more of the CHURCH BUSINESS DEFENDANTS or CHURCH DEFENDANTS) all owned and/or continue to own property, which they allowed to be used by Tony Alamo and/or TACM. Alamo and/or TACM used some of these properties (real and personal) to sexually, physically, psychologically, and emotionally assault and abuse the Plaintiffs. Alamo and/or TACM used other properties owned by these INDIVIDUAL DEFENDANTS to support and insulate this multi-faceted abuse of the Plaintiffs. In addition to the abuse, Alamo and/or TACM used the properties as a haven to falsely imprison, invade the privacy rights, maintain control over Plaintiffs, and prevent those who have helped them from detecting their plight. Each of these property owners, INDIVIDUAL DEFENDANTS SHARON ALAMO, STEVE JOHNSON, ANGELA MORALES, TERRI WHITE, SANFORD WHITE, DONN WOLF, STEVE LOVELLETTE, TOMMY SCARCELLO, RON DECKER, and DOUGLAS "SONNY" BRUBACH, had knowledge that should have lead a reasonable person to conclude that his or her property was being used in a way that was likely to harm the Plaintiffs in any or all of the aforementioned ways, either directly or indirectly.

76. As asserted above, these INDIVIDUAL DEFENDANTS are/were property owners who owed duties to Plaintiffs to use ordinary care to: (1) prevent foreseeable risk of injury to Plaintiffs; (2) protect Plaintiffs from perils under their control; (3) not place

Plaintiffs in harm's way of foreseeable criminal acts of third parties; and (4) protect against unreasonable, foreseeable risk of harm to Plaintiffs.

77. These INDIVIDUAL DEFENDANTS breached duties owed to Plaintiffs by:

    a. allowing Tony Alamo to use and/or benefit from the use of their property when they knew or had reason to know of Alamo's dangerous condition or proclivities;

    b. doing so created an appreciable risk of harm to the Plaintiffs and a relational duty on the part of each Defendant;

    c. and the harm to the Plaintiffs was proximately or legally caused by the negligence of each INDIVIDUAL DEFENDANTS.

78. The INDIVIDUAL DEFENDANTS knew, or through the exercise of reasonable care, should have known, that their acts and omissions as owners and/or operators of property as set forth herein would subject Plaintiffs to an unreasonable risk of harm.

## NEGLIGENCE AGAINST DEFENDANT ROBERT W. GILMORE d/b/a RG & ASSOCIATES SECURITY ("RGS)

79. Defendant RGS is a security company hired by TACM to protect the property and members of the church organizations.

80. Defendant RGS owed the following duties to Plaintiffs: (1) to avoid a foreseeable risk of harm to Plaintiffs; (2) to aid or protect Plaintiffs from perils under its control; (3) to refrain from placing Plaintiffs in harm's way of foreseeable criminal activity; and (4) to refrain from performing services for consideration that it should have recognized were necessary for Plaintiffs' protection.

81. Defendant RGS breached its legal duty to Plaintiffs by one or more of the following:

    a. Failing to have policies and procedures in place to hire, supervise and train RGS employees to recognize and report unsafe practices on premises for which it provided security services;

    b. failing to investigate complaints made by RGS's employees to RGS's management of improper sexual activity between adult male church members and underage girls on church property;

    c. failing to prevent or intervene when physical and verbal abuse of Plaintiffs was known or should have been known, including known or suspected sexual activity with Plaintiffs;

    d. failing to protect Plaintiffs from Tony Alamo's sexual misconduct; and

    e. failing to report child abuse after RGS had reasonable cause to suspect that a child had been subject to mistreatment.

82. RGS' acts and omissions proximately caused damages to Plaintiffs.

83. Because Plaintiff NICOLE FARR escaped the TACM compound in Fouke, Arkansas before Defendant RGS was retained by TACM, Plaintiff FARR asserts no cause of action against Defendant RGS.

### NEGLIGENT HIRING, RETENTION, SUPERVISION AND RETENTION AGAINST CHURCH DEFENDANTS AND CHURCH BUSINESS DEFENDANTS

84. As employers, the CHURCH DEFENDANTS AND CHURCH BUSINESS DEFENDANTS owed a duty to Plaintiffs as residents of Tony's House (and members of a vulnerable group) to use ordinary care to hire, supervise, train, and retain competent employees. Tony Alamo was not an employee or member of TACM or any Defendant entity. Rather, the individual defendants considered him a Pastor, founder and leader of their Church. Given the power vested in Tony Alamo, CHURCH DEFENDANTS AND CHURCH BUSINESS DEFENDANTS owed a duty to Plaintiffs to exercise ordinary care in selecting, training, and retaining competent employees, including, but not limited to, SALLY DEMOULIN, SHARON

ALAMO, STEVE JOHNSON, ANGELA MORALES, TERRI WHITE, SANFORD WHITE, DONN WOLF, STEVE LOVELLETTE, TOMMY SCARCELLO, RON DECKER, and DOUGLAS "SONNY" BRUBACH, because these persons frequently interacted with Plaintiffs and Tony Alamo and were in a position to check the power Tony Alamo wielded.

85. Specifically, CHURCH DEFENDANTS and CHURCH BUSINESS DEFENDANTS breached their duties to Plaintiffs to use ordinary care to adequately supervise, train, and/or retain SALLY DEMOULIN, SHARON ALAMO, STEVE JOHNSON, ANGELA MORALES, TERRI WHITE, SANFORD WHITE, DONN WOLF, STEVE LOVELLETTE, TOMMY SCARCELLO, RON DECKER, and DOUGLAS "SONNY" BRUBACH by among other things:

   a. Failing to require that SALLY DEMOULIN, SHARON ALAMO, STEVE JOHNSON, ANGELA MORALES, TERRI WHITE, SANFORD WHITE, DONN WOLF, STEVE LOVELLETTE, TOMMY SCARCELLO, RON DECKER, and DOUGLAS "SONNY" BRUBACH monitor Alamo's activities once they received notice of the "spiritual" ceremonies whereby Alamo wed child brides, had them wear wedding bands, and live in his home;

   b. Creating an environment by which SALLY DEMOULIN, SHARON ALAMO, STEVE JOHNSON, ANGELA MORALES, TERRI WHITE, SANFORD WHITE, DONN WOLF, STEVE LOVELLETTE, TOMMY SCARCELLO, RON DECKER, and DOUGLAS "SONNY" BRUBACH "looked the other way" when it came to Alamo taking physical and emotional advantage of Plaintiffs;

   c. Creating an environment by which SALLY DEMOULIN, SHARON ALAMO, STEVE JOHNSON, ANGELA MORALES, TERRI WHITE, SANFORD WHITE, DONN WOLF, STEVE LOVELLETTE, TOMMY SCARCELLO, RON DECKER, and DOUGLAS "SONNY" BRUBACH allowed Alamo unsupervised access to Plaintiffs to engage in inappropriate physical behavior;

   d. Creating an environment by which SALLY DEMOULIN, SHARON ALAMO, STEVE JOHNSON, ANGELA MORALES, TERRI WHITE, SANFORD WHITE, DONN WOLF, STEVE LOVELLETTE, TOMMY

SCARCELLO, RON DECKER, and DOUGLAS "SONNY" BRUBACH failed to stop Alamo's unsupervised access to Plaintiffs;

e. Failing to remove SALLY DEMOULIN, SHARON ALAMO, and STEVE JOHNSON, ANGELA MORALES, TERRI WHITE, SANFORD WHITE, DONN WOLF, STEVE LOVELLETTE, TOMMY SCARCELLO, RON DECKER, and DOUGLAS "SONNY" BRUBACH from their positions given Alamo's apparent undue influence over them as concerns Plaintiffs;

f. Failing to have proper policies, procedures and protocols in place to ensure that SALLY DEMOULIN, SHARON ALAMO, STEVE JOHNSON, ANGELA MORALES, TERRI WHITE, SANFORD WHITE, DONN WOLF, STEVE LOVELLETTE, TOMMY SCARCELLO, RON DECKER, and DOUGLAS "SONNY" BRUBACH would not be unduly influenced by Alamo to allow him access to underage girls for inappropriate purposes; and

g. Failing to have proper policies, procedures and protocols in place to ensure that SALLY DEMOULIN, SHARON ALAMO, STEVE JOHNSON, ANGELA MORALES, TERRI WHITE, SANFORD WHITE, DONN WOLF, STEVE LOVELLETTE, TOMMY SCARCELLO, RON DECKER, and DOUGLAS "SONNY" BRUBACH reported Alamo's improper conduct with Plaintiffs to the proper authorities and to cut off his continued access to Plaintiff.

86. CHURCH DEFENDANTS and CHURCH BUSINESS DEFENDANTS also owed a duty to use ordinary care in exercising whatever control they retained over RGS. CHURCH DEFENDANTS and CHURCH BUSINESS DEFENDANTS breached their duties by failing to exercise reasonable control over RGS as it concerns properly reporting incidences of inappropriate behavior toward the Plaintiffs and other underage church members.

87. CHURCH DEFENDANTS and CHURCH BUSINESS DEFENDANTS also owed a duty to use ordinary care in exercising whatever control they had to train, supervise, and/or retain Tony Alamo as their Pastor and leader. CHURCH DEFENDANTS and CHURCH BUSINESS DEFENDANTS breached their duties by failing to exercise reasonable control over Tony Alamo as it concerns properly enforcing reasonable boundaries for acceptable behavior, monitoring his interaction with the Plaintiffs and

other underage church members, and removing him from a position of power when they knew or should have known he presented a grave risk of harm to this vulnerable group. Instead CHURCH DEFENDANTS and CHURCH BUSINESS DEFENDANTS turned a blind eye to Tony Alamo's behavior and recklessly allowed his destructive behavior.

88. CHURCH DEFENDANTS and CHURCH BUSINESS DEFENDANTS knew, or through the exercise of reasonable care, should have known, that its acts and omissions as set forth herein would subject Plaintiffs to an unreasonable risk of harm.

89. CHURCH DEFENDANTS and CHURCH BUSINESS DEFENDANTS' acts and omissions as set forth herein, proximately caused and/or contributed to the cause of Plaintiffs' injuries resulting in damages to Plaintiffs, as set forth herein.

## FALSE IMPRISONMENT
## AGAINST ALL DEFENDANTS

90. As set forth herein, Defendants violated the Plaintiffs' personal liberties by detaining them at Tony's House, in Tony's bedroom, in the House of Scorn also known as the Green House, the Church Bus and other TACM property when they knew or should have known that they lacked the legal authority to do so, through one or more of the devices from among other things, intimidation, violence, threats of violence, physical force and against their free will, when considering the relative size, age, experience, gender and physical demeanor of Plaintiffs when compared to Defendants.

91. Plaintiffs suffered damages proximately caused by Defendants' acts, for which they seek damages as prayed for below.

92. Because Plaintiff NICOLE FARR escaped the TACM compound in Fouke, Arkansas before Defendant RGS was retained by TACM, Plaintiff FARR asserts no cause of action against Defendant RGS.

## INVASION OF PRIVACY AGAINST ALL DEFENDANTS EXCEPT RGS

93. As set forth herein, Defendants, acting individually or in combination by or on behalf of an owner, landlord or lessor the properties which housed Plaintiffs, unreasonably invaded Plaintiffs right to privacy by (1) highly offensive intrusion upon Plaintiffs' legitimate expectation of seclusion; (2) publicly disclosing Plaintiffs' private facts; and (3) recklessly publicizing personal information of and concerning Plaintiffs which unreasonably placed them in a false light (to wit, that Plaintiffs were Tony Alamo's willing child brides), that was highly offensive to a reasonable person, and in which Defendants had, or should've had serious doubts as to the truth of the matters publicized.

94. Plaintiffs suffered damages proximately caused by Defendants' invasion of privacy for which they seek damages as prayed for below.

## DEFAMATION AGAINST ALL DEFENDANTS

95. Defendants negligently published untrue statements of fact regarding Plaintiffs to third persons, including but not limited to, that Plaintiffs were willing child brides of Tony Alamo and consented to the spiritual ceremonies. While ALL DEFENDANTS participated in and supported the publishing of such statements, CHURCH BUSINESS DEFENDANT CHP was actually responsible for printing and disseminating a significant amount of this material. Furthermore, the former Secretary and Treasurer of CHURCH BUSINESS DEFENDANT RWR, Stanley

Levine, wrote many letters defaming the Plaintiffs during Alamo's criminal trial. Levine, as has been discussed above, wrote these defamatory letters in his dual capacity as an officer of a CHURCH BUSINESS DEFENDANT (RWR) and as a loyal TACM member.

96. Defendants' acts of defamation of Plaintiffs proximately caused them to suffer damage to reputation, loss of earning capacity, plus mental and physical damage as prayed forth below.

### JOINT VENTURE/ENTERPRISE LIABILITY AGAINST CHURCH DEFENDANTS AND CHURCH BUSINESS DEFENDANTS

97. On information and belief, CHURCH DEFENDANTS (TFC, GCC, TAF, and MSC) and CHURCH BUSINESS DEFENDANTS (AOH, SJD, ADI, AFG, ADC, JEA, and CHP) are involved in a joint enterprise called TACM based on (1) an express or implied agreement; (2) to share a common purpose, (3) with a community of pecuniary interest in that common purpose, and (4) an equal right to voice in the direction or control of the enterprise. Because one or more members of TACM committed a tort against Plaintiffs while carrying out their common purpose, vicarious liability may be imposed on each member for that tort.

98. On information and belief, CHURCH DEFENDANTS and the CHURCH BUSINESS DEFENDANTS equally participated in the operations of TACM through an express and/or implied agreement to share a common purpose to promote the ministry, to sustain the ministry through a community of pecuniary interest based upon sharing in the revenues and proceeds generated by the operations. Specifically, CHURCH DEFENDANTS and CHURCH BUSINESS DEFENDANTS:

a. operate as a commune on approximately 15 acres of land in and around Fouke, Arkansas, over 150 acres in Saugus, California, several properties in Ft. Smith, Arkansas and New Jersey, and refer to themselves as TACM;

b. contribute funds to and withdraw funds from one "bookkeeper" account into which revenues are deposited and operating expenses are paid;

c. use one person, Defendant SALLY DEMOULIN, to maintain the bookkeeper account;

d. require all employees to be church members;

e. use and share vehicles, employees/church members, buildings, homes, and warehouses;

f. solicit, collect, transport, convert, and sell "charitable" donations and contributions;

g. title properties in one of more individual church members' names, including, SALLY DEMOULIN, SHARON ALAMO, STEVE JOHNSON, ANGELA MORALES, TERRI WHITE, SANFORD WHITE, DONN WOLF, STEVE LOVELLETTE, TOMMY SCARCELLO, RON DECKER, and DOUGLAS "SONNY" BRUBACH to be held in trust for Tony Alamo and/or TACM;

h. transfer funds freely between them;

i. maintain central, consolidated files of church members, bank statements, account statements, payroll and employment records;

j. pay expenses for auto, health and other insurance, electric, gas, phone, water, insurance, mortgages and other bills, including invoices for security services provided by Defendant RGS to TACM;

k. pay mortgages on church buildings, church sanctuaries, warehouses; residential and income rental properties; and

l. access and control church buildings, the church sanctuary, warehouses; residential and income rental properties.

99. As set forth herein, one or more of the members of TACM committed one or more torts against Plaintiffs while acting within the scope of the joint enterprise, including negligence, negligent hiring, supervision, training and retention, all which proximately caused Plaintiffs' injuries. Accordingly, each CHURCH DEFENDANT

and each CHURCH BUSINESS DEFENDANT is an agent of the other and is liable for each others' negligent acts.

**TRAFFICKING LIABILITY AGAINST ALL DEFENDANTS EXCEPT RGS**

100. CHURCH DEFENDANTS, CHURCH BUSINESS DEFENDANTS, SALLY DEMOULIN, SHARON ALAMO, STEVE JOHNSON, ANGELA MORALES, TERRI WHITE, SANFORD WHITE, DONN WOLF, STEVE LOVELLETTE, TOMMY SCARCELLO, RON DECKER, and DOUGLAS "SONNY" BRUBACH, acting alone or in combination as part of a joint enterprise or venture, transported, maintained and/or harbored Plaintiffs in reckless disregard of the fact that force, threats of force, coercion or any combination thereof was used against Plaintiffs for the purpose of causing Plaintiffs – all under 18 years of age – to be an involuntary part of a commercial sex act. Defendants received value from participation in this venture.

101. Plaintiffs seek relief against Defendants for their participation in the above described activities, all proscribed by 18 U.S.C. §1595.

**TRANSPORTER LIABILITY AGAINST ALL DEFENDANTS EXCEPT RGS**

102. CHURCH DEFENDANTS, CHURCH BUSINESS DEFENDANTS, SALLY DEMOULIN, SHARON ALAMO, STEVE JOHNSON, ANGELA MORALES, TERRI WHITE, SANFORD WHITE, DONN WOLF, STEVE LOVELLETTE, TOMMY SCARCELLO, RON DECKER, and DOUGLAS "SONNY" BRUBACH, acting alone, in combination, and/or together as part of the joint enterprise known as TACM: arranged, induced, procured, or facilitated the travel (through one or more employee drivers), of one or more of the underage Plaintiffs – through coercion or

otherwise - with intent that Plaintiffs engage in illicit sexual activity in violation of 18 U.S.C. §109A and 18 U.S.C. §2423(a)-(d). Specifically, SHARON ALAMO and ANGELA MORALES owned, and continue to own, the Church Bus on which the Plaintiffs were transported for the purpose of Tony Alamo's access to them. Furthermore, TERRI WHITE and SANFORD WHITE drove this same Church Bus on these same Church trips. These Defendants received financial benefit from transporting the underage Plaintiffs and were paid for their services through the "bookkeeper" account described herein.

103. Plaintiffs seek relief against Defendants for their participation in the above described activities, as allowed by 18 U.S.C. §1595 and 18 U.S.C. §2255.

## MANDATORY REPORTER LIABILITY AGAINST CHURCH DEFENDANTS, CHURCH BUSINESS DEFENDANTS, AND INDIVIDUAL DEFENDANTS TERRI WHITE, SANFORD WHITE, TOMMY SCARCELLO AND DOUGLAS "SONNY" BRUBACH

104. As members of the clergy, some or all CHURCH DEFENDANTS AND CHURCH BUSINESS DEFENDANTS are each considered a "Mandated Reporter" pursuant to Arkansas Code 12-18-402. Furthermore, INDIVIDUAL DEFENDANTS TERRI WHITE, SANFORD WHITE, TOMMY SCARCELLO, and DOUGLAS "SONNY" BRUBACH all claim to be "ordained ministers" working for TACM. On information and belief, other INDIVIDUAL DEFENDANTS have also claimed to hold positions in TACM that qualify them as "clergy" under Arkansas Code 12-18-402. As such, each clergy member was required to immediately notify the child abuse hotline if it had reasonable cause to suspect that a child had been subjected to maltreatment. No defendant reported the abuse.

105. Additionally, Debbie Ondersik and Bethany Meyers were teachers at a school operated by GCC. GCC is part of TFC. These two teachers taught all of Plaintiffs except Nicole Farr. These teachers knew or should have known that Plaintiffs had been subjected to maltreatment; however, they did not report the abuse. These teachers were agents of CHURCH DEFENDANTS and CHURCH BUSINESS DEFENDANTS.

106. Therefore, each is liable to Plaintiffs for all damages resulting from the abuse as provided by Arkansas Code 12-18-402.

## OUTRAGE LIABILITY AGAINST ALL DEFENDANTS

107. The conduct of Defendants, including but not limited to, physical beatings, verbal abuse, sexual abuse, and other acts were committed by Defendants with either the intent to inflict emotional distress on Plaintiffs or under circumstances where Defendants knew or should have known that emotional distress would likely result from their conduct. Defendants' conduct in this regard was extreme and outrageous, beyond all possible bounds of decency, and utterly intolerable in a civilized community. The conduct of Defendants did in fact cause emotional distress to Plaintiffs to a degree so severe that no reasonable person could be expected to endure.

108. Because Plaintiff NICOLE FARR escaped the TACM compound in Fouke, Arkansas before Defendant RGS was retained by TACM, Plaintiff FARR asserts no cause of action against Defendant RGS.

## CAUSES OF ACTION AGAINST TONY ALAMO

91. Battery: Third party Defendant, Tony Alamo, sexually abused the Plaintiffs. As such all Plaintiffs assert a cause of action against Tony Alamo for battery. Tony Alamo

wrongfully committed violence upon Plaintiffs with the intent to injure them. These acts of violence were unjustified in law and constitute actionable battery. Tony Alamo's conduct was a proximate cause of injuries and damages to Plaintiffs.

92. False Imprisonment: Third party Defendant, Tony Alamo, falsely imprisoned Plaintiffs by forcibly subjecting Plaintiffs to beatings and by unlawfully restricting Plaintiff's liberty. Alamo did so by detaining, beating, and sexually abusing Plaintiffs within the confines of the TACM properties without sufficient legal authority to do so. Alamo falsely imprisoned Plaintiffs through threat of physical violence. Plaintiffs suffered damages as a result of said false imprisonment.

93. Outrage: The conduct of Tony Alamo, including but not limited to, physical beatings, verbal abuse, sexual abuse, and other acts were committed by Tony Alamo with either the intent to inflict emotional distress on Plaintiffs or under circumstances where Tony Alamo knew or should have known that emotional distress would likely result from their conduct. Tony Alamo's conduct in this regard was extreme and outrageous, beyond all possible bounds of decency, and utterly intolerable in a civilized community. The conduct of Tony Alamo did in fact cause emotional distress to Plaintiffs to a degree so severe that no reasonable person could be expected to endure.

## VI. PLAINTIFFS' DAMAGES

94. As a direct and proximate result of Defendants' as described above, Plaintiffs have suffered bodily injury, severe mental anguish, including physical manifestations of mental anguish, humiliation, embarrassment, confusion, which has in the past and will in the future interfere with their daily lives, reputation, ability to earn a living,

enjoy life and otherwise carry out their day-to-day responsibilities. Plaintiffs claim

the following items of specific damages to date:

a. Reasonable and necessary medical expenses incurred in the past;

b. Reasonable and necessary medical expenses reasonably likely to be incurred in the future;

c. Past physical pain and suffering;

d. Mental anguish and impairment in the past;

e. Mental anguish and impairment in the future;

f. Lost wages in the past;

g. Lost wages in the future;

h. Reasonable attorney fees;

i. Costs of suit;

j. Minimum damages of $150,000.00 as specified by 18 U.S.C. §2255;

k. Pre-judgment interest at the highest rate allowed by law; and

l. Post-judgment interest at the highest rate allowed by law.

## VII. PRAYER

WHEREFORE, PREMISES CONSIDERED, Plaintiffs pray that Defendants be cited to appear and answer herein, as the law directs, and that upon final hearing thereof, Plaintiffs have and recover judgment over and from Defendants in such amounts as the evidence may show proper at the time of trial, together with pre-judgment and post-judgment interest thereon at the maximum legal rate allowed by law, costs of Court, and for such other and further relief, both general and special, at law or in equity, to which Plaintiffs may show themselves justly entitled. Plaintiffs specifically pray for exemplary damages against Defendants as allowed by applicable law and as established by the evidence presented at trial.

Dated this: 13th day of April, 2012.

Respectfully submitted,

**NIX, PATTERSON & ROACH, LLP.**
215 N. O'Connor Blvd., Suite 1900
Irving, TX 75039
Telephone: 972.831.1188
Facsimile: 972.444.0716

By: _____
dneilsmith@me.com
Texas Bar Number 00797450

**NIX, PATTERSON & ROACH, LLP.**
2900 St. Michael Drive, Suite 500
Texarkana, TX 75503
Telephone: 903.223.3999
Facsimile: 903.223.8520
Brady Paddock
bpaddock@nixlawfirm.com
Arkansas Bar Number 93135

**MERCY ★ CARTER ★ TIDWELL, L.L.P**
1724 Galleria Oaks Drive
Texarkana, Texas 75503
(903) 794-9419 – Telephone
(903) 794-1268 – Fax
W. David Carter
wdcarter@texarkanalawyers.com
Arkansas Bar Number 85025
**ATTORNEYS FOR PLAINTIFFS**