IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
TEXARKANA DIVISION

DESIREE KOLBEK, et al.                                              PLAINTIFFS

VS.                          CASE NO. 10-CV-4124

TWENTY FIRST CENTURY HOLINESS
TABERNACLE CHURCH, INC., et al.                        DEFENDANTS


JEANNE ESTATES
APARTMENTS, INC.                                  THIRD-PARTY PLAINTIFF

VS.

JENNIFER KOLBEK, et al.                        THIRD-PARTY DEFENDANTS


## MEMORANDUM OPINION

Before the Court are Motions for Summary Judgment filed on behalf of Defendants Tony
Alamo (ECF No. 522), Sharon Alamo (ECF No. 499), Jeanne Estates Apartments, Inc., (ECF
No. 493) and Twenty First Century Holiness Tabernacle Church, Inc. (ECF No. 515).  Plaintiffs
have filed a response.  (ECF No. 582).  Defendants have filed replies.  (ECF Nos. 588, 589, 593,
& 594).  The Court finds this matter ripe for consideration.

## BACKGROUND

Plaintiffs Desiree Kolbek, Summer Hagan, Jamie Rodriguez, Pebbles Rodriguez, Jeanne
Orlando, Amy Eddy, and Nikki Farr are all former members of Tony Alamo Christian Ministries
("TACM").  TACM is an organization of churches and businesses that are operated by individual
members of TACM and Defendant Tony Alamo.   Plaintiffs allege that TACM operates as a
"communal organization."  Members of TACM work in businesses affiliated with the ministry.
Earnings from the businesses are deposited into an account shared by the church and businesses,

and rather than receiving a salary, members' living expenses are paid with money from this joint account.  According to Plaintiffs, Tony Alamo exercises some degree of control over everything in TACM, from the church, to the businesses, to the lives of the church members.

Plaintiffs allege that, when they were members of TACM, they were forced to become "spiritual wives" of Tony Alamo. Plaintiffs were "married" to Tony Alamo and moved into his home when they were minors. Jeanne Orlando was fifteen; Amy Eddy was fifteen; Pebbles Rodriguez was twelve; Desiree Kolbek was eight; and Summer Hagan was eleven.  While Plaintiff Nikki Farr was never "married" to Alamo, she states that she was moved into his home at the age of fifteen and was "groomed" to be a spiritual wife.

As the "spiritual wives" of Tony Alamo, Plaintiffs state that Alamo subjected them to frequent sexual abuse and physical abuse as minors.  Plaintiffs allege that this abuse took place in Alamo's home in Fouke, Arkansas; in other facilities on TACM property in Arkansas and California; in buses operated by TACM; in unknown hotels in Arizona and California; and at a federal correctional facility in Texarkana, Texas. In addition to suffering physical and sexual abuse, Plaintiffs allege that they were falsely imprisoned on TACM property and that their privacy was constantly invaded while they were "married" to Alamo.

Each of the Plaintiffs left or "escaped" the church on separate occasions between 1999 and 2010.[1]  In July of 2009, Tony Alamo was convicted of sexual abuse crimes against five of the Plaintiffs in this case.  *United States v. Hoffman*, 626 F.3d 993 (8th Cir. 2010).  In addition to a sentence of 175 years imprisonment, Alamo was ordered to pay restitution in the amount of $2.5 million. Plaintiffs filed this civil action on August 27, 2010.  In its original configuration,

---

[1] Nikki Far left in June 1999 at the age of fifteen.  Amy Eddy and Jeanne Orlando left in June 2006 at the ages of twenty-two and twenty-seven, respectively.  Jamie Rodriguez left in August 2006 at the age of seventeen. Kolbek left in November 2006 at the age of fifteen.  Summer Hagan left in August 2007 at the age of sixteen. Pebbles Rodriguez left the church in June 2010 at the age of twenty-five.

the suit included claims against numerous TACM church entities, individual church members, and TACM businesses.  Plaintiffs have voluntarily dismissed most of these parties as the result of a settlement agreement.  The only Defendants that remain are Tony Alamo, Sharon Alamo, Jeanne Estates Apartments, Inc., ("Jeanne Estates") and Twenty First Century Holiness Tabernacle Church, Inc. ("Twenty First Century").

Defendant Sharon Alamo is another "spiritual wife" of Tony Alamo. While they are not legally married, Sharon Alamo admits that she has held herself out to be Tony Alamo's wife since August 31, 1989.  Plaintiffs allege Sharon Alamo was a "sister wife" to them and that they shared a home with her during the time they were being abused.  Defendant Jeanne Estates is an apartment complex based in Fort Smith, Arkansas that, according to Plaintiffs, is "used to generate money [to support] Tony [Alamo's] house and TACM operations."   Jeanne Estates is and/or was owned and operated by members of TACM.  Defendant Twenty First Century is a corporate church entity with its principal place of business in Dyer, Arkansas.

While Tony Alamo was the perpetrator of the sexual and physical abuse, Plaintiffs claim that the other Defendants should also be held liable because they and their agents encouraged and facilitated the abuse or, at the very least, did nothing to prevent the abuse when they had the duty and ability to do so.  Plaintiffs' claims arising from the sexual and physical abuse are: negligence, negligent entrustment, negligent hiring, outrage, battery, mandatory reporter liability, transporter liability under 18 U.S.C. § 2255, and trafficking liability under 18 U.S.C. § 1595.[2]  In

---

[2] The following claims have been asserted against Sharon Alamo, Jeanne Estates, and Twenty First Century: negligence, invasion of privacy, false imprisonment, defamation, outrage, transporter liability, and trafficking liability. Plaintiffs' negligent entrustment claim is only asserted against Sharon Alamo.  Plaintiffs' negligent hiring and mandatory reporter claims are only asserted against Jeanne Estates and Twenty First Century. The following claims have been asserted against Tony Alamo:  battery, invasion of privacy, false imprisonment, defamation, outrage, transporter liability, and trafficking liability.

addition to their claims based on physical and sexual abuse, Plaintiffs allege that all of the Defendants are liable for invasion of privacy, defamation, and false imprisonment.

<u>STANDARD OF REVIEW</u>

The standard of review for summary judgment is well established. When a party moves for summary judgment, "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact, and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Krenik v. County of LeSueur*, 47 F.3d 953 (8th Cir. 1995). This is a "threshold inquiry of…whether there is a need for trial—whether, in other words, there are genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 250 (1986); s*ee also Agristor Leasing v. Farrow*, 826 F.2d 732 (8th Cir. 1987). A fact is material only when its resolution affects the outcome of the case. *Anderson*, 477 U.S. at 248. A dispute is genuine if the evidence is such that it could cause a reasonable jury to return a verdict for either party. *Id*. at 252.

The Court must view the evidence and the inferences reasonably drawn from the evidence in the light most favorable to the nonmoving party. *Enterprise Bank v. Magna Bank*, 92 F.3d 743, 747 (8th Cir. 1996). The moving party bears the burden of showing that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. *Id*. The nonmoving party must then demonstrate the existence of specific facts in the record that create a genuine issue for trial. *Krenik*, 47 F.3d at 957. A party opposing a properly supported motion for summary judgment may not rest upon mere allegations or denials, but must set forth specific facts showing that there is a genuine issue for trial. *Anderson*, 477 U.S. at 256.

**Statute of Limitations**

Defendants argue that the majority of Plaintiffs' claims are time-barred by the applicable statutes of limitation.  In response, Plaintiffs argue that the limitations period on each claim has been tolled by Ark. Code. Ann. § 16-15-116, § 16-56-130, and/or equitable tolling.  The Court will address each of these provisions as they relate to Plaintiffs' state claims and federal claims.

A. *Plaintiffs' state claims*

Plaintiffs have asserted claims against various Defendants for negligence, negligent entrustment, negligent hiring, outrage, battery, false imprisonment, invasion of privacy, defamation, and mandatory reporter liability.  Each of these claims has a statute of limitation ranging from one to three years.[3]  Plaintiffs filed this suit on August 27, 2010.[4]  The majority of Plaintiffs' claims stem from Defendants' actions alleged to have occurred while Plaintiffs were still a part of Tony Alamo's church.[5]  Because the majority of Plaintiffs left the church between 1999 and 2006, there is no dispute that most of their state claims were filed outside of the one to three year period provided by the relevant statutes of limitation.[6]  The primary dispute lies in whether the statutory period was tolled, thereby rendering Plaintiffs' claims timely.

1.  Tolling pursuant to Ark. Code Ann. § 16-56-116

The relevant portion of Ark. Code Ann. § 16-56-116 provides that, if a person is "under twenty-one (21) years of age or insane at the time of the accrual of the cause of action, that

---

[3] Negligence, negligent entrustment, negligent hiring, outrage, and invasion of privacy claims carry a 3-year statute of limitations.  Battery, false imprisonment, and defamation carry a 1-year statute of limitations.  Mandatory reporter claims must be brought within three years of a plaintiff's eighteenth birthday.  *See* Ark. Code. Ann. §§ 16-56-104 and 105.

[4] Pebbles Rodriguez was not added as a Plaintiff until December 21, 2010.  (ECF No. 14).

[5] Plaintiffs' claims for defamation and invasion of privacy are alleged to have arisen more recently.

[6] Summer Hagan did not leave the church until August 2007.  Pebbles Rodriguez did not leave the church until June 2010.

person may bring the action within three (3) years next after attaining *full age*[.]" (emphasis added). Because the age of twenty-one is specifically referenced in the statute, Plaintiffs interpret "full age" as meaning twenty-one. Accordingly, Plaintiffs maintain that the statutes of limitation on their claims did not expire until their twenty-fourth birthdays. The parties all acknowledge that Desiree Kolbek, Summer Hagan, and Jamie Rodriguez are the only Plaintiffs who filed claims prior to turning twenty-four.[7] Therefore, even if Plaintiffs' definition of "full age" is applied, these three Plaintiffs are the only individuals who have claims that might be protected under the tolling provisions of § 16-56-116.

Defendants vigorously dispute Plaintiffs' interpretation of "full age" under the tolling provision. Defendants argue that Arkansas law clearly states that a person is of "full age" when they reach the age of eighteen. If this definition of "full age" is applied, the statutes of limitation would have expired when Plaintiffs reached the age of twenty-one rather than twenty-four. Defendants' definition of "full age" is derived from Ark. Code Ann. § 9-25-101 which provides in relevant part:

> (a) All persons of the age of eighteen (18) years shall be considered to have reached the age of majority and be of full age for all purposes. Until the age of eighteen (18) years is attained, they shall be considered minors.

> (b) Any law of the State of Arkansas that presently requires a person to be of a minimum age of twenty-one (21) years to enjoy any privilege or right or to do any act or to participate in any event, election, or other activity shall be deemed to require that person to be of a minimum age of eighteen (18) years.

The Court agrees with Defendants' application of § 9-25-101 in determining the definition of "full age." Courts applying Arkansas law have consistently interpreted § 16-56-116 as tolling a statute of limitation until a plaintiff reaches the "full age" of eighteen, not twenty-

---

[7] Desiree Kolbek was born in May of 1991. Summer Hagan was born in August of 1991. Jamie Rodriguez was born in September of 1988.

one. *Miller v. Subiaco Acad.*, 386 F. Supp. 2d 1025, 1029 (W.D. Ark. 2005) ("The question of 'full age' is determined by Ark. Code Ann. § 9–25–101….It is apparent that the statute of limitations is tolled when any person entitled to bring an action, at the time of the accrual of the cause of action, is under eighteen (18) years of age. Inasmuch as it is apparent that plaintiff became eighteen, or reached 'full age' in 1980, any disability of age was removed many years ago."); *Phillips v. Sugrue*, 800 F. Supp. 789, 791 (E.D. Ark. 1992) (employing § 9-25-101 to define "full age" when applying § 16-56-116 to plaintiff's claim); *Follette v. Wal-Mart Stores, Inc.*, 41 F.3d 1234, 1236 (8th Cir. 1994) ("The Arkansas savings statute provides that any minor entitled to bring an action may do so within three years after coming of age."). *See also* HOWARD W. BRILL, ARKANSAS LAW OF DAMAGES, p. 217 (5th ed. 2004) (Noting that § 16-56-116 "gives a party who was a minor at the time of the accrual of the cause of action three years from the time of reaching majority in which to commence an action."). Accordingly, Desiree Kolbek, Summer Hagan, and Jamie Rodriguez attained full age when they turned eighteen, and their state claims were tolled until they reached the age of twenty-one. Desiree Kolbek did not reach the age of twenty-one until May 2012—close to two years after her claims were filed. Similarly, Summer Hagan did not reach the age of twenty-one until August 2012—approximately two years after her claims were filed. Accordingly, these Plaintiffs' state claims were timely filed pursuant to the tolling provisions § 16-56-116. Jamie Rodriguez, on the other hand, reached the age of twenty-one in September 2009. Her claims were not filed until August 2010. Jamie Rodriguez's state claims are therefore not timely under the tolling provisions of § 16-56-116. In the following section, the Court will consider whether Jamie Rodriguez, Amy Eddy, Jeannette Orlando, Pebbles Rodriguez, and Nicole Farr's claims are timely under a separate tolling provision.

### 2.  Tolling pursuant to Ark. Code Ann. § 16-56-130

In addition to arguing that certain Plaintiffs' claims were tolled pursuant to § 16-56-116, Plaintiffs also maintain that their claims were tolled under Ark. Code Ann. § 16-56-130, a separate statute that directly addresses civil claims based on sexual abuse.  Section 16-56-130 reads as follows:

> (a) Notwithstanding any other statute of limitations or any other provision of law that can be construed to reduce the statutory period set forth in this section, any civil action based on sexual abuse which occurred when the injured person was a minor but is not discovered until after the injured person reaches the age of majority shall be brought within three (3) years from the time of discovery of the sexual abuse by the injured party.
>
> (b)       (1) A claim based on an assertion of more than one (1) act of sexual abuse is not limited to the injured party's first discovery of the relationship between any one (1) of those acts and the injury or condition, but may be based on the injured party's discovery of the effect of the series of acts.
>
>        (2) It is not necessary for the injured party to establish which act in a series of acts of childhood sexual abuse caused the injury or condition that is the subject of the lawsuit.
>
> (c) For the purposes of this section:
>
>        (1) "Childhood sexual abuse" means sexual abuse which occurred when the injured person was a minor;
>        (2) "Minor" means a person of less than eighteen (18) years of age; and
>        (3) "Time of discovery" means when the injured party discovers the effect of the injury or condition attributable to the childhood sexual abuse.

Plaintiffs maintain that all of their claims are timely because they were filed within three years from the time they "discover[ed] the effect of the injury or condition attributable to the childhood sexual abuse," as provided for under § 16-56-130.  Defendants attack the application of § 16-56-130 on several different grounds.  First, Defendants Twenty First Century and Jeanne

Estates argue that the statute only tolls the statutory period on claims made against individuals who actually committed the sexual abuse.  Accordingly, because they are "non-perpetrators," these Defendants argue that the statute does not toll the statutory period on claims made against them.  Second, all of the Defendants maintain that the Plaintiffs "discovered" the effects of their injuries more than three years before filing their claims.  Third, Defendants maintain that the statute does not toll many of Plaintiffs' claims—defamation, for example—because these claims are not "based on sexual abuse."

No court in Arkansas has applied § 16-56-130 or interpreted its statutory language. Accordingly, in addressing the parties' arguments, the Court will predict, as best it can, how the Arkansas Supreme Court would decide these issues.  *JPMorgan Chase Bank, N.A. v. Johnson*, 719 F.3d 1010, 1015 (8th Cir. 2013).

### a. Applying § 16-56-130 to non-perpetrators

Section § 16-56-130 applies to civil actions "based on" childhood sexual abuse. Defendants maintain that a claim made against a non-perpetrator is not a claim "based on" childhood sexual abuse.

Section § 16-56-130 makes no explicit distinction between perpetrators and non-perpetrators of sexual abuse.  The statute very broadly encompasses claims "based on" childhood sexual abuse and places virtually no limitations on what types of claims may qualify. "Childhood sexual abuse" is defined within the statute as "sexual abuse which occurred when the injured person was a minor[.]"  The statute does not single out specific criminal statutes that would define the parameters of "childhood sexual abuse" or state that a criminal conviction is necessary for the statute to apply.  This lack of specificity is telling.  Other courts considering

statutes with similar language have relied heavily on this lack of limiting language in concluding that claims are tolled as to both perpetrators and non-perpetrators.

In *Werre v. David*, 275 Mont. 376, 913 P.2d 625 (Mont. 1996), the Supreme Court of Montana interpreted a tolling statute very similar to Arkansas's which tolls actions that are "based on intentional conduct brought by a person…for injury suffered as a result of childhood sexual abuse." Mont. Code Ann. § 27-2-216. In that case, the Montana Supreme Court reasoned that, because the plaintiff's negligence claims against a non-perpetrator "would not exist absent the intentional sexual abuse" by the perpetrator, the sexual abuse was the "starting point or foundation" for the negligence claims. *Werre*, 275 Mont. at 387. Thus, it could be concluded that the plaintiff's claims against a non-perpetrator were "based on" the sexual abuse and were eligible for tolling. *Id.* The same reasoning was applied to a very similar statute in *Almonte v. New York Med. Coll.*, 851 F. Supp. 34 (D. Conn. 1994). The Connecticut statute tolls claims for personal injury "caused by" sexual abuse. Conn. Gen. Stat. Ann. § 52-577d. The Court noted that the statute "does not expressly limit its application to offenders; rather…the unambiguous language of the statute indicates that the statutory focus is on actions flowing from a particular type of harm, and not parties." *Almonte*, 851 F. Supp. at 37. The Court concluded that the proper focus was on the harm that was "caused by" the sexual abuse and not whether a defendant was primarily liable or secondarily liable for the abuse. *Id. See also C.J.C. v. Corp. of Catholic Bishop of Yakima*, 138 Wash. 2d 699, 712, 985 P.2d 262, 269 (Wash. 1999).

Courts who have found that claims against non-perpetrators are excluded from sexual abuse tolling provisions have largely done so because of limiting language that does not exist in Arkansas's tolling provision. In *Bernie v. Blue Cloud Abbey*, 2012 S.D. 64, 821 N.W.2d 224, 228 (S.D. 2012), the Supreme Court of South Dakota held that claims "based on" childhood

sexual abuse were not tolled as to non-perpetrators because the statute's definition of sexual abuse was limited to "intentional" conduct and specific violations of South Dakota's criminal code.  Similarly, the Eighth Circuit held that a Missouri tolling provision did not apply to non-perpetrators because the statute defined "childhood sexual abuse" as "any act committed by the defendant against the plaintiff…and which act would have been a violation of [certain enumerated criminal acts]."  *Walker v. Barrett*, 650 F.3d 1198, 1209 (8th Cir. 2011) (citing Mo. Ann. Stat. § 537.046).  *See also Sandoval v. Archdiocese of Denver*, 8 P.3d 598, 602 (Colo. Ct. App. 2000) ("[W]e agree with defendants that the references to the criminal code to define 'sexual assault' and 'sexual offense'…are highly significant and indicate that the General Assembly intended that the act upon which claims must be based is that of a perpetrator and not the negligence of a non-complicitous third party.");  *Kelly v. Marcantonio*, 678 A.2d 873, 876 (R.I. 1996) ("The statute's definition of 'childhood sexual abuse' dictates that only violators of chapter 37 of title 11, actual perpetrators, can be defendants under § 9–1–51….").

Applying the reasoning of these cases, along with Arkansas's well-settled rules of statutory interpretation, the Court finds that § 16-56-130 tolls claims against non-perpetrators of sexual abuse.  "The first rule in considering the meaning and effect of a statute is to construe it just as it reads, giving the words their ordinary and usually accepted meaning in common language."  *Rylwell, L.L.C. v. Arkansas Dev. Fin. Auth.*, 372 Ark. 32, 36, 269 S.W.3d 797, 800 (Ark. 2007).  Section 16-56-130 states that claims "based on" childhood sexual abuse are eligible for tolling.  "Base" is defined by Webster's dictionary as "that on which a thing stands or rests…; foundation…a starting point or point of departure."  WEBSTER'S UNABRIDGED DICTIONARY, 172 (2d ed. 1999).  When applying "base" as a verb, the Oxford dictionary defines it as "hav[ing] the foundation for something" or "us[ing] as a point from which something can

develop." OXFORD DICTIONARIES PRO, http://english.oxforddictionaries.com/ definition/base?region=us (last visited December 3, 2013). Given these definitions, the Court concludes that the plain meaning of "based on" is a starting point or foundation. Accordingly, an action is "based on" childhood sexual abuse when the sexual abuse is the starting point or foundation of the claim.

Applying the plain meaning of "based on," the Court finds no reason to limit the application of § 16-56-130 to claims against perpetrators. To illustrate, Plaintiffs' negligence claims against certain non-perpetrators would not exist absent the intentional sexual abuse committed by Defendant Tony Alamo. Therefore, the sexual abuse by Alamo is the "foundation" or "starting point" of Plaintiffs' negligence claims against non-perpetrators.[8]

As demonstrated by the authority cited above, the Court's reading of the statute is further bolstered by the legislature's decision to define "childhood sexual abuse" very broadly without referring to the criminal code or intentional conduct by a defendant. Simply put, the Court finds nothing in the statute to indicate that the legislature intended to qualify or limit a plaintiff's ability to pursue claims against non-perpetrators.

### b. Claims "based on" sexual abuse

Defendants argue that, even if claims against non-perpetrators may be tolled by § 16-56-130, Plaintiffs' state claims are not "based on" childhood sexual abuse, and, therefore, are not eligible for tolling. The Court will separately address each of Plaintiffs' state claims.[9]

---

[8] The Court will discuss in a later section precisely which state claims, in addition to negligence, can be classified as "based on" childhood sexual abuse.

[9] Plaintiff Nicole Farr is excluded from this analysis. Nicole Farr was never "spiritually married" to Alamo. Rather, she alleges that she was "'groomed' to become one of his 'spiritual wives'" and lived in his house for some period of time. (ECF No. 337, Par. 51). She states that she was subject to "threats" and "abuse," but she admits that she was never sexually abused. (ECF No. 585, Exh 18, p. 107). Accordingly, none of her state claims can be classified as being "based on" childhood sexual abuse, and, therefore, they are not tolled by § 16-56-130.

### i. Negligence

Plaintiffs have asserted claims against Defendants for negligence, negligent entrustment, and negligent hiring.  Plaintiffs allege, among other things, that Defendants were negligent for "failing to protect Plaintiffs from sexual abuse and physical beatings"; "allowing Tony Alamo to use and/or benefit from the use of their property when they knew or had reason to know of Alamo's dangerous condition or proclivities"; "failing to require that [certain church members] monitor Alamo's activities once they received notice of the 'spiritual' ceremonies whereby Alamo wed child brides…."; and/or "creating an environment by which [certain church members] allowed Alamo unsupervised access to Plaintiffs to engage in inappropriate physical behavior[.]"

Upon review of these allegations, it is clear that Tony Alamo's sexual abuse of Plaintiffs is the "starting point" or "foundation" of Plaintiffs' negligence, negligent entrustment, and negligent hiring claims.  Accordingly, these claims are "based on" childhood sexual abuse as required by § 16-56-130 and may be tolled.  *C.J.C. v. Corp. of Catholic Bishop of Yakima*, 138 Wash. 2d 699, 709, 985 P.2d 262, 267 (Wash. 1999) ("[U]nder the facts presented here, intentional sexual abuse is the predicate conduct upon which all claims are based, including the negligence claims. The alleged sexual abuse is essentially an element of the plaintiffs' negligence claims."); *Werre v. David*, 275 Mont. 376, 387, 913 P.2d 625, 632 (Mont. 1996) ("…Joann's negligence claim against Margaret would not exist absent the intentional sexual abuse by Kenneth; stated differently, Kenneth's intentional sexual abuse of Joann is the starting point or foundation for Joann's negligence claim against Margaret."); *Almonte v. New York Med. Coll.*, 851 F. Supp. 34, 35 (D. Conn. 1994) (tolling the statute of limitations and allowing a negligence claim against an employer based on sexual abuse perpetrated by an employee).

To the extent that Plaintiffs' negligence claims are based upon physical abuse, they are not tolled by § 16-56-130.

### ii.  Outrage

Plaintiffs, with the exception of Nicole Farr, allege that "the conduct of Defendants, including but not limited to, physical beatings, verbal abuse, sexual abuse, and other acts" caused Plaintiffs' "emotional distress to…a degree so severe that no reasonable person could be expected to endure."  (ECF No. 337, p. 33).  Because sexual abuse is a part of the foundation of Plaintiffs' outrage claims, this portion of the claim is eligible for tolling under § 16-56-130.  *See Guertin v. McAvoy*, 042004, 2005 WL 1009649 (Mass. Super. Mar. 7, 2005).  To the extent that Plaintiffs' outrage claims are based upon physical abuse, they are not tolled by § 16-56-130.

### iii.  Battery

Plaintiffs assert a claim for battery against Defendant Tony Alamo based upon his acts of sexual abuse committed upon them.  Clearly, this battery claim is based upon sexual abuse.  Furthermore, it is a claim made solely against the perpetrator of the abuse.  Accordingly, the claim is eligible for tolling under § 16-56-130.

### iv.  False Imprisonment

Plaintiffs assert a claim of false imprisonment against all Defendants.  Plaintiffs allege that the Defendants "violated Plaintiffs' personal liberties by detaining them [on various church properties]…through…intimidation, violence, threats of violence, [and] physical force."  (ECF No. 337, p. 27).  Plaintiffs' false imprisonment allegations against Defendant Tony Alamo are somewhat different.   Plaintiffs make the additional allegation that Tony Alamo falsely imprisoned them by "detaining, beating, and sexually abusing Plaintiffs."  (ECF No. 337, p. 34).

Plaintiffs' false imprisonment claims against Defendants is not founded upon Alamo's acts of sexual abuse.  Rather, the claim focuses on the acts of intimidation and physical violence directly perpetrated by these Defendants.  Accordingly, the claim is not based on sexual abuse and is not tolled by § 16-56-130.

Plaintiffs' false imprisonment claim against Defendant Tony Alamo is somewhat related to Alamo's acts of sexual abuse in that the abuse was allegedly used to unlawfully restrict Plaintiffs' movements.  However, the gravamen of a false imprisonment claim is an unlawful detention and restriction.  *Ltd. Stores, Inc. v. Wilson-Robinson*, 317 Ark. 80, 83, 876 S.W.2d 248, 250 (Ark. 1994).  Stated another way, a plaintiff brings a false imprisonment claim to seek damages for harm stemming from the restriction of their liberty and not necessarily for the harm stemming from the incidental abuse. The fact that sexual abuse was one of many tools used to effectuate the "imprisonment" does not warrant classifying the claim as "based on" sexual abuse. Accordingly, Plaintiffs' false imprisonment claim against Tony Alamo is not tolled by § 16-56-130.

### v. Invasion of Privacy and Defamation

Plaintiffs allege that Defendants "unreasonably invaded Plaintiffs' right to privacy" by intruding upon Plaintiffs' legitimate expectation of seclusion, publicly disclosing Plaintiffs' private facts, and publicizing information that placed Plaintiffs in a false light.  Specifically, Plaintiffs allege that Defendants placed them in a false light by stating that Plaintiffs were Tony Alamo's "willing child brides."  Plaintiffs also bring a defamation claim based on similar disclosures.

Much like the false imprisonment claims, these invasion of privacy and defamation claims are not "based on" childhood sexual abuse.  Plaintiffs are seeking damages for harm done

15

by the personal intrusion into their personal lives and for harm done to their reputations. Accordingly, childhood sexual abuse is not the foundation for the claims, and § 16-56-130 is, therefore, inapplicable.

### vi.  Mandatory Reporter Liability

Plaintiffs assert claims for mandatory reporter liability against certain church defendants, church business defendants, and church members.  Plaintiffs allege that certain Defendants were required to report suspicions about Plaintiffs' "maltreatment" under Ark. Code. Ann § 12-18-402 and failed to do.  Child maltreatment is defined under the statute as "abuse, sexual abuse, neglect, sexual exploitation, or abandonment."  *Id.*  Pursuant to § 12-18-206, a defendant may be held "civilly liable for damages proximately caused by" the failure to report maltreatment.

To the extent that Plaintiffs' mandatory reporter claim is based on a failure to report sexual abuse, as opposed to physical abuse, it is clearly aligned with the requirements of § 16-56-130.  The sexual abuse is the foundation for liability under the mandatory reporter statute. Accordingly, the claim is eligible for tolling under § 16-56-130.

### c.  Discovery of the effects of the abuse

Claims based on childhood sexual abuse are timely under § 16-56-130 if they are filed within three years from the time of discovery of the sexual abuse by the injured party.  The statute defines "time of discovery" as the time "when the injured party discovers the effect of the injury or condition attributable to the childhood sexual abuse."  *Id.*  Defendants maintain that Plaintiffs' claims based on sexual abuse are barred because they discovered the effects of their injuries more than three years before filing suit.  More specifically, Defendants argue that

Plaintiffs discovered their injuries by the time they each left Tony Alamo Christian Ministries, which, for most Plaintiffs, was between 1999 and 2006.[10]

"When the running of the statute of limitations is raised as a defense, the defendant has the burden of affirmatively pleading this defense." *State v. Diamond Lakes Oil Co*., 347 Ark. 618, 623, 66 S.W.3d 613, 616 (Ark. 2002). Once a defendant has shown that on the face of the complaint an action is barred by the applicable limitations period, "the burden shifts to the plaintiff to prove by a preponderance of the evidence that the statute of limitations was in fact tolled." *Id*. "[R]easonable doubts about when a statute of limitations began to run ought to be resolved in favor of allowing a claim to proceed." *Highland Indus. Park, Inc. v. BEI Def. Sys. Co.*, 357 F.3d 794, 797 (8th Cir. 2004) (citing *Dunlap v. McCarty*, 284 Ark. 5, 7, 678 S.W.2d 361, 363 (Ark. 1984)).

Defendant Jeanne Estates notes that Plaintiffs "testified, with varying descriptions, to the effect that it was 'hell' to live at Alamo's house and she knew she had to leave." Defendant Twenty-First Century similarly argues that "Plaintiffs allege they knew of…Alamo's conduct and its harmful nature at the time it occurred and this knowledge continued undiminished throughout the applicable statutory limitations period." Plaintiffs respond that, because of their sheltered lives and the "brainwashing" within Alamo's church, they did not really begin to understand how wrong their relationships with Alamo were until *after* they left his house. They argue that they did not begin to understand the relationship between the sexual abuse and their injuries until 2009 when Alamo was convicted of sexual offenses and/or they began to see a

---

[10] The Court has already determined that Summer Hagan and Desiree Kolbek's state claims are timely under § 16-56-116. Accordingly, tolling under § 16-56-130 , the time of discovery of their injuries, and  the time of their departure from the church is not at issue.  Pebbles Rodriguez did not leave the church until June 2010.  She was added as a Plaintiff in December 2010 and, therefore, brought her claims within three years of her departure.

therapist in 2009.  This would place their claims, filed in 2010, well within the three-year statutory period that begins to run upon discovery.

In support of their discovery contentions, Defendants cite to Plaintiffs' deposition testimony and psychological examination reports.  Jeannette Orlando testified that she decided to leave Alamo's house because of "a very big buildup of everything that had happened" to her. (ECF No. 496, Exh 9, p. 68-69).  She specifically mentioned mental abuse and physical abuse as reasons for departing and stated that she was "tired of being abused" and "tired of seeing the other girls being abused[.]"  *Id*.  Amy Eddy testified that she started thinking about leaving Alamo's house "from the very first time [she] walked in and…saw him beating two three-year-old children."  Jamie Rodriguez testified that she told a fellow church member at some point that she "really needed" to leave the church.  (ECF No. 496, Exh. 5, p. 75).  Plaintiffs' psychological examination reports, much like their deposition excerpts, place a heavy emphasis on physical abuse as a reason for their departures.  (ECF No. 496, Exh. 25-31).

The testimony above does not clearly indicate that these Plaintiffs had discovered the effects of their sexual abuse injuries by the time they left Alamo's house.  Plaintiffs' testimony and psychological examination reports show that there were multiple reasons for their departures from Alamo's house, including physical abuse, mental abuse, lack of freedom, etc.  In other words, life within Alamo's church was intolerable for a great number of reasons.  Given these contributing factors, the Court cannot hold as a matter of law that Plaintiffs' departures conclusively demonstrate that they had "discovered" the effects of the sexual abuse injuries by the time of departure.  The discovery question is further complicated by Plaintiffs' allegations that they were "brainwashed" by Alamo and raised to believe that their sexual relationship with him was ordained by God.  Given these unique conditions, a reasonable jury could find that it

was possible for Plaintiffs to have been fed up with their living conditions in Alamo's house while not fully understanding the extent of the sexual abuse or its effects.

The jury may very well find that the Plaintiffs had discovered the effects of their injuries by the time they departed Alamo's house, but such a finding is not a foregone conclusion. Because the discovery of Plaintiffs' injuries is a disputed factual issue, summary judgment must be denied as to Defendants' § 16-56-130 statute of limitations arguments.

### 3. Equitable Tolling

In the alternative, Plaintiffs argue very briefly that the statutes of limitation on all of their state claims qualify for equitable tolling. Arkansas allows for the equitable tolling of the statutory period in cases where an act of fraud has concealed a cause of action. *Chalmers v. Toyota Motor Sales, USA, Inc.*, 326 Ark. 895, 902, 935 S.W.2d 258, 261 (Ark. 1996). In order for equitable tolling to apply, "'[t]here must be some positive act of fraud, something so furtively planned and secretly executed as to keep the plaintiff's cause of action concealed or perpetrated in a way that it conceals itself.'" *Id.* (quoting *First Pyramid Life Ins. Co. v. Stoltz*, 311 Ark. 313, 843 S.W.2d 842 (Ark. 1992)). "'[M]ere ignorance on the part of the plaintiff of his rights" and "mere silence of one who is under no obligation to speak" does not amount to fraudulent concealment. "[E]ven if fraudulent concealment is found, the [plaintiff] must additionally prove that the fraud would not have been detected by the exercise of reasonable diligence." *Barre v. Hoffman*, 2009 Ark. 373, 326 S.W.3d 415, 418 (Ark. 2009) (citing *Delanno, Inc. v. Peace*, 366 Ark. 542, 547, 237 S.W.3d 81, 85 (Ark. 2006)).

Plaintiffs offer this sole point in support of their fraudulent concealment argument: "[Plaintiffs] were taught to believe that being selected as a child bride was an honor and that the abuse they suffered was a normal part of li[fe]. As such, the wrong they suffered was

fraudulently concealed from them[.]"  (ECF No. 583, p. 77).  This allegation is not sufficient to create a genuine issue of fact as to the existence of fraudulent concealment.  Plaintiffs have offered no evidence or argument that Tony Alamo's teachings were an act of fraud *designed* to conceal Plaintiffs' causes of action.  While these teachings may have caused Plaintiffs to be ignorant of their rights and the extent of their injuries, they do not necessarily amount to fraudulent concealment.  Furthermore, Plaintiffs have not even attempted to offer argument on the issue of whether an exercise of reasonable diligence on behalf of Plaintiffs would have revealed the alleged fraud by Alamo.  Moreover, Plaintiffs do not offer any specifics on how Defendants other than Alamo actually committed fraud or disseminated the teachings that Plaintiffs allege are fraudulent.  For these reasons, Plaintiffs' equitable tolling theory does not present a question of fact that must go to the jury.

### 4.  Summary of state claims that have been tolled

Desiree Kolbek and Summer Hagan's state claims were tolled until their twenty-first birthdays pursuant to § 16-56-116.  Because their state claims were brought prior to their twenty-first birthdays, their state claims are timely.

As to Jeannette Orlando, Jamie Rodriguez, and Pebbles Rodriguez[11] a fact question exists as to whether the following state claims have been tolled pursuant to § 16-56-130:  negligence, negligent entrustment, negligent hiring, outrage, battery, and mandatory reporter liability.  These claims may only be tolled to the extent that they are based on sexual abuse.  To the extent that these claims are based on physical abuse, they are not tolled by § 16-56-130 and are time barred.

---

[11] The Court notes that Pebbles Rodriguez did not leave the church until June 2010.  She joined this case in December 2010.  Accordingly, to the extent that her negligence, outrage, and battery claims are based on actions that were occurring up to the time of her departure, her claims would be timely under the applicable statutes of limitations without the need for tolling under § 16-56-130.  However, the Court is not aware of any actions taken by Defendants since Alamo's incarceration in 2008 that could form the basis of Pebbles Rodriguez's outrage, negligence, or battery claims.

As to Jamie Rodriguez, Jeannette Orlando, and Amy Eddy, the following state claims are time barred and do not qualify for tolling:   false imprisonment and invasion of privacy (intrusion).   These Plaintiffs' false imprisonment claims accrued before they left the church in 2006.   Accordingly, their claims filed in 2010 were outside of the one-year statute of limitations period for false imprisonment claims.   As to invasion of privacy (intrusion), Plaintiffs allege that their privacy was intruded upon because, while they lived in Tony's home, their belongings were subject to search at any time and that their conversations with their parents were monitored. (ECF No. 584, Par 48-49).   Plaintiffs have offered no evidence showing that Plaintiffs' privacy was intruded upon after they left Alamo's house.   Accordingly, their invasion of privacy claims based on intrusion were filed outside the three-year statute of limitations period.

As to Nicole Farr, none of her state claims are tolled under § 16-56-130 because she was never sexually abused. Farr left Alamo's house in 1999 and did not bring claims arising from her time there until 2010.   Accordingly, her invasion of privacy (intrusion), negligence, negligent entrustment, negligent hiring, battery, outrage, false imprisonment and mandatory reporter liability claims are time barred.

For clarification purposes, the Court notes that there are a few state claims that are timely without applying a tolling statute. Pebbles Rodriguez did not leave Alamo's house until June 2010.   She joined this case in December 2010.   To the extent that her false imprisonment, invasion of privacy (intrusion, false light, and public disclosure of private facts), and defamation claims are based on actions that were occurring up to the time of her departure, those claims would be timely filed.   As to Jamie Rodriguez, Nicole Farr, Jeannette Orlando, and Amy Eddy, Plaintiffs maintain that some of their defamation claims and invasion of privacy (false light and

public disclosure) claims arise from actions occurring in 2011 and 2012.  Accordingly, the Court will examine these claims on their merits in a later section.

### B.  Plaintiffs' Federal Claims

Plaintiffs have asserted two federal claims against Defendants.  First, Plaintiffs have alleged trafficking liability pursuant to 18 U.S.C. § 1595.  While Defendants vigorously dispute the merits of the application of § 1595, there appears to be no dispute that Plaintiffs' § 1595 claims fall within the statute's ten-year statute of limitation.  Second, Plaintiffs have alleged transporter liability pursuant to 18 U.S.C. § 2255.  Section 2255 provides a civil remedy for personal injuries suffered by minors who were victims of sexual abuse as defined by certain criminal statutes.  At the time Plaintiffs' claims were filed in 2010, Section 2255 provided:

> (b) Statute of limitations.  Any action commenced under this section shall be barred unless the complaint is filed within six years after the right of action first accrues or in the case of a person under a legal disability, not later than three years after the disability.

The statute has since been amended to extend the statutory period from six years to ten years.[12] Because there is no indication that the amended statutory period was meant to be applied retroactively, and because applying the statute retroactively would impermissibly revive a time-barred action, the Court will apply the six-year statute of limitation that was in effect at the time Defendants' alleged actions took place.  *Landgraf v. USI Film Prod.*, 511 U.S. 244, 280, 114 S.Ct. 1483 (1994) (stating that a "statute would have a genuinely retroactive effect ... where it would impair rights a party possessed when he acted, increase his liability for past conduct, or impose new duties with respect to transactions already completed"); *Hughes Aircraft Co. v. United States ex rel. Schumer*, 520 U.S. 939, 950, 117 S.Ct. 1871 (1997) ("[E]xtending a statute

---

[12] The amendment took effect after the parties submitted argument on the present motion, and none of the parties have attempted to supplement their briefs to address the amendment's effect.

of limitations after the pre-existing period of limitations has expired impermissibly revives a moribund cause of action.").

Kolbek and Hagan's claims are clearly timely under § 2255's statute of limitations because they were filed within three years of their eighteenth birthdays.  Assuming *arguendo* that Jamie Rodriguez suffered injuries under the statute in 2006, when she was nearly eighteen, her claims filed in 2010 would be timely under the six-year statute of limitations.  The § 2255 claims of the remaining Plaintiffs are time barred.  Assuming *arguendo* that Orlando, Farr, Eddy, and Pebbles Rodriguez suffered injuries covered by § 2255 when they were nearly eighteen, their claims would need to be filed by the age of twenty-four in order to be timely.  Each of these Plaintiffs was over twenty-four when their claims were filed.

Plaintiffs attempt to salvage their time-barred § 2255 claims by summarily stating that, like their state claims, their § 2255 claims are tolled by Arkansas' childhood sexual abuse tolling provision, Ark. Code Ann. § 16-56-130.  This is incorrect.  When a limitations period is set by a federal statute, state tolling provisions do not apply.  *Victor Foods, Inc. v. Crossroads Econ. Dev. of St. Charles Cnty., Inc.*, 977 F.2d 1224, 1227 (8th Cir. 1992) ("[T]he Missouri savings statute is irrelevant because state tolling and savings provisions do not apply when Congress has provided a federal statute of limitations for a federal claim."); *Brown v. Berhndt*, 1:12-CV-00024, 2013 WL 1704877 at *6 (E.D. Ark. Apr. 19, 2013) ("[S]ince there is a federal statute of limitations, Arkansas state law tolling and savings statutes are inapplicable.").[13]  Accordingly, Summer

---

[13] While Plaintiffs have not argued the point, it is worth noting that there is no indication that the "discovery" rule applies to § 2255.  The statute clearly provides that a claim must be filed within six years of the injury accruing.  It contains no language inferring that a claim does not accrue until the effect of the injury is discovered by a plaintiff. S*ee Singleton v. Clash*, 12 CIV. 8465, 2013 WL 3285096 at *6 (S.D.N.Y. July 1, 2013) ("Congress's failure to include language providing for the discovery rule counsels against implying it into the statute….Congress appreciated that it was dealing with injuries to minors and could have adopted language similar to that in state sexual abuse statutes which expressly provide for the discovery rule.").

Hagan, Desiree Kolbek, and Jamie Rodriguez are the only Plaintiffs who have § 2255 claims that are potentially viable.

### Joint Venture Liability

Before discussing the merits of Plaintiffs' remaining claims, it is necessary for the Court to discuss Plaintiffs' joint-venture allegations.  Plaintiffs' Fifth Amended Complaint alleges that all of the Defendants are directly liable for their own acts of negligence, false imprisonment, invasion of privacy, defamation, outrage, and mandatory reporter liability.   Alternatively, Plaintiffs argue that Defendants Jeanne Estates Apartments, Inc. ("Jeanne Estates") and Twenty First Century Tabernacle Church, Inc. ("Twenty First Century") are vicariously liable through the acts of their agents and/or their participation in a joint-venture.[14]  The Court will examine the actions of these entities' agents in later sections addressing the merits of each claim.  The Court will now address whether Twenty First Century and Jeanne Estates are a part of a joint venture.

If individuals are a part of a joint venture, they "may be held jointly and severally liable for one another's wrongful acts."  *Nat'l Bank of Commerce (of El Dorado) v. HCA Health Servs. of Midwest, Inc*., 304 Ark. 55, 59, 800 S.W.2d 694, 697 (Ark. 1990).  In order for a business relationship to be classified as a joint venture, the relationship "must have the elements of a partnership."  *Id*.  More specifically, the following elements must exist:  "(1) two or more persons combine in a joint business enterprise for their mutual benefit; (2) right of mutual control or management of the venture; and (3) an expressed or implied understanding that they are to share in the profits or losses of the venture."  *Burge v. Pack*, 301 Ark. 534, 536, 785 S.W.2d 207, 208 (Ark. 1990).

---

[14] Plaintiffs Fifth Amended Complaint also alleges that Defendants are vicariously liable through their participation in a "joint enterprise."  Joint enterprise liability is distinct from joint venture liability, *See Yant v. Woods*, 353 Ark. 786, 789 (Ark. 2003), and Plaintiffs have offered no argument at the summary judgment stage for why joint enterprise liability might be applicable in this case.  Accordingly, the Court will assume that Plaintiffs have abandoned this theory.

According to Plaintiffs, Twenty First Century and Jeanne Estates are part of a joint venture known as Tony Alamo Christian Ministries ("TACM").  While not making this clear in their complaint, Plaintiffs also appear to argue in their summary judgment pleadings that Sharon Alamo is a participant in the joint venture of TACM. Accordingly, Plaintiffs maintain that each of these Defendants is liable for the wrongful acts of the others.

As evidence of a joint venture, Plaintiffs have alleged that the followers of TACM "operate as a communal or communist organization" and that "all earnings of the followers and the church businesses are deposited into" a single bank account, known as the "Bookkeeper" account, from which all church expenses, church business expenses, and church member living expenses are paid.  (ECF No. 583, p. 13).  In other words, Jeanne Estates and Twenty First Century operate solely for the benefit of TACM and its membership.  Accordingly, Jeanne Estates' profits and any monies collected by Twenty First Century are deposited into the Bookkeeper account.  Jeanne Estates, Twenty First Century, and individual church members, such as Sharon Alamo, have their expenses paid out of the Bookkeeper account.  Plaintiffs allege that Tony Alamo is the person in control of the Bookkeeper account.  (ECF No. 583, p.14).

Plaintiffs' joint venture theory is not on solid ground as to the existence of a "joint business enterprise" and the sharing of profits and losses between Jeanne Estates and Twenty First Century.  Jeanne Estates is an apartment complex that, according to Plaintiffs, is "used to generate money [to support] Tony [Alamo's] house and TACM operations."  (ECF No. 337, Par. 55).  Plaintiffs characterize Twenty First Century as a "church defendant" rather than a "church business."  Plaintiffs do not clearly allege that Twenty First Century can be classified as a profit seeking business enterprise. The only information the Court has been given that shows Twenty First Century's status as a profit generator is Plaintiffs' allegation that Twenty First Century

received charitable donations that were fraudulently converted into profits for TACM.  While the Court recognizes that Twenty First Century may directly benefit from the profits generated by Jeanne Estates, and may even contribute money it collects to the Bookkeeper account, it is difficult to conceptualize how a church and business can form a "joint business enterprise" that provides for profit sharing when one of the entities is not necessarily a profit-seeking enterprise. The Court is not prepared to hold that the interdependency between these two organizations is sufficient to establish a "joint business enterprise."

Even if the Court assumes that Plaintiffs have offered sufficient evidence of a profit sharing, joint business enterprise, Plaintiffs' joint venture theory also breaks down when considering the element of "mutual control."  Plaintiffs have offered no evidence showing that agents or members of Twenty First Century and Jeanne Estates exercised *mutual* control over each other's activities.  Rather, Plaintiffs state that Tony Alamo "made all business decisions for everyone" and that he is "the controlling partner" over all of the TACM churches and business. (ECF No. 583, p 15). A *single* individual exercising unilateral control over multiple entities is not akin to "two or more persons" engaging in a business enterprise and each of those people having mutual control over the enterprise.  Accordingly, the Court can say that, as a matter of law, Plaintiffs' allegations about the control of Jeanne Estates and Twenty First Century do not show the existence of a joint venture.  Admittedly, the configuration of TACM's businesses and properties are exceedingly difficult to classify.  As Plaintiffs point out, this was likely by design. While the Court has no desire to dignify an organization's attempts to avoid liability by hiding the ball and creating mass confusion, we cannot force the application of joint venture liability where it simply does not fit.  Accordingly, Jeanne Estates and Twenty First Century cannot be held liable for each other's acts under joint venture theory.

The following sections will examine whether Defendants are directly liable to Plaintiffs for their actions and/or vicariously liable through the actions of their respective agents.

**Trafficking Liability**

Plaintiffs allege trafficking liability against Defendants pursuant to 18 U.S.C. § 1595.  In 2003, § 1595 was enacted to provide a civil cause of action for an individual who was a victim of sex trafficking as a minor.  More specifically, § 1595 provides a civil remedy for a victim of violations of 18 U.S.C. § 1591 which provides:

> (a) Whoever knowingly—
>
> (1) in or affecting interstate or foreign commerce, or within the special maritime and territorial jurisdiction of the United States, recruits, entices, harbors, transports, provides, obtains, or maintains by any means a person; or
>
> (2) benefits, financially or by receiving anything of value, from participation in a venture which has engaged in an act described in violation of paragraph (1), knowing, or in reckless disregard of the fact, that means of force, threats of force, fraud, coercion described in subsection (e)(2), or any combination of such means will be used to cause the person to engage in a commercial sex act, or that the person has not attained the age of 18 years and will be caused to engage in a commercial sex act, shall be punished as provided in subsection (b).

It is undisputed that certain Plaintiffs were sexually abused as minors while on out-of-state trips with Tony Alamo.[15]  Plaintiffs allege that this abuse amounted to a "commercial sex act" because Plaintiffs' living expenses were paid for with money provided by the ministry's businesses.  They allege that Defendants violated § 1591 because they financially benefitted from the commercial sex acts by having their living and operating expenses paid for by the ministry's businesses.  Defendants dispute the application of § 1591 and § 1595 for many

---

[15] While Plaintiffs' Complaint generally alleges § 1595 claims on behalf of all Plaintiffs, the only Plaintiffs referenced in Plaintiffs' summary judgment pleadings are Jeanne Orlando and Amy Eddy.  (ECF No. 584, Par. 51-55).

reasons, one being that the sexual abuse and the financial arrangements in this case do not amount to "commercial sex acts."

Section 1591 defines "commercial sex act" as "any sex act, on account of which anything of value is given to or received by any person."  "[T]he use of the phrase 'on account of which' suggests that there…needs to be a causal relationship between the sex act and an exchange of an item of value."  *United States v. Marcus*, 487 F. Supp. 2d 289, 306-07 (E.D.N.Y. 2007) *rev'd on other grounds*, 538 F.3d 97 (2d Cir. 2008).  Defendants rightly point out that Plaintiffs have not offered any evidence showing that Plaintiffs' living expenses were paid as some sort of *quid pro quo* for the sex acts that occurred with Alamo.[16]  Nor have Plaintiffs offered evidence to show that Defendants were compensated "on account of" the sex acts. In sum, Plaintiffs offer no evidence of a causal relationship between the sex acts and the payment of expenses.  The fact that sexual abuse was committed by the ministry's leader and that members of the ministry had their expenses paid for through ministry funds is simply not sufficient to establish a violation of 18 U.S.C. § 1591.  Accordingly, the civil remedy provision of 18 U.S.C. § 1595 is not available to Plaintiffs, and summary judgment on these claims is appropriate.

**Transporter Liability**

Plaintiffs allege transporter liability against Defendants pursuant to 18 U.S.C. § 2255. Section 2255 provides a civil remedy for an individual who, while a minor, was a victim of certain criminal violations.  One violation covered under § 2255 is transporting a minor across state lines with the intent that the minor engage in criminal sexual activity. *See* 18 U.S.C.

---

[16] Plaintiffs cite *Ditullio v. Boehm*, 662 F.3d 1091, 1095 (9th Cir. 2011) in support of their contention that Plaintiffs engaged in commercial sex acts.  In *Ditullio*, the Plaintiff testified that the Defendant "gave her crack cocaine 'on a daily basis so that [the Defendant] could have his way with [her] at any given time' and that she lived with him in order to obtain drugs on a regular basis."  Unlike the plaintiff in *Ditullio*, Plaintiffs have not offered any evidence or testimony at the summary judgment stage to establish that they deliberately accepted anything of value (i.e. payment of living expenses) *in exchange for* having sex with Alamo.

§2423(a).  To recover under § 2255, the victim must have actually suffered personal injury as a result of the criminal violation.  The criminal statutes alleged to have been violated by Defendants, in addition to 18 U.S.C. §2423, are 18 U.S.C. § 1591[17], 18 U.S.C. § 2241(c), 18 U.S.C. § 2242, and 18 U.S.C. §2243.[18]

The Court has already determined that § 2255 claims are time barred as to Plaintiffs Jeannette Orlando, Amy Eddy, Nicole Farr, and Pebbles Rodriguez.  The only Plaintiffs who could conceivably have timely claims under § 2255 are Desiree Kolbek, Summer Hagan, and Jamie Rodriguez.  However, while Plaintiffs' Complaint generally alleges § 2255 claims on behalf of all Plaintiffs, Plaintiffs have only offered factual support for the § 2255 claims of Amy Eddy and Jeanne Orlando.  (ECF No. 583, p. 54-55; ECF No. 584, Par. 52-56).  Defendants argue that Plaintiffs' failure to set forth facts substantiating Kolbek, Hagan, and Jamie Rodriguez's § 2255 claims requires summary judgment in Defendants' favor.  The Court agrees. In support of their § 2255 claims, Plaintiffs explicitly set out evidence of criminal violations by Defendants against Plaintiffs Orlando and Eddy but remain conspicuously silent about all of the other Plaintiffs.  Based on the extremely general allegations in Plaintiffs' Fifth Amended Complaint and the continued lack of specificity in their summary judgment responses, the Court cannot say with confidence that Kolbek, Hagan, and Jamie Rodriguez are even attempting to bring claims under § 2255.  In any case, the evidence submitted is not sufficient to create a

---

[17] As discussed previously, § 1591 requires the commission of a "commercial sex act."  The Court has already determined that Plaintiffs have failed to show that commercial sex acts were committed.  Accordingly, civil liability for § 1591 violations pursuant to § 2255 is not available.

[18] There is some dispute about whether a criminal conviction is required in order to pursue a civil claim under 18 U.S.C. § 2255.  The weight of authority indicates that no conviction is required and that a defendant must only be proven to have violated the criminal statute by a preponderance of the evidence.  *See Doe v. Liberatore*, 478 F.Supp.2d 742, 755 (M.D.Pa.2007); *M.B. v. Camp Stewart for Boys, Inc*., SA:12-CV-01133, 2013 WL 2297112 at *4 (W.D. Tex. May 24, 2013); *Smith v. Husband*, 376 F.Supp.2d 603, 607 (E.D. Va. 2005); *Cisneros v. Aragon*, 485 F.3d 1226, 1232 (10th Cir. 2007).  However, because Plaintiffs' § 2255 claims are being dismissed on other grounds, the Court does not need to address this issue.

genuine issue of material fact.   Accordingly, summary judgment in favor of Defendants is appropriate as to Plaintiffs' § 2255 claims.

**Defamation**

Plaintiffs allege that Defendants have published defamatory statements that have caused them injury.  As evidence in support of their defamation claims, Plaintiffs have submitted three documents that make statements about certain Plaintiffs.  They also refer the Court to statements made on the TACM website.

The first document is a newsletter entitled "Tony Alamo is Innocent."  (ECF No. 585, Exh. F). The document states that it is a "press release" from TACM and has a copyright date of September 2009.  The "press release" contains letters, supposedly written by Desiree Kolbek's mother, Jennifer Kolbek, stating that Desiree Kolbek is a "pathological liar," that she lied under oath, and that she has been a danger to families she has lived with.  The press release also contains a letter from a church member describing Desiree Kolbek as "lascivious."  In addition, the press release contains a letter calling Jeanne Orlando a "compulsive, pathological liar."

The second document submitted is a newsletter entitled "Jennifer Exposes Desiree." (ECF No. 585, Exh. G). It has a copyright date of May 2011 and can currently be accessed through the TACM website.  The newsletter contains another letter, supposedly written by Jennifer Kolbek, where Desiree Kolbek is referred to as a "psychopath."  The newsletter also contains letters supposedly written by members of Amy Eddy's family.  These letters claim that Eddy is a promiscuous, "sexually deranged, pathological liar."  As to Jeanne Orlando, the newsletter contains statements claiming that she lied under oath in court.

The third document submitted is a letter of support to Tony Alamo from Robert Gilmore dated November 20, 2008. (ECF No. 585, Exh. B). Plaintiffs claim the letter was posted to the

ministry's website.  Robert Gilmore, writing on behalf of RG & Associates Security, stated that he had never observed any abuse of children or adults during the time that RG & Associates provided security for the church properties.[19]  He does not mention any of the Plaintiffs in the letter.

Finally, Plaintiffs direct the Court to "an entire section of the TACM website ('False Accusers against Tony Alamo')[.]"  Plaintiffs' only allegation about this section of the website is that it is a "repository of defamatory statements about Plaintiffs and others."  Plaintiffs do not direct the Court to any specific website entries, other than those noted above, that mention any of the Plaintiffs.

To support a claim for defamation, the following elements must be proven: "(1) the defamatory nature of the statement of fact; (2) that statement's identification of or reference to the plaintiff; (3) publication of the statement by the defendant; (4) the defendant's fault in the publication; (5) the statement's falsity; and (6) damages."  *Faulkner v. Arkansas Children's Hosp*., 347 Ark. 941, 955–56, 69 S.W.3d 393, 402–03 (Ark. 2002) (internal citations omitted).  A plaintiff must establish that there has been *actual* damage to her reputation.  *United Ins. Co. of Am. v. Murphy*, 331 Ark. 364, 370, 961 S.W.2d 752, 756 (Ark. 1998) (abolishing the doctrine of defamation per se which presumed reputational injury).  When a plaintiff has not pled "specific facts demonstrating that she has suffered actual damage to her reputation, but has only pled a conclusion to that effect," dismissal of the defamation claim is appropriate. *Suggs v. Stanley*, 324 F.3d 672, 680 (8th Cir. 2003).

---

[19] RG & Associates was previously a defendant in this lawsuit.  Plaintiffs voluntarily dismissed their claims against RG & Associates on December 12, 2013.  (ECF No. 666). The Court only includes Robert Gilmore's letter as evidence of defamation against the remaining Defendants because it was publicly disseminated by TACM through its website.

Defendants argue that Plaintiffs' defamation claims should be dismissed because (1) they have failed to allege any specific defamatory statements about Summer Hagan, Nikki Farr, Pebbles Rodriguez, and Jamie Rodriguez, and (2) Desiree Kolbek, Amy Eddy, and Jeanne Orlando have failed to offer any factual support for their alleged reputational injuries.[20]

While Plaintiffs' Fifth Amended Complaint generally alleges a defamation claim on behalf of all Plaintiffs, Defendants are correct in pointing out that Plaintiffs have not offered evidence of any statements made against Summer Hagan, Nikki Farr, Pebbles Rodriguez, and Jamie Rodriguez.  Their evidence of defamation is limited to specific mentions of Desiree Kolbek, Amy Eddy, and Jeanne Orlando.  (ECF No. 583 p. 61; ECF No. 584, Par. 59-61; ECF No. 585, Exhs. B, F, G).  The closest Hagan, Farr, and the Rodriguez's come to offering evidence of defamatory statements is their reference to a "repository of defamatory statements about Plaintiffs" on the TACM website.  They do not point out any specific defamatory statements, and the Court has not found any specific mention of these Plaintiffs on the section of the website that they reference.  Accordingly, the Court finds that these Plaintiffs' bare defamation allegations are not sufficient to create a genuine issue of material fact.

Plaintiffs have offered evidence of allegedly defamatory statements made about Plaintiffs Kolbek, Eddy, and Orlando.  In support of the allegation that they sustained damages, Plaintiffs offer the following:  "Defendants' statements, for the reasons identified above, were false, and resulted in damage to the Plaintiffs' reputation, loss of earning capacity, and mental and physical damage."  (ECF No. 583, p. 62).

This lone statement is not sufficient to create a genuine issue of material fact regarding Plaintiffs' defamation claims.  Plaintiffs have offered no facts to support their allegations of

---

[20] Certain defendants also claim that they are not liable for defamation because they had no involvement in the publication of the material.  Because the Court has determined that Plaintiffs' defamation claims against all Defendants fail on other grounds, the Court declines to discuss these arguments.

actual reputational injury.  Rather, they have merely recited one element that must be proven in order to sustain a defamation claim.  Nor have Plaintiffs offered any specific facts or allegations relating to their claims of lost earning capacity.  And while the Court can certainly understand how the statements made by Defendants could have caused Plaintiffs mental suffering, "evidence of mental anguish, in the absence of proof of an actual reputational injury, cannot support an award of damages in a defamation action."  *Little Rock Newspapers, Inc. v. Fitzhugh*, 330 Ark. 561, 587, 954 S.W.2d 914, 928 (Ark. 1997).  Because Plaintiffs Kolbek, Eddy, and Orlando have failed to set forth specific facts demonstrating that they have suffered actual damage to their reputations, summary judgment in favor of Defendants is appropriate.

### Negligence

Plaintiffs allege that Twenty First Century, Jeanne Estates, and Sharon Alamo acted negligently by "allowing Tony Alamo unfettered access to Plaintiffs"; "facilitating 'spiritual weddings' with Plaintiffs"; failing to protect Plaintiffs from sexual abuse and physical beatings; failing to investigate sexual abuse complaints; failing to "prevent Tony Alamo's verbal discussions of sexual activities with Plaintiffs"; and failing to prevent "Tony Alamo and others from taking and distributing nude photographs of one or more Plaintiffs[.]"  (ECF No. 337, p. 19-21).  As to Jeanne Estates and Twenty First Century, Plaintiffs also allege that these Defendants were negligent in failing to keep property they owned in a reasonably safe condition by "housing Tony Alamo and Plaintiffs within the home [and] installing a carousel, petting zoo and pool to entice Plaintiffs[.]"  Plaintiffs further allege that Twenty First Century and Jeanne Estates were negligent in "permitting an adjoining door between [their] office and Alamo's bedroom."  (ECF No. 337, p. 19-21).  Plaintiffs maintain that the actions described above proximately caused Plaintiffs injuries resulting in damages to Plaintiffs.

"To prove a cause of action based on negligence, the plaintiff must not only prove both that he sustained damages and that the defendant was negligent, but also that the defendant's negligence was the proximate cause of the damages." *Lovell v. Brock*, 330 Ark. 206, 215, 952 S.W.2d 161, 166 (Ark. 1997).  Proximate cause is a question of fact for the jury unless "reasonable minds could not differ." *Id*.  In order to prove that a defendant has been negligent, "plaintiff must show a failure to exercise proper care in the performance of a legal duty, which the defendant owed the plaintiff under the circumstances." *Kowalski v. Rose Drugs of Dardanelle, Inc*., 2011 Ark. 44, 6, 378 S.W.3d 109, 114 (Ark. 2011).  "The question of what duty, if any, is owed a plaintiff alleging negligence is always a question of law and never one for the jury." *Marlar v. Daniel*, 368 Ark. 505, 508, 247 S.W.3d 473 (Ark. 2007).

### 1.  Sharon Alamo

Plaintiffs allege Sharon Alamo was a "sister wife" to Plaintiffs and shared a home with them during the time they were being abused.  Sharon Alamo does not dispute that she holds herself out to be Tony Alamo's wife and that Plaintiffs lived with her in Tony Alamo's home when they were minor children.[21]  Plaintiffs state that, when they left their parents to live in Tony Alamo's home, Sharon Alamo provided care for them on a daily basis.  Plaintiffs allege that Sharon Alamo was fully aware of their abuse, facilitated their abuse, and even participated in the physical abuse of Plaintiff Jeannette Orlando.

Plaintiffs assert that Sharon Alamo breached her duty of care to Plaintiffs by allowing the abuse to take place through her lack of intervention.  More specifically, Plaintiffs allege that their "special relationship" to Sharon Alamo imposed upon her a duty to protect them from the abuse of Tony Alamo.  "[I]n general, no liability exists in tort for harm resulting from the criminal acts

---

[21] Sharon Alamo is not legally married to Tony Alamo, but she states that she has been in a "spiritual marriage" with him since August 31, 1989 and that "she has remained in his residence since their spiritual marriage."  (ECF No. 500, p. 1).

of third parties[.]" *Ouachita Wilderness Inst., Inc. v. Mergen*, 329 Ark. 405, 421, 947 S.W.2d 780, 789 (Ark. 1997). However, where a "special relationship" exists between the plaintiff and defendant, the defendant has a duty to protect the plaintiff from foreseeable criminal acts by a third party. *Id.* (citing *Keck v. American Employment Agency, Inc.*, 279 Ark. 294, 652 S.W.2d 2 (Ark. 1983)). Because the special relationship question is directly tied to whether a duty existed, it is a question of law for the Court to decide. *Keck v. American Employment Agency, Inc.*, 279 Ark. 294, 298 652 S.W.2d 2 (Ark. 1983). Whether the criminal acts of the third party and the resulting injuries to a plaintiff were foreseeable may present a question of fact for the jury. *Id.*

Plaintiffs maintain that a special relationship existed between them and Sharon Alamo because, as minors, they were sent by their parents to live in Tony and Sharon's house; Sharon provided custodial care for them on a daily basis over a number of years; and Tony Alamo's acts of abuse were known to Sharon, or at the very least, foreseeable to her. The Court agrees with Plaintiffs that a special relationship did exist.

Arkansas courts have never examined whether a special relationship exists under these specific circumstances. However, it is generally recognized that a special relationship exists where person takes custody of a child "under circumstances such as to deprive [the child] of his normal opportunities for protection." Restatement (Second) of Torts § 314A (1965). *See Bjerke v. Johnson*, 742 N.W.2d 660, 665 (Minn. 2007) ("Although [Defendant] was never given legal custody of [Plaintiff], there is evidence to show that [Defendant] accepted entrustment of some level of care for [Plaintiff] when [Plaintiff] stayed at [Defendant's] home, at a location distant from her parents' home."); *Doe v. Goff*, 306 Ill. App. 3d 1131, 1134 (Ill. App. Ct. 1999) (holding that a voluntary custodian has a duty to protect from reasonably foreseeable harm). More specifically, courts have held that a wife who allows children into her home with knowledge of

her husband's dangerous sexual proclivities has a special relationship with the children and a duty to protect them from the foreseeable harm. See *Pamela L. v. Farmer*, 112 Cal.App.3d 206, 211-12 (Cal. App. 1980); *Chaney v. Superior Court*, 39 Cal. App. 4th 152, 157 (Cal. App. 1995); *Faul v. Perlman*, 104 So. 3d 148, 154 (Miss. Ct. App. 2012), reh'g denied (Oct. 30, 2012); *J.S. v. R.T.H.*, 155 N.J. 330, 351, 714 A.2d 924, 935 (N.J. 1998) ("Based in large measure on the strong public policy of protecting children from sexual abuse, we conclude that there is a sound, indeed, compelling basis for the imposition of a duty on a wife whose husband poses the threat of sexually victimizing young children.").

In this case, it is undisputed that Plaintiffs, as minor children, were sent to live with Tony and Sharon Alamo by their parents. These Plaintiffs allege that they suffered sexual and physical abuse as minors during the time period in which their primary residence was a single-family home shared with Tony and Sharon Alamo. There is ample evidence that creates a question of fact as to whether Sharon Alamo knew or should have known that harm was likely to result from residing in a home with Tony Alamo. Plaintiffs allege that Tony Alamo had sex with them while Sharon Alamo was present in the home and that anyone in the home near Tony Alamo's bedroom could hear the sexual activity taking place inside the room. (ECF No. 585, Exh. 19, p. 224). Plaintiffs allege that Tony boasted in public about his many spiritual wives, including Plaintiffs. *Id*. at 66. He allegedly had certain Plaintiffs inappropriately massage him in front of church members. *Id*. at. 86. Plaintiffs' allegations aside, there is objective evidence that Sharon Alamo knew that Plaintiffs' were "spiritual wives" of Tony Alamo and were being sexually abused. Tony Alamo has made no secret of his belief in polygamy and his belief that girls may be legally married at puberty. In fact, he has published articles to that effect. (ECF No. 585, Exh 3-4). Tony Alamo openly fathered children with at least two other "spiritual wives" who lived in

36

the home with Tony, Sharon, and Plaintiffs.  (ECF No. 585, Exh. 15, p. 47, 57).    One of TACM's businesses—Jeanne Estates apartments—was named after Plaintiff Jeanne Orlando, strongly signaling some unique measure of "devotion" to an underage girl living in Tony and Sharon's home.  (ECF No. 585, Exh. 19, p. 236).

In sum, when Plaintiffs left their families to join Sharon and Tony Alamo in their home, they were placed in the care and custody of these two adults for many years, at least on an informal basis.  Plaintiffs were minor children, unable to fully protect themselves from the alleged acts of Tony Alamo.  Accordingly, Sharon Alamo had a special relationship with Plaintiffs and a duty to protect them from any harm that was foreseeable.  The Court finds that there is a question of fact as what Sharon Alamo knew about Plaintiffs' alleged abuse and whether she knew that a failure to protect and/or intervene would result in harm to Plaintiffs. When a man has expressed his belief in polygamy, is living with multiple women, is openly fathering their children, and is continuously soliciting underage girls to come live in his home without their parents, it certainly leaves open the question of what Sharon Alamo knew about the alleged sexual abuse that was occurring at the hands of her husband.[22]

Because there are remaining questions of fact as to the foreseeability of Plaintiffs' harm and the proximate cause of that harm, summary judgment in favor of Sharon Alamo is not warranted.

### 2.  Twenty First Century

Plaintiffs allege that much of the alleged abuse that they suffered was in Tony Alamo's home—a home that was owned and operated by Twenty First Century.  Plaintiffs allege that

---

[22] The Court would like to make clear that Sharon Alamo's special relationship only extends to her time with Plaintiffs as minors.  Sharon Alamo owed no duty to protect Plaintiffs' from criminal acts that were allegedly perpetuated when they were over the age of eighteen.

Twenty First Century had a duty to protect them from Tony Alamo's abuse for multiple reasons: (1) a special relationship existed between Twenty First Century and Plaintiffs who were members of the Twenty First Century congregation; (2) agents of Twenty First Century had a special relationship with Plaintiffs and the duties arising from those relationships are imputed to Twenty First Century; and (3) Plaintiffs were owed a duty as invitees on Twenty First Century-owned property where their abuse took place.

### A.  Duty arising from special relationship

As the Court discussed above, a party generally may not be held liable in tort for harm resulting from the criminal acts of third parties unless a special relationship exists. Plaintiffs allege that Twenty First Century had a special relationship with Plaintiffs arising from their status as church members who were in the "custody" of the Twenty First Century church during the time they were allegedly abused.

Whether a church has a special relationship to its members is a very complex and unsettled issue.  *See C.J.C. v. Corp. of Catholic Bishop of Yakima*, 138 Wash. 2d 699, 985 P.2d 262 (Wash. 1999); D*oe v. Corp. of President of Church of Jesus Christ of Latter-day Saints*, 2004 UT App 274, 98 P.3d 429, 431 (Utah Ct. App. 2004); *Berry v. Watchtower Bible & Tract Soc. of New York, Inc*., 152 N.H. 407, 413, 879 A.2d 1124, 1129 (N.H. 2005); *F.D.P. v. Ferrara*, 2002 PA Super 223, 804 A.2d 1221, 1229 (Pa. Super. Ct. 2002).  The decisions generally turn on whether a plaintiff was truly in the "custody" of the church at the time of abuse and whether the criminal acts of the abuser were foreseeable to the church leaders who gave the abuser access to children.

Plaintiffs have devoted roughly one paragraph to discussing this complicated issue and have only offered one case in support of their proposition that Twenty First Century had a duty

to Plaintiffs. Plaintiffs generally state that they were in Twenty First Century's custody and that the alleged sexual abuse was foreseeable to Twenty First Century. However, Plaintiffs have offered no discussion regarding any governing body within Twenty First Century that supervised Tony Alamo or generally had a hand in placing him in a position of leadership. Stated another way, Plaintiffs have not clearly alleged that their harm was foreseeable to anyone in the church who had the authority to control Tony Alamo's role in the church. The evidence indicates that no one within Tony Alamo Christian Ministries placed Tony Alamo in his position, and no one had the authority to supervise him or remove him from it.

The cases dealing with this issue have generally involved hierarchical religious institutions or governing bodies within a church that have some sort of supervisory or placement power over church leaders and should have foreseen the possibility of sexual abuse by the church leader. *Doe v. Corp. of President of Church of Jesus Christ of Latter-day Saints*, 2004 UT App 274, 98 P.3d 429, 432 (Plaintiffs alleging that the church "had a system of disciplinary action in place which was meant to…identify sexual predators and other dangerous individuals within the membership in order to protect innocent members from harm."); *C.J.C. v. Corp. of Catholic Bishop of Yakima*, 138 Wash. 2d 699, 722, 985 P.2d 262, 274 (Wash. 1999) (holding that a special relationship could exist between church and child members in situations where the "church chooses its officials, directs their activities, and may restrict and control their conduct."); *Beal v. Broadard*, SUCV200205765C, 2005 WL 1009632 (Mass. Super. Feb. 4, 2005) (addressing whether a special relationship and duty existed where the alleged abuser was appointed as a ministerial servant by a body of elders who had knowledge of prior incidents of sexual dangerousness.); *Hutchison ex rel. Hutchison v. Luddy*, 560 Pa. 51, 64, 742 A.2d 1052, 1059 (Pa. 1999) (holding that a special relationship and duty to protect existed where a bishop

and the Diocese knew that defendant had a propensity for pedophilic behavior yet placed him in a position where he would be around children).  Because Plaintiffs have not clearly alleged or argued that any such system of oversight or control over Tony Alamo existed within Twenty First Century, the Court cannot say as a matter of law that Twenty First Century had a duty to Plaintiffs arising out of a church-member relationship.[23]

In the alternative, Plaintiffs claim that they had a special relationship with Twenty First Century agents, Sally Demoulin and Angela Morales, and that the duty these agents owed to Plaintiffs can be imputed to Twenty First Century.  These two individuals have been voluntarily dismissed by Plaintiffs, and it appears that Plaintiffs are no longer pursuing this argument.  (ECF No. 650).

### B.  Duty of a property owner to an invitee

Plaintiffs allege that Twenty First Century owned[24] and operated the house that they lived in with Tony Alamo where much of the physical and sexual abuse took place.  Plaintiffs allege that they were owed a duty of care as business invitees.

There is "no duty upon business owners to guard against criminal acts of a third party unless they 'know or have reason to know that acts are occurring or about to occur on the premises that pose imminent probability of harm to an invitee.'"  *Willmon v. Wal-Mart Stores, Inc.*, 957 F. Supp. 1074, 1077 (E.D. Ark. 1997) aff'd, 143 F.3d 1148 (8th Cir. 1998) (quoting

---

[23] To the extent that Plaintiffs allege that their fellow Twenty First Century members owed them a duty arising out of a special relationship, the argument cannot be sustained.  Plaintiffs have offered no case law to support the proposition that members of a congregation, in non-leadership positions, have a special relationship to other members that would give rise to a duty to intervene and/or protect.

[24] Twenty First Century does not appear to dispute Plaintiffs' assertion that it owns and operates the house in question.  However, their Fifth Amended Complaint, Plaintiffs have alleged that the house is owned by Sanford and Terri White.  (ECF No. 337, Par. 53).

*Boren v. Worthen Nat. Bank of Arkansas*, 324 Ark. 416, 424, 921 S.W.2d 934, 939-40 (Ark. 1996)).

Obviously, in order to show that the harm was foreseeable, Plaintiffs must show that someone in the employment or leadership of Twenty First Century was aware of the probability of harm.  In their summary judgment pleadings, the only parties Plaintiffs have clearly alleged were officers of Twenty First Century are Sally Demoulin and Angel Morales.  (ECF No. 583, p. 20).  However, as mentioned above, these ladies have been voluntarily dismissed from the suit, and Plaintiffs appear to have abandoned their arguments surrounding their actions.[25] Accordingly, Plaintiffs have not alleged facts showing that agents or officers of Twenty First Century had reason to know that Tony Alamo posed an imminent probability of harm.  Without this evidence, even if Plaintiffs were invitees on land owned by Twenty First Century, Plaintiffs have not shown that Twenty First Century owed Plaintiffs a duty of protection.

Because Plaintiffs have failed to show that Twenty First Century owed them a duty of protection, summary judgment in favor of Twenty First Century is appropriate as to Plaintiffs' negligence claims.

3.  Jeanne Estates

Plaintiffs allege that Jeanne Estates, as a part of a joint venture, owed a duty to Plaintiffs because Plaintiffs were invitees who were injured on property owned by the joint venture.  The Court has already determined that joint venture liability is not applicable in this case.  Plaintiffs have not alleged that they were injured on property owned by Jeanne Estates or one of its agents.

---

[25] In their recent response to Twenty First Century's Motion for Judgment on the Pleadings (ECF No.650, p. 6), Plaintiffs have thrown out names of other alleged agents of Twenty First Century who are not parties to this suit. Plaintiffs argue that Twenty First Century could conceivably be vicariously liable through the acts of these individuals.  However, no facts about the specific knowledge of these alleged agents were pled in Plaintiffs' summary judgment materials or their recent response to the motion.  Accordingly, there is not adequate factual support for Plaintiff to rest their negligence theory against Twenty First Century on these alleged agents.

Accordingly, the Court does not need to examine whether Jeanne Estates owed a duty to Plaintiff as a property owner.

Alternatively, Plaintiffs allege that Jeanne Estates is vicariously liable through its agents who had a duty to Plaintiffs due to their "special relationship" with Plaintiffs. Because Plaintiffs' summary judgment response only refers generally to "church business defendants" and not Jeanne Estates specifically, it is difficult to determine who exactly is alleged to be an agent of Jeanne Estates. However, in Plaintiffs' recently filed response (ECF No. 647, p. 9-10) to Jeanne Estate's Motion for Judgment on the Pleadings, Plaintiffs specifically mention Vicki Larison and Linda Williams as being agents of Jeanne Estates. Plaintiffs maintain that Jeanne Estates could be vicariously liable for the acts of these women, but they offer absolutely no facts about how these women could have had a special relationship with Plaintiffs or how they might have been negligent. Accordingly, the Court finds no basis for a discussion about Jeanne Estate's potential vicarious liability as it relates to these women.

As to Sharon Alamo's employment relationship with Jeanne Estates, Plaintiffs allege generally that she assisted with bookkeeping for "Defendants…on many occasions." (ECF No. 583, p. 10).[26] However, they make no specific allegations regarding her work for Jeanne Estates. Moreover, when given the opportunity to make the matter clear, they did not mention her specifically as an agent of Jeanne Estates in their recent response to Jeanne Estate's Motion for Judgment on the Pleadings. Accordingly, because Plaintiffs have not submitted evidence showing that Sharon Alamo was an agent of Jeanne Estates, the Court need not examine whether

---

[26] The Court takes issue with Plaintiffs' citation for this assertion. Plaintiffs cite to the deposition testimony of Angela Morales. (ECF No. 585, Exh 15, p. 38 and 74). Morales testified that Sharon had a desk in an office where church business was conducted. Morales says nothing of the work that Sharon actually performed. Morales also states that she did some clerical work for Action Distributors, a former defendant in this case. But again, she does not mention any work performed by Sharon Alamo.

Jeanne Estates could be vicariously liable through any special relationship Sharon Alamo had with Plaintiffs.

Because Jeanne Estates did not owe a duty to Plaintiffs as a part of a joint venture and because Plaintiffs have not submitted evidence to support a theory of vicarious liability for the acts of Jeanne Estates' agents, summary judgment in favor of Jeanne Estates is appropriate as to Plaintiffs' negligence claims.

**Negligent Entrustment**

Plaintiffs have asserted a claim for negligent entrustment against Defendant Sharon Alamo.  (ECF No 337, par. 75-78).  The Complaint states that she owned or continues to own property which was used by Tony Alamo to "sexually, physically, psychologically, and emotionally assault and abuse the Plaintiffs."  The negligent entrustment portion of Plaintiffs' Complaint does not specify what property Sharon Alamo is alleged to own.  However, in a separate section of the Complaint, Plaintiffs state that Sharon Alamo is the co-owner of a church bus on which Plaintiffs were transported with Tony Alamo.  Plaintiffs' summary judgment pleadings contain no further details about Sharon Alamo's property ownership.

Sharon Alamo maintains in her motion for summary judgment that the only relevant property she ever owned was a church bus purchased in 2007.[27]  She has produced a title in support of this assertion.  (ECF No. 500, Exh. I). She states that she is unaware of any ownership interest in any other buses purchased before that time.  Importantly, Pebbles Rodriguez is the only Plaintiff who was still a member of the church in 2007.  Rodriguez was twenty-two years old in 2007, and the Court is not aware of any actionable claims she has relating to any actions that occurred on the bus.

---

[27] Sharon Alamo owns other property that is arguably tied to Tony Alamo Christian Ministries, but it is not property that Plaintiffs' have alleged was used to facilitate the alleged abuse.  (ECF No. 500, p. 10).

In their response to Sharon Alamo's motion for summary judgment, Plaintiffs do not refute Alamo's statements about her property ownership (or lack thereof). Rather, they generally talk about property owned by various individuals who are no longer parties to this action and do not mention whether any of these properties are actually owned by Sharon Alamo. These very general allegations are not sufficient to create a genuine issue of material fact. Because Plaintiffs have failed to meet proof with proof, summary judgment in favor of Sharon Alamo is proper as to Plaintiffs' negligent entrustment claims.

**Negligent Hiring**

Plaintiffs have asserted claims for negligent hiring, retention, and supervision against Defendants Twenty First Century and Jeanne Estates. (ECF No 337, par. 84). Plaintiffs allege that Defendants were negligent in hiring, retaining, and supervising various individuals. Many of these alleged employees were previously parties to this lawsuit. With the exception of Sharon Alamo, they have all been voluntarily dismissed. Accordingly, Plaintiffs are no longer pursuing this claim as it relates to these dismissed individuals.

It appears that Plaintiffs continue to maintain their negligent hiring claim as it relates to the Defendants' alleged employment of Sharon Alamo. The Court has already held that Plaintiffs have failed to show that Sharon Alamo was an agent of either of these Defendants. *See Negligence*. Plaintiffs allege generally that she assisted with bookkeeping for "Defendants…on many occasions." (ECF No. 583, p. 10). However, they make no specific allegations regarding her work for Jeanne Estates or Twenty First Century. Moreover, the testimony cited for the proposition that Sharon Alamo "assisted with the bookkeeping" does not actually support the allegation. Plaintiffs cite to the deposition testimony of Angela Morales. (ECF No. 585, Exh 15, p. 38 & 74). Morales testified that Sharon had a desk in an office where church business was

conducted.  Morales says nothing of any work that Sharon actually performed.  Morales also states that she did some clerical work for Action Distributors, a former defendant in this case. But again, she does not mention any work performed by Sharon Alamo.

Because Plaintiffs have failed to set forth any evidence supporting Sharon Alamo's alleged employment with Jeanne Estates and Twenty First Century, summary judgment in favor of these Defendants is warranted as to Plaintiffs' negligent hiring claims.

**Invasion of Privacy**

Plaintiffs have asserted claims for invasion of privacy against Jeanne Estates, Twenty First Century, Sharon Alamo, and Tony Alamo.  There are four actionable forms of invasion of privacy:  "'(1) appropriation, which consists of the use of the plaintiff's name or likeness for the defendant's benefit; (2) intrusion, which is the invasion by one defendant upon the plaintiff's solitude or seclusion; (3) public disclosure of private [f]acts, which is the publicity of a highly objectionable kind ... even though it is true and no action would lie for defamation; and (4) false light in the public eye, consisting of publicity which places the plaintiff in a false light before the public.'"  Milam v. Bank of Cabot, 327 Ark. 256, 263, 937 S.W.2d 653, 657 (Ark. 1997) (quoting *Dunlap v. McCarty*, 284 Ark. 5, 9, 678 S.W.2d 361, 363–64 (Ark. 1984)).  Plaintiffs are alleging invasion of privacy on three of these four grounds:  intrusion, public disclosure of private facts, and false light.

1.  Intrusion

At the outset, the Court notes that the only Plaintiffs with potentially viable intrusion claims are Desiree Kolbek, Summer Hagan, and Pebbles Rodriguez.  The Court has ruled that the intrusion claims of the other Plaintiffs are time barred.

To sustain a claim of intrusion, a plaintiff must prove actions "on the defendant's part in the nature of prying or intrusion which is offensive or objectionable to a reasonable person. The 'thing' into which there is intrusion or prying must be, and be entitled to be, private." *Williams v. Am. Broad. Companies, Inc*., 96 F.R.D. 658, 669 (W.D. Ark. 1983) (applying Arkansas law); *see also Cannady v. St. Vincent Infirmary Med. Ctr*., 2012 Ark. 369 (2012), reh'g denied (Nov. 8, 2012).

In support of her intrusion claim, Desiree Kolbek alleges that she kept a diary when she lived with Tony Alamo and that this diary is in his possession.  (ECF No. 585, Exh. 28, p. 150). Summer Hagan states that all of the Plaintiffs were required to have telephone conversations in common areas of the house so that they could be monitored.  (ECF No. 585, Exh. 27, p. 111 and 153).  She does not specify who actually monitored these phone calls, but it apparently was at the direction of Tony Alamo.  Jeanne Orlando testified that the belongings of all women who lived in house, including Pebbles Rodriguez, were subject to search at any moment.  (ECF No. 585, Exh. 19, p. 325-326).

Based on the allegations above, Plaintiffs cannot sustain an intrusion claim against Sharon Alamo, Jeanne Estates, or Twenty First Century.  Plaintiffs allege no specific intrusive actions by these Defendants or their employees.  Accordingly, summary judgment in favor of these Defendants is proper.

Because the intrusions alleged above were done by Tony Alamo or at his direction, the Court finds that Plaintiffs' intrusion claims against Tony Alamo are sufficient to withstand summary judgment.  Alamo argues that Plaintiffs' intrusion claim should be dismissed because they had no legitimate expectation of privacy when they lived in his home.  In other words, because they lived in a home with many individuals, they could not have expected to have any

privacy that could be intruded upon.  The Court finds that, in this case, the existence of privacy or lack thereof, is a question that is better left for the jury.  Accordingly, summary judgment on this claim is not appropriate.

### 2.   Public Disclosure of Private Facts

While Plaintiffs claim that they are pursuing an invasion of privacy claim based on public disclosure of private facts, they have not alleged any facts in support of the claim.  Plaintiffs devote a section of their summary judgment brief to this topic, but they do not identify the "private facts" that have been publicly revealed.  They merely state that "Defendants publicly disclosed matters concerning the private lives of Plaintiffs."  This bare allegation is not sufficient to withstand summary judgment.

### 3.  False Light

An invasion of privacy claim based on false light is "conditioned upon the complaining party's demonstrating that (1) the false light in which he was placed by the publicity would be highly offensive to a reasonable person, and (2) that the defendant had knowledge of or acted in reckless disregard as to the falsity of the publicized matter and the false light in which the plaintiff would be placed."  *Dodrill v. Arkansas Democrat Co.*, 265 Ark. 628, 638, 590 S.W.2d 840, 845 (Ark. 1979).  Unlike a claim for defamation, Plaintiffs do not have to show evidence of actual reputational injury stemming from the publication of the false information.  *Wal-Mart Stores, Inc. v. Lee*, 348 Ark. 707, 719, 74 S.W.3d 634, 644 (Ark. 2002) ("The privacy tort covers behavior harmful to the plaintiff even though there is no injury to his reputation.").

Plaintiffs' false light claims rely on the same documents referenced in their arguments regarding defamation.  There are documents that were released to the public from Tony Alamo Christian Ministries which refer to Orlando, Eddy, and Kolbek as pathological liars.  The

documents also refer to Kolbek as "lascivious" and to Eddy as "sexually deranged."  The documents also state that Kolbek has been a danger to families she has lived with in the past.[28]

As with the defamation claims, Plaintiffs' false light evidence is limited to specific mentions of Desiree Kolbek, Amy Eddy, and Jeanne Orlando.  Nikki Farr, Pebbles Rodriguez, Jamie Rodriguez, and Summer Hagan's bare allegations of false light are not sufficient to create a genuine issue of material fact.  Plaintiffs' false light evidence also fails to implicate Sharon Alamo and Jeanne Estates.  There is no evidence that Sharon Alamo, Jeanne Estates, or agents of Jeanne Estates published the allegedly false information.  Plaintiffs' bare allegations against these Defendants are not sufficient to create a genuine issue of material fact.

The Court finds that Kolbek, Orlando, and Eddy's false light claims against Tony Alamo and Twenty First Century are sufficient to withstand summary judgment.  It is undisputed that the documents in question were disseminated on behalf of Tony Alamo Christian Ministries.  The top of the documents refer to Tony Alamo as "pastor."   The documents also contain information about where a reader can attend church services.  Tony Alamo is clearly implicated in the dissemination of these materials.  And as the primary "church entity" within Tony Alamo Christian Ministries, it is certainly possible, if not certain, that Twenty First Century ratified the publication of this material.  The falsity of the information, the Defendants knowledge of its falsity, and the level of offensiveness are questions of fact for the jury to decide.

In sum, summary judgment in favor of Tony Alamo is not proper as to Plaintiffs' intrusion and false light claims, and summary judgment in favor of Twenty First Century is not

---

[28] Plaintiffs also allege that false information about Plaintiffs was contained in a letter written by Robert Gilmore and a section of the Tony Alamo Christian Ministries website entitled "False Accusers against Tony Alamo." However, no Plaintiffs are explicitly referenced in these materials.  *See Defamation*.  Accordingly, the evidence is not helpful in establishing a false light claim.

proper as to Plaintiffs' false light claims.  Summary judgment as to all other invasion of privacy claims is granted.

**False Imprisonment**

Plaintiffs have asserted claims for false imprisonment against Jeanne Estates, Twenty First Century, Sharon Alamo, and Tony Alamo. The Court notes that the only Plaintiffs with potentially viable false imprisonment claims are Desiree Kolbek, Summer Hagan, and Pebbles Rodriguez.  The Court has ruled that the false imprisonment claims of the other Plaintiffs are time barred.

In Arkansas, false imprisonment is defined as "the unlawful violation of the personal liberty of another, consisting of detention without sufficient legal authority."  *Grandjean v. Grandjean*, 315 Ark. 620, 624, 869 S.W.2d 709, 711 (Ark. 1994).  "Any express or implied threat of force whereby one is deprived of his liberty or compelled to go where one does not wish to go is an imprisonment."  *Ltd. Stores, Inc. v. Wilson-Robinson*, 317 Ark. 80, 83, 876 S.W.2d 248, 250 (Ark. 1994).

Plaintiffs allege that they were unlawfully detained on various properties including Tony Alamo's house, the "house of scorn," church buses, and "other TACM property."  Summer Hagan has testified that Tony Alamo's "spiritual wives" had to attend school inside Alamo's house because they were not allowed outside of the house.  (ECF No. 585, Exh. 27, p. 54). Hagan also testified that, as punishment for "misbehavior," she was beaten with a paddle and forced to stay inside Alamo's house for a month.  *Id*. at 329-330.  She also states that Alamo's "spiritual wives" were sent to a separate property, the "house of scorn," as punishment and were not allowed to go outside.  *Id*.  A male church member confirms that this was a typical punishment.  (ECF No. 585, Exh. 30, p. 68-69).  Hagan said that, while she might have had the

ability to unlock the door to the house, she did not do so out of fear because Alamo told her there were guards outside the house that would shoot her if she tried to escape. *Id*. Desiree Kolbek testified that she was also confined to Tony Alamo's home and that there were watchmen, security guards, and surveillance cameras outside the home to prevent escape. (ECF No. 585, Exh. 28, p. 224-225). Pebbles Rodriguez makes similar allegations. (ECF No. 585, Exh. 17, p. 109-110). The cited testimony tends to indicate that it was Tony Alamo who ordered that the girls be confined to the properties mentioned above.

Plaintiffs' false imprisonment evidence fails to implicate Sharon Alamo, Jeanne Estates' property, or Jeanne Estates' agents. Accordingly, Plaintiffs have not demonstrated that a material issue of disputed fact exists as to these Defendants. Summary judgment in favor of these Defendants is, therefore, granted.

Plaintiffs have clearly alleged facts that implicate Tony Alamo. Twenty First Century's potential liability is not as clearly drawn. The lines between the actions of Tony Alamo and the actions of Twenty First Century are blurry. Plaintiffs state that they were confined at the direction of Tony Alamo, but they also indicate that the armed guards, or "watchmen," who were stationed outside of the homes were church members. If these armed guards were affiliated with Twenty First Century and they directly participated in the confinement of Plaintiffs at Twenty First Century's direction, then Plaintiffs' claims against Twenty First Century could be sustainable.

Twenty First Century and Tony Alamo argue that Plaintiffs' false imprisonment claims fail as a matter of law because there was no actual imprisonment, just the "feeling of imprisonment." Defendants also maintain that the alleged threats of force were not immediate enough to effect an unlawful imprisonment. The Court finds that these are questions of fact that

are better left to the jury.  Accordingly, Tony Alamo and Twenty First Century's motions for summary judgment are denied as to Desiree Kolbek, Summer Hagan, and Pebbles Rodriguez's false imprisonment claims.

### Mandatory Reporter Liability

Plaintiffs have asserted claims for mandatory reporter liability against Jeanne Estates and Twenty First Century.[29]  Plaintiffs claim that the "ordained ministers" in Tony Alamo Christian Ministries and teachers who worked for the ministry's school are mandated to report child abuse under Arkansas' child maltreatment law, Ark. Code Ann. § 12-18-402.  The statute contains a detailed list of individuals who are considered mandated reporters—teachers and clergy members are included on this list.  Pursuant to § 12-18-206, a defendant may be held "civilly liable for damages proximately caused by" the failure to report maltreatment.

Plaintiffs do not argue that Jeanne Estates and Twenty First Century as entities are mandatory reporters under § 12-18-402.  Rather, they argue that Jeanne Estates and Twenty First Century are vicariously liable for the failure to report by their agents—the clergy members and teachers.  The question of vicarious liability for an individual's failure to report has been considered by the Arkansas Supreme Court.  *Cooper Clinic, P.A. v. Barnes*, 366 Ark. 533, 237 S.W.3d 87 (Ark. 2006).  In *Cooper Clinic*, the Arkansas Supreme Court considered whether a hospital that did not have a duty to report under the statute could be vicariously liable for its employee doctor's mandatory duty to report.  The Court concluded that the hospital could not be vicariously liable:

> The test for whether an employee is acting within the scope of his employment is whether the individual is carrying out the "object and purpose of the enterprise," as opposed to acting exclusively in his own interest….In this case, we have already held that Cooper Clinic had no duty under the statute to report the suspected child abuse of [the victim]. Dr.

---

[29] The Court has already held that Plaintiff Nikki Farr's mandatory reporter claim is time barred.

> Staudt admittedly had a duty under the statute to report the suspected abuse, but her statutorily-imposed duty was an individual duty that did not extend to the clinic. As the Child Maltreatment Act imposes no duty on the clinic to report the suspected child abuse, Dr. Staudt's responsibility to report suspected child abuse cannot be said to benefit Cooper Clinic—that is, Dr. Staudt's decision to report or not to report suspected child abuse is not the "object and purpose" of Cooper Clinic, but rather such a decision is "exclusively in [Dr. Staudt's] interests." Thus, not only did the clinic have no duty itself under the statute to report suspected child abuse, but it also cannot be held vicariously liable for Dr. Staudt's failure to report.

*Id.* at 541 (quotations and citations omitted).

The Arkansas Supreme Court appears to have taken the position that, if an institution itself has no duty to report, then an individual's actions related to reporting the abuse are not actions that are taken in the scope of their employment. Because Jeanne Estates and Twenty First Century have no duty to report, the Court finds that they cannot be held vicariously liable for the clergy members and teacher's alleged failure to report.[30] Accordingly, summary judgment in favor of Defendants is granted as to Plaintiffs' mandatory reporter claims.

**Battery**

Plaintiffs have asserted claims for battery against Tony Alamo for the alleged physical and sexual abuse that was inflicted upon them.[31] Battery is defined as "wrongful or offensive physical contact with another through the intentional contact by the tortfeasor and without the consent of the victim, the unpermitted application of trauma by one person upon the body of another person." *Costner v. Adams*, 82 Ark. App. 148, 156, 121 S.W.3d 164, 170 (Ark. Ct. App. 2003).

---

[30] Additionally, Plaintiffs have not offered facts to establish that any of the clergy members or teachers were actually agents or employees of Jeanne Estates. Summary judgment in favor of Jeanne Estates is additionally warranted on these grounds.

[31] The Court held that the battery claims of Jamie Rodriguez, Jeanne Orlando, Amy Eddy, and Pebbles Rodriguez are time barred to the extent that they are based on physical abuse. To the extent that they are based on childhood sexual abuse, they are timely pursuant to Ark. Code Ann. § 16-56-130. Nikki Farr's battery claims are solely based on physical abuse and are time barred. *See Statute of Limitations.*

Tony Alamo argues that he is entitled to summary judgment on this claim because "much of the sexual abuse alleged in the Complaint is alleged to have occurred with the consent of the Plaintiffs, in that they are alleged to have become Tony Alamo's 'spiritual brides'[.]"  Plaintiffs vigorously dispute that there is any evidence to suggest that the sexual acts with Tony Alamo were consensual.

The alleged consent of the Plaintiffs is clearly a question of fact that is better left to the jury.  Accordingly, Alamo's motion for summary judgment as to this claim is denied.

**Outrage**

Plaintiffs, with the exception of Nikki Farr, have asserted a claim for the tort of outrage against all Defendants.  Plaintiffs' outrage claims are based upon the "physical beating, verbal abuse, and sexual abuse" committed by Tony Alamo that caused Plaintiffs emotional distress.

To establish a claim for outrage, Plaintiffs must demonstrate the following elements: "(1) the actor intended to inflict emotional distress or knew or should have known that emotional distress was the likely result of his conduct; (2) the conduct was 'extreme and outrageous,' was 'beyond all possible bounds of decency,' and was 'utterly intolerable in a civilized community'; (3) the actions of the defendant were the cause of the plaintiff's distress; and (4) the emotional distress sustained by the plaintiff was so severe that no reasonable person could be expected to endure it."  *Kiersey v. Jeffrey*, 369 Ark. 220, 222, 253 S.W.3d 438, 441 (Ark. 2007) (quoting *Crockett v. Essex*, 341 Ark. 558, 19 S.W.3d 585 (Ark. 2000)).  "The type of conduct that meets the standard for outrage must be determined on a case-by-case basis."  *Id*.

<u>1.  Jeanne Estates</u>

The Court has granted summary judgment in favor of Jeanne Estates on all of Plaintiffs other claims in this suit, including, negligence, negligent hiring, mandatory reporter liability,

false imprisonment, invasion of privacy, defamation, transporter liability, and trafficking liability. Plaintiffs have not alleged any additional facts, that the Court has not already considered, that might support a claim of outrage against Jeanne Estates. Accordingly, summary judgment is granted as to Plaintiffs' outrage claims against Jeanne Estates.

### 2.  Twenty First Century

The Court has granted summary judgment in favor of Twenty First Century on Plaintiffs' claims of negligence, negligent hiring, mandatory reporter, defamation, transporter liability, and trafficking labiality. The only sustainable allegations Plaintiffs make against Twenty First Century involve their claims of false imprisonment and invasion of privacy (false light). These allegations do not implicate Twenty First Century or its agents in any physical, verbal, or sexual abuse which form the basis of Plaintiffs' outrage claims. Accordingly, summary judgment is granted as to Plaintiffs' outrage claims against Twenty First Century.

### 3.  Sharon Alamo

The Court has granted summary judgment in favor of Sharon Alamo on Plaintiffs' claims of negligent entrustment, false imprisonment, invasion of privacy, defamation, transporter liability, and trafficking liability. Plaintiffs' negligence claims against Sharon Alamo remain. Plaintiffs' negligence claims are based on the allegation that Sharon Alamo knew that they were being sexually abused and physically abused by Tony Alamo for years and did nothing to intervene. The Court finds that these allegations are sufficient to sustain a claim of outrage against Sharon Alamo at this stage in the proceedings. If Sharon Alamo feels that the testimony at trial does not establish that her actions rose to a level of extreme and outrageous conduct sufficient to sustain an outrage claim, she is free to file a motion for judgment as a matter of law pursuant to Fed. R. Civ. Procedure 50.

    4.  Tony Alamo

As the alleged perpetrator of the physical, verbal, and sexual abuse that spanned many years, the outrage claims against Tony Alamo are clearly sufficient to survive summary judgment.  *Parkhurst v. Belt*, 567 F.3d 995, 1002 (8th Cir. 2009).  If Tony Alamo feels that the testimony at trial does not establish that his actions rose to a level of extreme and outrageous conduct sufficient to sustain an outrage claim, he is free to file a motion for judgment as a matter of law pursuant to Fed. R. Civ. Procedure 50.[32]

<u>CONCLUSION</u>

For the reasons stated above, Defendant Tony Alamo's Motion for Summary Judgment (ECF No. 522) is **GRANTED in part** and **DENIED in part**; Defendant Sharon Alamo's Motion for Summary Judgment (ECF No. 499) is **GRANTED in part** and **DENIED in part**; Defendant Twenty First Century's Motion for Summary Judgment (ECF No. 515) is **GRANTED in part** and **DENIED in part**; and Defendant Jeanne Estates' Motion for Summary Judgment (ECF No. 493) is **GRANTED**.  An order of even date consistent with this opinion shall issue.

    **IT IS SO ORDERED**, this 24th day of December, 2013.

                /s/ Susan O. Hickey
                Susan O. Hickey
                United States District Judge

---

[32] The Court has held that Desiree Kolbek and Summer Hagan's outrage claims based on sexual abuse *and* physical abuse are timely.  However, the outrage claims of Jamie Rodriguez, Pebbles, Rodriguez, Jeanne Orlando, and Amy Eddy are only timely to the extent that they are "based on" sexual abuse.  To the extent that the outrage claims against Sharon Alamo and Tony Alamo are based on physical and verbal abuse, they are untimely.  *See Statute of Limitations*.